# EXHIBIT A

MELISA A. ROSADINI-KNOTT (Bar No. 316369)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
3435 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90010
Telephone : (323) 982-4109
Facsimile :  (415) 840-9435
Email:  mrosadini@peifferwolf.com

ROBERT M. HAMMERS, JR. (*PHV application forthcoming*)
HAMMERS LAW FIRM, LLC
5555 Glenridge Connector, Suite 975
Atlanta, Georgia 30342
Telephone: (770) 900-9000
Email: rob@hammerslawfirm.com

JASON EDWARD OCHS (Bar No. 232819)
OCHS LAW FIRM
P.O. Box 10944
Jackson, WY  83002
Telephone: 307.234.3239
Facsimile: 307.235.6910
Email: jason@ochslawfirm.com

*Attorneys for Plaintiff*

## SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM, INC.; and TANDEM DIABETES CARE, INC.,<br><br>Defendants. | **CASE NO:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **NEGLIGENCE**<br>2. **STRICT PRODUCT LIABILITY - DESIGN DEFECT**<br>3. **STRICT LIABILITY – MANUFACTURING DEFECT**<br>4. **STRICT LIABILITY- FAILURE TO WARN**<br>5. **WRONGFUL DEATH** |

**DEMAND FOR JURY TRIAL**

1.      Plaintiff JOSEPH HIGGINBOTTOM, individually and on Behalf of the Estate of ANTHONY HIGGINBOTTOM, hereby requests a trial by jury as to all issues and as to all material fact.

**PARTIES**

2.      Plaintiff JOSEPH HIGGINBOTTOM (hereinafter "Plaintiff") is, and at all times relevant was, a resident and citizen of Wyoming.  He brings this action individually and on Behalf of the Estate of ANTHONY HIGGINBOTTOM, minor decedent.   Decedent ANTHONY HIGGINBOTTOM (herein referred to as "Decedent") died in a motor vehicle collision on August 5, 2020.  Plaintiff is an authorized successor-in-interest to his Estate. The Declaration of Joseph Higginbottom, Successor-in-Interest, Pursuant to C.C.P. § 337.32, is included with this complaint.

3.      Defendant, DEXCOM, INC. (hereinafter "Dexcom"), is a Delaware corporation with its principal place of business located at 6340 Sequence Drive, San Diego, California, 92121. Defendant Dexcom may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

4.      Dexcom is, and at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California, including San Diego County.

5.      Dexcom was and is engaged in the business of manufacturing, marketing, testing, labeling, promoting, selling, and/or distributing the Dexcom G6 Continuous Glucose Monitoring System (hereinafter "G6 System").  At all pertinent times, Dexcom derived substantial revenue from the sale of the G6 System in the State of California and County of San Diego.

6.      Defendant TANDEM DIABETES CARE, INC. (hereinafter "Tandem") is a Delaware Corporation with its principal place of business located at 12400 High Bluff Drive, San Diego, California, 92130. Defendant Tandem may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

7.      Tandem is, and at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California,

-2-

1  including San Diego County.

2       8.      Tandem was and is engaged in the business of manufacturing, marketing, testing,

3  labeling, promoting, selling, and/or distributing the Tandem t:slim X2™ Insulin Pump (hereinafter

4  "t:slim pump"). At all pertinent times, Tandem derived substantial revenue from the sale of the

5  t:slim pump in the State of California and County of San Diego.

6       9.      At all pertinent times, both Defendants were engaged in the research, development,

7  manufacture, design, testing, sale and marketing of the products, and introduced such products into

8  interstate commerce with the knowledge and intent that such products would be sold in the State of

9  California.

10                          **VENUE AND JURISDICTION**

11      10.     The California Superior Court has jurisdiction over both Defendants because, based

12  on information and belief, each is a corporation maintains its principal place of business in the State

13  of California, has sufficient minimum contacts in California, and otherwise intentionally avails

14  itself of the California market so as to render the exercise of jurisdiction over it by the California

15  courts consistent with traditional notions of fair play and substantial justice.

16      11.     Further, Defendants have each purposefully availed themselves of the benefits and

17  protections of the laws within the State of California.  Collectively, Defendants conduct substantial

18  business in California and have sufficient contact with California such that the exercise of

19  jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

20      12.     Venue is proper in this Court pursuant to Code of Civil Procedure section 395(a)

21  and 395.5 because the principal place of business of both Defendants is in San Diego County.

22      13.     The amount in controversy exceeds the jurisdictional limits of this court.

23                              **INTRODUCTION**

24      14.     This is an action for damages relating to Dexcom's design, manufacture,

25  surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the

26  Dexcom G6 System.

27

28

-3-

COMPLAINT AND DEMAND FOR JURY TRIAL

15. This is an action for damages relating to Tandem's design, manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the Tandem t:slim pump.

16. The G6 System is a prescribed medical device intended for use by diabetic patients to replace fingerstick blood glucose testing and scanning and to detect and alert dangerous glucose levels likely to trigger life-threatening medical events as a part of short-term and long-term diabetes treatment plan.

17. The t:slim pump is a prescribed medical device intended for use by diabetic patients as an automated insulin delivery system (hereinafter "AID") to provide subcutaneous delivery of insulin, at set and variable rates, for the management of diabetes mellitus in persons requiring insulin. The t:slim pump can be used solely for continuous insulin delivery and also integrates with the G6 System to receive and display continuous glucose measurements.

18. The Dexcom G6 System consists of three primary components: (1) a wearable patch sensor which continuously measures blood glucose values (hereinafter "BGV") from interstitial fluids below the skin; a transmitter that attaches to the sensor and collects the BGV data and then pushes the information via a Bluetooth® connection to (3) a display device: either its proprietary receiver or a smartphone using its proprietary application (hereinafter "G6 App").

19. The Tandem t:slim pump also pairs with the Dexcom G6 sensor and transmitter. The t:slim pump also aids in the detection of episodes of hyperglycemia and hypoglycemia by providing the G6 System BGV data to the t:slim display.

20. The G6 System is designed to literally "sound the alarm" when a near-dangerous glucose level is detected to provide the diabetic patient with advance warning to avoid a potential hyperglycemic or hypoglycemic event.

21. The G6 Systems have a propensity to obtain inaccurate glucose readings, fail to transmit glucose readings, and/or notify and alert its users of potential hyperglycemic and hypoglycemic events, resulting in serious injuries or death. The G6 System when integrated with the t:slim pump also increases the risk of insulin stacking when inaccurate hyperglycemic results are

COMPLAINT AND DEMAND FOR JURY TRIAL

transmitted to the display device leading to patient overdosing insulin and falling quickly into hypoglycemia.

22.    On information and belief, Plaintiff, the father of decedent: Anthony Higginbottom, a diabetic patient, brings this action for wrongful death directly and proximately caused by productdefects in the G6 System and t:slim pump.

## **FACTUAL ALLEGATIONS**

23.    Dexcom designs, develops, manufactures, markets, advertises, promotes, supplies, distributes, sells, and instructs in the use of the G6 System, which is a Class II device.[1]

24.    The G6 System is a prescribed medical device for diabetics to use to monitor and manage their glucose level and to detect and alert its user of potential hyperglycemic and hypoglycemic events in real-time.

25.    According to Dexcom, the G6 System is the first real-time, integrated Continuous Glucose Monitoring system (hereinafter "iCGM") requiring "zero fingersticks or calibrations" and replaces fingerstick blood glucose testing and scanning to monitor and manage diabetes.[2]

26.    Dexcom marketed and sold the G6 System as a potentially life-saving medical device capable of detecting and preventing hyperglycemic and hypoglycemic events by alerting users of near-dangerous blood glucose levels that may trigger such events.

27.    As shown in Dexcom's G6 System User Guide and noted herein, the G6 System has three key component parts: 1) the wearable sensor patch, which collects real-time BGV from just under the skin, 2) the transmitter, which sends the glucose reading from the sensor to the user's display device, and 3) the display device (G6 App or Receiver): which shows glucose reading and information to the user.

///

///

///

///

---

[1] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=682
[2] https://www.dexcom.com/faqs/does-the-dexcom-g6-cgm-system-require-calibrations.

COMPLAINT AND DEMAND FOR JURY TRIAL

| | | |
|---|---|---|
|  | Applicator with **built-in sensor** | Applicator helps you **insert the sensor wire under your skin.** Sensor gets your glucose information. |
| | **Transmitter** | **Transmitter sends your** glucose information from the sensor to the display device. |
|  | Display Device(s): <br> • **Receiver** <br> • **Your smart** device | Display device(s) shows your glucose information. Receiver is required for Medicare. |

28.     Dexcom's G6 App allows patients to use their smartphones and smartwatches like iPhones, Apple Watch and Android devices.[3]  The G6 App enables the G6 System users to use their smart devices as the display device to receive real-time BGV readings, notifications, and sound alarms resulting from potential hyperglycemic and hypoglycemic events.

29.     If any one of G6 System's three component parts is defective or does not operate as intended, its diabetic user would not receive accurate and timely BGV alerts and warnings.

30.      The G6 System sensor patch's failure to obtain accurate, real-time BGV information can cause a diabetic patient to suffer serious injury or death.

31.      The G6 System transmitter's failure to transmit accurate, real-time BGV information to a display device can cause a diabetic patient to suffer serious injury or death.

---

[3] See  https://apps.apple.com/us/app/dexcom-g6/id1209262925

32.     The G6 System and/or G6 App's failure to notify or sound the alarm when a hyperglycemic or hypoglycemic event occurs can cause a diabetic serious injury or death.

33.     The G6 System and/or G6 App's inaccurate readings of the user's BGV may cause a diabetic patient who integrates the G6 System with the Tandem t:slim pump to mistreat hyperglycemia or hypoglycemia, including inadvertently stacking insulin.

34.     Dexcom and Tandem are responsible for identifying all risks associated with the foreseeable uses of the G6 System and t:slim pump before marketing and selling the products, and for every identified risk, Dexcom and Tandem had and have a duty to either design the risk out or to adequately warn the users of those risks. These obligations are met by conducting risk assessments, system hazard analyses, and design/process failure modes and effects analyses.

35.     Decedent's medical provider prescribed Dexcom's G6 System and the Tandem t:slim pump as a part of decedent's diabetes treatment plan.

36.     Plaintiff's spouse purchased the G6 System from Dexcom and the t:slim pump from Tandem on behalf of decedent, a minor.

37.     As represented by Dexcom, decedent replaced the fingerstick testing method with the Dexcom G6 System. During the relevant time, decedent used the G6 System as the primary device for blood glucose testing and for diabetes treatment decisions.

38.     During the relevant time, decedent used the t:slim pump to administer bolus of insulin as needed or at preset intervals in accordance with the user instructions and training provided by Tandem.

39.     During the relevant time, decedent used the G6 System on a daily basis to monitor his BGV trends in real-time, prevent hyperglycemic and hypoglycemic episodes, and in the overall management of decedent's diabetes.

40.     During the relevant time, decedent used Dexcom's software to obtain and review glucose information from the G6 System.

41.     During the relevant time, decedent made no changes or alterations to the G6 System, the t:slim pump, or any of their component parts.

42.     During the relevant time, decedent used the G6 System and t:slim pump as prescribed by his physician and as directed by Dexcom and Tandem.

43.     On or about August 4, 2020, decedent changed out his sensor with his new one that evening, undertook the necessary programming, and went to bed. After the two-hour start up process, the G6 System read his BGV as extremely high.

44.     On August 5, 2020 at 2AM, his BGV read 258, and five hours later at 7AM his BGV read 214. At approximately 7:28 AM, decedent received an insulin bolus from his t:slim pump as his BGV were still reading high at 218. The t:slim pump then administered a second bolus, thereby stacking his insulin, at 8:43 AM.

45.     At the time of the second bolus administered by the t:slim pump at 8:43 AM, decedent was on his way to pick up his girlfriend to go hiking. He was operating his 1973 Chevy Nova northbound on County Road 120 just outside of Cheyene, Wyoming.

46.     The second bolus dropped decedent into hypoglycemia, causing him to pass out behind the wheel, and crash into a Laramie County weed and pest truck servicing the shoulder of the road.

47.     Anthony Higginbottom died from the injuries suffered in the collision.

48.     Decedent's G6 App failed to alert him to dangerous glucose levels and/or stopped receiving glucose information from the G6 System prior to second bolus.

49.     Decedent's G6 System failed to make accurate readings of his real-time BGV prior to administering first bolus from the t:slim pump.

50.     Decedent's G6 System failed to make accurate readings of his real-time BGV prior to administering the second bolus from the t:slim pump.

51.     Decedent's G6 System and t:slim pump malfunctioned by allowing the second bolus when his BGV levels were no longer reading high at 8:43 AM.

52.     Moreover, when Decedent's G6 App failed to notify or sound the alarm of a dangerous glucose level and/or stopped receiving glucose information from the G6 System, decedent was unaware he was experiencing a hypoglycemic event.

COMPLAINT AND DEMAND FOR JURY TRIAL

53.     The G6 System's and t:slim pump's failure to notify or sound the alarm of the dangerous glucose level deprived decedent and/or Plaintiff the "golden window" of time to intervene and prevent the tragic hypoglycemic-induced fatal collision.

54.     As a direct and proximate result thereof, Anthony Higginbottom suffered serious injuries and died at the scene of the collision.

55.     During all relevant times, decedent exercised ordinary care for his own safety and could not reasonably avoid his serious injuries, which resulted from G6 System's and t:slim pump's failure or defect.

56.     Dexcom induced Plaintiff to rely on its representations about the G6 System's and G6 App's accuracy and efficacy for treating his son's diabetes.

57.     Tandem induced Plaintiff to rely on its representations about the t:slim's reliability and efficacy for treating his son's diabetes.

58.     Plaintiff reasonably relied on Dexcom's representations as to the G6 System and the G6 App's accuracy and efficacy for treating his son's diabetes.

59.     Plaintiff reasonably relied on Tandem's representations as to the t:slim's reliability and efficacy for treating his son's diabetes.

## **PUNITIVE DAMAGES ALLEGATIONS**

60.     Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

  a.  Prior to FDA clearance, Defendants knew the G6 System integrated with the t:slim pump was often inaccurate and struggled to maintain reliable connectivity between transmitter and display device;

  b.  After FDA clearance, Defendants received complaints from users and providers detailing the high rates of reports regarding the G6 System integrated with the t:slim pump being inaccurate and struggling to maintain reliable connectivity between transmitter and display device;

  c.  Despite their knowledge of the inaccuracy of the BGV data and the unreliable wireless communications between tranmistter and display deveice, Defendants

-9-

affirmatively minimized this risk through marketing and promotional efforts and product labeling;

d.  With said knowledge, Defendants opted to manufacture and distribute and market the products without attempting to warn consumers or the public of the high risk of injury or death that could result from the use of the products intentionally fraudulently, consciously and actively concealing and suppressing their knowledge of this risk from consumers and the public;

e.  Defednants impliedly represented the products were safe for their intended and reasonably foreseeable use with knowledge of the falsity of said implied representations.

61.     The above referenced conduct of Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of the G6 System and t:slim pump.  In pursuance of said financial motivation, Defendants consciously disregarded the safety of the consumer of the products, decedent Anthony Higginbottom, and were, in fact, consciously willing to permit the products to cause injury to consumers, including Decedent Anthony Higginbottom.

62.     As the above referenced conduct of Defendants was and is vile, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of consumers of the G6 System and t:slim pump, including Decedent Anthony Higginbottom, for the sake of example and by way of punishing Defendants seek punitive damages according to proof.

## **TOLLING**

63.     Plaintiff pleads he, Dexcom, and Tandem agreed to toll all applicable statutes of limitation and this action is being brought before the expiration of the tolling agreement.

64.     Accordingly, any applicable statutes of limitations have been tolled.

65.     Defendants are estopped from relying on the statute of limitations defense because of the tolling agreement.

COMPLAINT AND DEMAND FOR JURY TRIAL

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

66.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

67.     At all times relevant, Dexcom was in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing and instructing in the use of the G6 System, including the one purchased for decedent.

68.     At all times relevant, Tandem was in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing and instructing in the use of the t:slim pump, including the one purchased for decedent.

69.     Dexcom had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the G6 System so as to avoid exposing others to foreseeable and unreasonable risks of harm.

70.     Tandem had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the t:slim pump so as to avoid exposing others to foreseeable and unreasonable risks of harm.

71.     Dexcom breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of the G6 System.

72.     Tandem breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of the t:slim pump.

73.     Dexcom knew, or reasonably should have known, the G6 System failed  to measure its user's BGV accurately and failed to adequately warn Plaintiff of this defect.

74.     Tandem knew, or reasonably should have known, the t:slim pump may administer a second bolus of insulin, and therefore, stack insulin because the G6 System failed to  measure its user's BGV accurately and also failed to adequately warn Plaintiff of this defect.

75.     Dexcom knew, or reasonably should have known, the G6 System failed to transmit

or failed to transmit in real-time BGV information from the sensor to the transmitter and/or display device and failed to warn Plaintiff of this defect.

76.     Dexcom had a duty to warn Plaintiff, decedent's physician, and/or the medical community of the potential for G6 System to malfunction or otherwise not operate as Dexcom represented and failed to do so.

77.     Tandem had a duty to warn Plaintiff, decedent's physician, and/or the medical community of the potential for t:slim to malfunction or otherwise not operate as Tandem represented and failed to do so.

78.     Defendants breached these respective duties owed to Plaintiff and decedent, and, as a direct and proximate result, was harmed thereby.

79.     Defendants knew, or reasonably should have known, the G6 System and t:slim pump were dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

80.     At the time of the manufacture and sale of the G6 System, Dexcom knew, or reasonably should have known, the G6 System was designed and manufactured in such a way to present an unreasonable risk of inaccurate BGV readings inaccurate "real-time" reporting, and/or non-functioning alarm and notification.

81.     At the time of the manufacture and sale of the t:slim pump, Tandem knew, or reasonably should have known, the G6 System was designed and manufactured in such a way as to present an unreasonable risk of calculating and transmitting inaccurate BGV readings to the integrated t:slim pump, thereby creating an unreasonably dangerous risk of insulin stacking to users like decedent.

82.     At the time of the manufacture and sale of the G6 System, Dexcom knew, or reasonably should have known, the G6 System was designed and manufactured in such a way to present an unreasonable risk of harm by failing to accurately report or notify its user of a near-dangerous glucose level, which, in turn, deprived its users of a "golden window" of time to intervene and prevent serious injury or death.

83.     At the time of the manufacture and sale of the G6 System, Dexcom knew, or

COMPLAINT AND DEMAND FOR JURY TRIAL

reasonably should have known, using the G6 System for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries, including but not limited to cardiac arrest, loss of consciousness, and coma, or death.

84.    Dexcom knew, or reasonably should have known, that the consumer-patients of the G6 System would not realize the danger associated with using the G6 System for its intended use and/or in a reasonably foreseeable manner.

85.    Tandem knew, or reasonably should have known, that the consumer-patients of the t:slim pump would not realize the danger of inaccurate BGV readings from the G6 System might cause them to receive an unreasonably dangerous amount of insulin from the device.

86.    Defendants, jointly and severally, breached their respective duties to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the G6 System and t:slim pump in, among others, the following ways:

a.   Designing and distributing products in which each Defendant knew, or reasonably should have known, the likelihood and severity of potential harm from the products exceeded the burden of taking measures to reduce or avoid harm;

b.   Designing and distributing products in which each Defendant knew, or reasonably should have known, the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other integrated glucose monitoring systems available for the same purpose;

c.   Failing to use reasonable care in manufacturing the products and producing products that differed from their design or specifications;

d.   Failing to use reasonable care to warn or instruct Plaintiff, decedent, decedent's healthcare providers, or the general health care community about the G6 System's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

e.   Failing to use reasonable care to warn or instruct Plaintiff, decedent,

-13-

decedent's healthcare providers, or the general health care community about the t:slim pump's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

f.  Failing to perform reasonable pre-and post-market testing of the G6 System and t:slim pump to determine whether or not the product was safe for its intended use;

g.  Failing to provide adequate instructions, guidelines, and safety precautions, to those persons to whom it was reasonably foreseeable would prescribe the G6 System and t:slim pump to diabetics;

h.  Advertising, marketing and recommending the use of the G6 System and t:slim pump, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the G6 System and integrated t:slim pump;

i.  Representing that the G6 System was safe for its intended use when, in fact, Dexcom knew, or reasonably should have known, the product was not safe for its intended purpose;

j.  Representing that the t:slim pump was safe for its intended use when, in fact, Tandem knew, or reasonably should have known, the product was not safe for its intended purpose when integrated with the G6 System;

k.  Continuing the manufacture and sale of the G6 System with the knowledge the G6 System was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

l.  Continuing the manufacture and sale of the t:slim pump with the knowledge the t:slim pump was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

m.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the G6 System so as to avoid the risk of serious harm associated with the use of the G6 System;

COMPLAINT AND DEMAND FOR JURY TRIAL

n. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the t:slim pump so as to avoid the risk of serious harm associated with the use of the t:slim pump with G6 System;

o. Failing to establish an adequate quality assurance program used in the manufacturing of the G6 System;

p. Failing to establish an adequate quality assurance program used in the manufacturing of the t:slim pump;

q. Failing to establish and maintain an adequate post-marketing surveillance program for the G6 System;

r. Failing to establish and maintain an adequate post-marketing surveillance program for the t:slim pump;

s. Failing to adequately and correctly report safety information relative to the G6 System product resulting in inadequate warnings;

t. Failing to adequately and correctly report safety information relative to the t:slim product resulting in inadequate warnings;

u. Failing to provide adequate and continuous warnings about the inherent danger of the G6 System's inaccurate glucose monitoring and reporting;

v. Failing to provide adequate warnings about the inherent danger of insulin stacking resulting from the G6 System's inaccurate glucose monitoring and reporting; and

w. In committing other negligent acts or omissions as may be shown by the evidence and proven at trial.

87.     During all relevant times, decedent exercised ordinary care for his own safety and could not reasonably avoid his serious injuries and death caused by G6 System's and t:slim pump's failure or defect .

88.     Reasonable manufacturers, distributors, and/or sellers under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

-15-

COMPLAINT AND DEMAND FOR JURY TRIAL

89.     As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

90.     As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

91.     In performing the foregoing acts or omissions, the Johnson & Johnson Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

92.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## SECOND CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

93.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

94.     The G6 System is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

95.     The t:slim pump is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

96.     The G6 System was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Dexcom's possession. The t:slim pump was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Tandem's possession.

97.     The G6 System purchased by Plaintiff for decedent was defective in design because

it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

98.    The t:slim purchased by Plaintiff for decedent was defective in design because it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

99.    The G6 System purchased by Plaintiff for decedent was defective in design, in that the G6 System's risks of harm exceeded its claimed benefits.

100.    The t:slim pump purchased by Plaintiff for decedent was defective in design, in that the t:slim pump's risks of harm exceeded its claimed benefits.

101.    Plaintiff, decedent, and decedent's healthcare providers used the G6 System in a manner that was reasonably foreseeable to Dexcom.

102.    Plaintiff, decedent, and decedent's healthcare providers used the t:slim pump in a manner that was reasonably foreseeable to Tandem.

103.    Plaintiff, decedent, and decedent's healthcare providers could not have by the exercise of reasonable care discovered the G6 System's defective conditions or perceived its unreasonable dangers prior to the purchase of the system.

104.    Plaintiff, decedent, and decedent's healthcare providers could not have by the exercise of reasonable care discovered the t:slim pump's defective conditions or perceived its unreasonable dangers prior to the purchase of the product.

105.    As a result of the foregoing design defects, the G6 System created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System.

106.    As a result of the foregoing design defects, the t:slim pump created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the t:slim pump.

107.    Dexcom has intentionally and recklessly designed the G6 System and t:slim pump

-17-

with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

108.    As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

109.    As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

110.    In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

111.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### THIRD CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

112.    Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

113.    Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed post-market surveillance, distributed and sold the G6 System that was purchased for decedent.

114.    Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed post-market surveillance, distributed and sold the t:slim pump that was purchased for decedent.

115.    The G6 System purchased for decedent contained a condition or conditions, which Dexcom did not intend, at the time the G6 System left Dexcom's control and possession.

116.    The t:slim pump purchased for decedent contained a condition or conditions, which

-18-

117. Tandem did not intend, at the time the t:slim pump left Tandem's control and possession.

118. Decedent and decedent's health care providers used the G6 System in a manner consistent with and reasonably foreseeable to Dexcom.

119. Decedent and decedent's health care providers used the t:slim pump in a manner consistent with and reasonably foreseeable to Tandem.

120. As a result of these conditions, the products failed to perform as safely as the ordinary consumer would expect, causing injury, when used in a reasonably foreseeable manner.

121. The G6 System was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent.

122. The t:slim pump was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent.

123. As a result of the manufacturing defects, the G6 System and t:slim pump create risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System and t:slim pump.

124. Dexcom has intentionally and recklessly manufactured the G6 System with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others

125. Tandem has intentionally and recklessly manufactured the t:slim pump with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

126. As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

127. As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

-19-

128.    In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

129.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## FOURTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

130.    Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

131.    Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the G6 System, including the one purchased for decedent, into the stream of commerce and in the course of same, directly advertised and marketed the G6 System to consumers or persons responsible for consumers.

132.    Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the t:slim pump, including the one purchased for decedent, into the stream of commerce and in the course of same, directly advertised and marketed the t:slim pump to consumers or persons responsible for consumers.

133.    At the time Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and put the G6 System into the stream of commerce, Defendant knew, or reasonably should have known, the G6 System presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

134.    At the time Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and put the t:slim pump into the stream of commerce, Tandem knew, or reasonably should have known, the t:slim pump presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated

-20-

1    use.

2         135.    Specifically, Dexcom knew, or reasonably should have known, the G6 System posed

3    a significant risk of inaccurate or failed glucose monitoring, reporting and alerting, resulting in

4    significant injuries or deaths.

5         136.    Specifically, Tandem knew, or reasonably should have known, the t:slim pump

6    posed a significant risk of insulin stacking if the G6 System transmitted an inaccurate BGV, which

7    would likely cause a hypoglycemic event resulting in significant injuries or death.

8         137.    Dexcom had a duty to warn of the risk of harm associated with the use of the G6

9    System and to provide adequate warnings concerning the risk of failed, inaccurate, or delayed (not

10   real-time) BGV readings, notifications, and alarm failures to the user and his or her medical

11   providers.

12        138.    Tandem had a duty to warn of the risk of harm associated with the t:slim pump

13   administering insulin based upon inaccurate BGV transmitted to the device by the G6 System and to

14   provide adequate warnings concerning the risk of insulin stacking to patients using the t:slim pump.

15        139.    Dexcom failed to adequately warn and instruct the decedent and his health care

16   providers that the G6 System should not be relied upon as a sole method to calculate, measure,

17   report and assess a diabetic's BGV.

18        140.    Tandem failed to adequately warn and instruct the decedent and his health care

19   providers that the G6 System should not be relied upon as a sole method to calculate, measure,

20   report and assess a diabetic's BGV, and therefore, a user such as decedent should take fingerstick

21   test before administering unscheduled insulin bolus from the t:slim pump.

22        141.    The risks associated with the G6 System are of such a nature that health care

23   providers and users could not have recognized the potential harm. The risks associated with the

24   t:slim pump are of such a nature that health care providers and users could not have recognized the

25   potential harm.

26        142.    The G6 System was defective and unreasonably dangerous at the time of its release

27   into the stream of commerce due to the inadequate warnings, labeling and/or instructions

28   accompanying the product, including but not limited to, its representation as the replacement for

fingerstick glucose testing system.

143.    The t:slim pump was defective and unreasonably dangerous at the time of its release into the stream of commerce due to the inadequate warnings, labeling and/or instructions accompanying the product, including but not limited to, its representation the G6 System serves as the replacement for fingerstick glucose testing system.

144.    The G6 System, when purchased for decedent, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Dexcom.

145.    The t:slim pump, when purchased for decedent, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Tandem.

146.    Dexcom intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the G6 System in order to advance their own financial interests, with wanton and willful disregard for the rights and health of decedent.

147.    Tandem intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the t:slim pump in order to advance their own financial interests, with wanton and willful disregard for the rights and health of decedent.

148.    As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

149.    As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

150.    In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

151.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

**FIFTH CAUSE OF ACTION**

2

**WRONGFUL DEATH**

3      152.    Plaintiff realleges and incorporates by reference every allegation contained in all

4   other paragraphs of this Complaint as if each were set forth fully and completely herein.

5      153.    As a result of the acts and/or omissions of Defendants, and each of them, as set

6   aforesaid, Decedent Anthony Higginbottom's use of the G6 Sytem and t:slim pump caused him to

7   stack insulin, become hypoglycemic, lose consciousness while operating a motor vehicle, crash,

8   and die on August 5, 2020.

9      154.    Plaintiff Joseph Higginbottom was Decedent Anthony Higginbottom's father and

10  is a rightful heir to his estate.

11     155.    As a direct and proximate result of the acts of Defendants, and each of them,

12  Plaintiff Joseph Higginbottom has sustained pecuniary loss resulting from the loss of love, comfort,

13  society, attention, services and support of Decedent in a sum exceeding $25,000 exclusive of

14  interest and costs.

15     156.    Plaintiff has lost pre-judgment interest pursuant to Civil Code Section 3288, the

16  exact amount of which Plaintiff prays leave of the Court to insert herein when finally ascertained.

17     157.    As a further direct and proximate result of the said conduct of Defendants, and each

18  of them, Plaintiff has incurred, and will incur, loss of income, wages, pensions, profits and

19  commissions, a diminished earning potential and other pecuniary losses, the full nature and extent

20  of which are not yet known to Plaintiff; and leave is requested to amend this Complaint to conform

21  to proof at the time of trial.

22     158.    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them

23  individually, jointly, severally and in the alternative, requests compensatory damages, punitive

24  damages, together with interest, costs of suit, attorney's fees, and such further relief as the Court

25  deems equitable and just.

26  ///

27  ///

28  ///

-23-

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. For general damages according to proof;

2. For loss of income according to proof;

3. For punitive damages according to proof;

4. For Plaintiff's costs of suit herein; and

5. For such other and further relief as this Court deems just and proper, including costs as provided in California Code of Civil Procedure sections 998 and 1032 and related provisions of law.

DATED:  January 26, 2024               Respectfully Submitted,

By: _____

Melisa A. Rosadini-Knott
PEIFFER WOLF CARR KANE CONWAY &
WISE, LLP


By:        */s/ Robert M. Hammers, Jr.*
Robert M. Hammers, Jr. (*Pro hace vice*
application forthcoming)
HAMMERS LAW FIRM, LLC


By:        */s/ Jason E. Ochs*
Jason Edward Ochs
OCHS LAW FIRM


*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff hereby demands a trial by jury on all claims so triable.

3

4   DATED:  January 26, 2024                Respectfully Submitted,

5
                                            By: _____
6                                               Melisa A. Rosadini-Knott
                                                PEIFFER  WOLF  CARR  KANE  CONWAY  &
7                                               WISE, LLP

8

9
                                            By: _____
10                                              _/s/ Robert M. Hammers, Jr._
                                                Robert M. Hammers, Jr. (*Pro hace vice*
11                                              application forthcoming)
                                                HAMMERS LAW FIRM, LLC
12

13
                                            By: _____
14                                              _/s/ Jason E. Ochs_
                                                Jason Edward Ochs
15                                              OCHS LAW FIRM

16
                                                *Attorneys for Plaintiff*
17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL