1 | **NELSON MULLINS RILEY & SCARBOROUGH LLP**
2 | Michael J. Hurvitz (SBN: 249050)
  | 750 B Street, Suite 2200
3 | San Diego, CA 92101
  | Telephone:  619.489.6165
4 | Facsimile:  619.821.2834
  | mike.hurvitz@nelsonmullins.com
5 |
6 | Jenny A. Covington (SBN: 233625)
  | 1600 Utica Avenue South, Suite 600
7 | Minneapolis, MN 55416
  | Telephone:  612.464.7626
  | Facsimile:  612.255.0739
8 | jenny.covington@nelsonmullins.com
9 | Attorneys for Defendant
  | TANDEM DIABETES CARE, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM, | Case No. 3:24-cv-00195-WQH-BLM |
| | (Removed from San Diego Superior Court, Case No: 37-2024-00003700-CU-PL-CTL) |
| Plaintiff, | **DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT** |
| vs. | |
| DEXCOM, INC. and TANDEM DIABETES CARE, INC., | Date:  March 18, 2024 |
| Defendants. | **NO ORAL ARGUMENT PURSUANT TO LOCAL RULE** |
| | Trial Date:      None |
| | Action Filed:   January 26, 2024 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 18, 2024, or as soon thereafter as counsel may be heard in Courtroom 14B of the above-captioned court, located at 333 West Broadway, San Diego, California 92101, defendant Tandem Diabetes Care, Inc.

("Tandem") will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the complaint filed by Plaintiffs.

This motion is made pursuant to Rule 12(b)(6) on the grounds that Plaintiffs have not set forth facts supporting any legally cognizable claim.

Pursuant to the Local Rules, the Court generally decides motions based on the papers submitted by the parties. If the Court decides that oral argument will assist it in deciding the motion, counsel will be notified telephonically at least three (3) court days before the scheduled hearing date.

This motion is based on this notice, the memorandum of points and authorities filed in support of the motion, the Request for Judicial Notice and on such other and further matters as may be presented to the Court at or prior to the hearing.

DATED: February 20, 2024          NELSON MULLINS RILEY &
                                   SCARBOROUGH LLP


                          By:  /s/ Jenny A. Covington
                               Jenny A. Covington
                               Attorneys for Defendant
                               TANDEM DIABETES CARE, INC.

1

# **<u>TABLE OF CONTENTS</u>**

2    Memorandum of Points and Authorities ..........................................................1

3          I.      Introduction ...................................................................................1

4          II.     Statement of Facts .........................................................................2

5                  A.      Plaintiffs' Complaint ........................................2

6          III.    Legal Standard ...............................................................................5

7          IV.     Law and Analysis...........................................................................6

8                  A.      Federal law expressly preempts all of Plaintiffs'

9                          claims ...............................................................6

10                 B.      Plaintiffs' claims are implausible ...................................15

11                 C.      Plaintiffs' derivative wrongful death claim must

12                         be dismissed.........................................................21

13   Conclusion .......................................................................................22

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Medtronic, Inc.*, No. 14-CV-00615-BAS-RBB,
2015 WL 2115342 (S.D. Cal. May 6, 2015) ................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................1, 6

*Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 573 P.2d 443 (1978)............15, 18

*Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560 (Ct. App. 1978) .............15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................1, 6

*Billetts v. Mentor Worldwide, LLC*, 847 F. App'x 377 (9th Cir. 2021)........13

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272 (10th Cir. 2021) ..........7, 9

*Buckman Co., v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001) ...................4

*Caplinger v. Medtronic, Inc.*, 784 F.3d 1335 (10th Cir. 2015) .........10, 12, 15

*Carlin v. Superior Ct.*, 13 Cal. 4th 1104, 920 P.2d 1347 (1996) .................19

*Chandler v. Chiron Corp.*, 176 F.3d 481 (9th Cir. 1999) .............................19

*Cruz v. Sears*, No. 12-CV-00623-H (BGS), 2012 WL 13175896
(S.D. Cal. Apr. 16, 2012).................................................................................15

*Currier v. Stryker Corp.*, No. 2:11-CV-1203 JAM-EFB, 2011 WL
4898501 (E.D. Cal. Oct. 13, 2011)................................................................19

*DeCoteau v. FCA US LLC*, No. 2:15-CV-00020-MCE-EFB, 2015 WL
6951296 (E.D. Cal. Nov. 10, 2015)................................................................16

*Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK AJWX, 2014 WL
3056026 (C.D. Cal. June 25, 2014) ........................................................12, 15

*Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868 (N.D. Cal. 2013).................5

*Farmers Ins. Exch. v. Dahlheimer*, 3 P.3d 820 (Wyo. 2000).......................21

*Faustino v. Alcon Lab'ys, Inc.*, No. CV-1504145-RGK-AJWX,
2015 WL 12839161(C.D. Cal. Sept. 22, 2015)............................................18

*Faustino v. Alcon Lab'ys, Inc. (a division of Novartis AG)*,
692 F. App'x 819 (9th Cir. 2017)..................................................................18

*Frere v. Medtronic, Inc.*, No. CV-1502338-BRO-DTBX, 2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) ....................................................................19

*Garcia v. Sanofi Pasteur Inc.*, 617 F. Supp. 3d 1169 (E.D. Cal. 2022) ........20

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ..........................6

*Gomez v. Great-W. Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156 (S.D. Cal. 2022) ..........................................................................................2

*Grant v. Corin Grp. PLC*, No. 3:15-CV-169-CAB-BLM, 2016 WL 4447523 (S.D. Cal. Jan. 15, 2016) ....................................................................7

*Henderson v. Harnischfeger Corp.*, 12 Cal. 3d 663, 527 P.2d 353 (1974) ...15

*Herron v. Smith & Nephew, Inc.*, 7 F. Supp. 3d 1043 (E.D. Cal. 2014) .........9

*Houska v. Newkota Servs. & Rentals*, No. 20-CV-68-SWS, 2020 WL 10356992 (D. Wyo. Aug. 3, 2020) ....................................................................16

*Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166 (C.D. Cal. 2013) ......11, 15

*Kashani-Matts v. Medtronic, Inc.*, No. SACV 13-01161-CJC(RNBx), 2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) ..............................................12

*Knoppel v. St. Jude Med. Inc.*, No. SACV 13-383 JVS ANX, 2013 WL 3803612 (C.D. Cal. May 7, 2013) ....................................................16

*Krulewich v. Covidien, LP*, No. 19cv2857 (JGK), 2020 WL 5995103 (S.D.N.Y. Oct. 9, 2020) ....................................................................17

*Lawrence v. Medtronic*, No. CV 16-7289 DSF (ASX), 2017 WL 826963 (C.D. Cal. Feb. 27, 2017) ....................................................................14

*Lawrence v. Medtronic*, 791 F. App'x 679 (9th Cir. 2020) ..........................10

*Lin Joon Oh v. Tchrs. Ins. & Annuity Ass'n of Am.*, 53 Cal. App. 5th 71, 266 Cal. Rptr. 3d 622 (2020) ....................................................................21

*Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152 (E.D. Cal. 2019) ..............20

*McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59 (Wyo. 1989) ....................18

*Michajlun v. Bausch & Lomb, Inc.*, No. 14-CV-1365-JM-JMA, 2015 WL 1119733 (S.D. Cal. Mar. 11, 2015) ....................................................5

*Nunn v. Mentor Worldwide, LLC*, 847 F. App'x 373 (9th Cir. 2021)...........13

*Park-Kim v. Daikin Indus., Ltd*, No. 2:15-CV-09523-CAS-KKX, 2016 WL 6744764 (C.D. Cal. Nov. 14, 2016) ................................................20

*Park-Kim v. Daikin Applied Americas, Inc.*, 747 F. App'x 639 (9th Cir. 2019)................................................................................21

*Paturzo v. Bos. Sci. Corp.*, No. 8:16-CV-2174-JLSKESX, 2017 WL 8220600 (C.D. Cal. Apr. 21, 2017) ............................................12

*Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013) ...........................9

*Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009 (N.D. Cal. 2012) ..................................................................................16

*Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) .......................................................................17

*Richardson v. Tandem Diabetes Care Inc.*, No. 2:21-CV-03522, 2023 WL 2393692 (W.D. La. Mar. 7, 2023)...................................10

*Riegal v. Medtronic, Inc.*, 552 U.S. 312 (2008) ...........................6, 7, 8, 9, 11

*Rohde v. Smiths Med.*, 2007 WY 134, 165 P.3d 433 (Wyo. 2007)..............16

*Sivilli v. Wright Med. Tech., Inc.*, No. 18-CV-2162-AJB-JLB, 2019 WL 3803808 (S.D. Cal. Aug. 13, 2019)...............................................18

*Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149 (S.D. Cal. 2015) ......................21

*United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (9th Cir. 2017) .......5

*Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956 (S.D. Cal. 2021) ................................................................................5

*Weaver v. Ethicon, Inc.*, No. 16-CV257-GPC(BGS), 2017 WL 680725 (S.D. Cal. Feb. 21, 2017) ................................................................14

*Weaver v. Ethicon, Inc.*, 737 F. App'x 315 (9th Cir. 2018)..........................21

*Weber v. Allergan, Inc.*, 940 F.3d 1106 (9th Cir. 2019)................................7

*Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173 (9th Cir. 2021) ....................6

*Woodard v. Stryker Corp.*, No. 11-CV-36-F, 2012 WL 12860868

-iv-

1 | (D. Wyo. Feb. 9, 2012) ..................................................................20

2 | *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075 (N.D. Cal. 2011)..17

3

4 | **Other Authorities**

5 | 21 C.F.R. § 814.3a(d) ........................................................................8

6 | 21 C.F.R. § 814.80................................................................................8

7 | 21 U.S.C. §360k...................................................................................7

8 | H.R. Rep. No. 94-853 (1976) ............................................................7

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This product-liability action arises from decedent Joseph Higginbottom's ("Decedent's") use of two medical devices, from two different manufacturers, to treat his diabetes. Plaintiffs contend, with no supporting factual allegations, that these devices simultaneously failed while he was driving, causing Decedent to pass out and fatally crash his car. While Tandem is sympathetic of Decedent tragic accident—allegedly caused by a known symptom of diabetic shock or hypoglycemia, losing consciousness—his family and estate's claims against Tandem must be dismissed for two independent reasons.

*First*, these claims against Tandem are expressly preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetics Act. *See* 21 U.S.C. § 360k(a). Tandem's t:slim X2 insulin pump with Basal-IQ technology, serial number 680492, is a Class III medical device determined by the Food and Drug Administration to be safe and effective through the premarket approval ("PMA") process. State-law claims, like those here, against Class III medical devices are expressly preempted where: (a) they are centered on the safety and effectiveness of the device; and (b) seek to impose state-law requirements that are different from, or in addition to, the federal requirements already imposed by the FDA. Both requirements are demonstrably satisfied here, rendering the claims preempted.

*Second*, even without preemption, Plaintiffs have failed to plead sufficient facts to render their claims plausible as required by *Iqbal* and *Twombly*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Plaintiffs' claims amount to nothing more than conclusory allegations that Tandem's insulin pump is defective and unreasonably dangerous. But Plaintiffs never adequately identify a defect with the insulin pump, or the requisite element of causation. As pleaded, Plaintiffs' Complaint is nothing more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]" that are insufficient to survive a

motion to dismiss. *See Gomez v. Great-W. Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156, 1159 (S.D. Cal. 2022) (quoting *Iqbal*, 556 U.S. at 678).[1]

## II.   **STATEMENT OF FACTS**

### A.   **Plaintiffs' Complaint**

Plaintiffs allege that Decedent was using two different medical devices as part of his diabetes treatment plan. (Plfs.' Compl. ¶¶ 14-17.) The first device was the G6 System manufactured by Defendant Dexcom, Inc. The G6 System is an integrated Continuous Glucose Monitoring system that measures and collects the user's blood glucose value, reads the user's glucose levels (through a wearable sensor patch and transmitter) and transmits such values to the user by way of a display device. (*Id.* at ¶¶ 25-27.) The second device was the t:slim insulin pump manufactured by Defendant Tandem. The t:slim insulin pump is a prescribed medical device intended for use by diabetic patients as an automated insulin delivery system ("AID") to provide subcutaneous delivery of insulin, at set and variable rates, for the management of diabetes mellitus in persons requiring insulin. (Plfs.' Compl. ¶ 17). The t:slim pump can be used independently for insulin delivery or can integrate with the G6 System to receive and display blood glucose measurements. *Id.*

Plaintiffs contend that in August 2020, Decedent changed out his G6 System sensor and went to bed. After the two-hour start-up process, the system read his blood-glucose values as extremely high. (Plfs.' Compl. ¶ 43.) The next morning, the G6 System was still reading his levels as high and the insulin pump delivered an insulin bolus. (*Id.* at ¶ 44.) A little over an hour later, while driving, the insulin pump delivered a second bolus, "thereby stacking his insulin." (*Id.*) Plaintiffs allege, in

---

[1] There is a choice of law issue in this case regarding whether California or Wyoming law will apply. Because the outcome of *this* motion is not impacted by whether the Court applies California or Wyoming law, the Court need not make any choice of law analysis at this time. Rather, Tandem will cite both state's laws where appropriate. Tandem explicitly does not waive the right to assert the applicability of Wyoming law to this claim arising out of a car accident in Wyoming.

TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT

conclusory fashion, that "[t]he second bolus dropped decedent into hypoglycemia, causing him to pass out behind the wheel, and crash into a Laramie County weed and pest truck servicing the shoulder of the road." (*Id.* at ¶ 46.)

Despite no factual allegations as to how the medical devices were defective, or caused the accident, Plaintiffs filed this lawsuit against both Dexcom and Tandem. Regarding the G6 System, Plaintiffs vaguely and baselessly allege the system did not make accurate readings and the system did not alert Plaintiff of those readings. (Plfs.' Compl. ¶¶ 48-52.) As to Tandem's insulin pump, the Complaint is even less clear. Apart from generic and conclusory attacks on the insulin pump's safety and efficacy, Plaintiffs' primary complaint regarding the insulin pump is that it may have administered insulin to Decedent based on problems or defects with the G6 System. (*See e.g.*, *id.* at ¶¶ 60 ("Defendants knew the G6 System integrated with the t:slim pump was often inaccurate"), 74 ("Tandem knew, or reasonably should have known, the t:slim pump may administer a second bolus of insulin, and therefore, stack insulin because the G6 System failed to measure its user's BGV accurately"). These allegations do not concern an alleged "defect" with the insulin pump whatsoever.

**B.    History of the t:slim X2 Insulin Pump with Basal-IQ Technology**

The device at issue in this case is the Tandem t:slim X2 insulin pump with Basal-IQ technology. (Plfs.' Compl. ¶ 8.) The t:slim X2 insulin pump is intended for the subcutaneous delivery of insulin, at set and variable rates, for the management of diabetes mellitus in persons requiring insulin.[2] The t:slim X2 insulin pump with Basal-IQ Technology ("The System") consists of the t:slim X2 insulin pump, which contains

---

[2]    The FDA Approval letter can be accessed at: https://www.accessdata.fda.gov/cdrh_docs/pdf18/P180008A.pdf (last visited on February 3, 2024); *See also* The PMA database listing for the approved supplements with respect to the t:slim X2 insulin pump with Basal-IQ technology, which can be accessed at: https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?start_search=1&PMANumber=P180008&SupplementNumber= (last visited on February 3, 2024).

TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT

the Basal-IQ technology, and a Continuous Glucose Monitor ("CGM").[3] The System provides responsive insulin delivery using CGM values to reduce the frequency and duration of low-glucose events by predicting glucose levels 30 minutes ahead, suspending insulin when necessary, and then resuming insulin delivery.[4]

The FDA has the exclusive authority to regulate and oversee medical devices. 21 U.S.C. § 360k(a). Different types of devices receive varying levels of FDA scrutiny. 21 U.S.C. § 360c(a)(1)(C)(ii). Devices that support or sustain human life, or present a potential unreasonable risk of injury, are designated "Class III" devices. *Id.* Such devices must receive premarket approval ("PMA") from the FDA before being sold. *Buckman Co., v. Plaintiff's Legal Comm.*, 531 U.S. 341, 344 (2001). It is a matter of public record that on June 21, 2018, the FDA granted premarket approval to the t:slim X2 insulin pump with Basal-IQ technology and classified it as a Class III device pursuant to premarket approval No. P180008. This information is publicly available on the FDA's premarket approval database.[5]

---

[3] *Id.*

[4] The Safety and Effectiveness Data for the t:slim X2 insulin pump with Basal-IQ technology is accessible at https://www.accessdata.fda.gov/cdrh_docs/pdf18/P180008B.pdf (last visited on February 3, 2024)

[5] The FDA's searchable database for PMA listings is accessible via the following link, and this device can be found using its PMA Number P180008: https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?startsearch=1&PMANumber=P180008&SupplementNumber= (last visited on February 3, 2024). The PMA database listing for the t:slim X2 insulin pump with Basal-IQ technology is accessible at: https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?ID=419643 (last visited on February 3, 2024); The Safety and Effectiveness Data for the t:slim X2 insulin pump with Basal-IQ technology is accessible at https://www.accessdata.fda.gov/cdrh_docs/pdf18/P180008B.pdf (last visited on February 3, 2024); The PMA database listing for the approved supplements with respect to the t:slim X2 insulin pump with Basal-IQ technology, can be accessed at: https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?start_search=1

---

This Court can consider these citations to the FDA website for Tandem's motion to dismiss for two independent reasons. ***First***, the Court may take judicial notice of matters of public record. *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1171 (9th Cir. 2017) ("In the analogous context of a motion to dismiss, a court can consider matters of public record even when assuming the truth of the allegations"). This specifically includes FDA materials on its website. *See, e.g.*, *Michajlun v. Bausch & Lomb, Inc.*, No. 14-CV-1365-JM-JMA, 2015 WL 1119733, at *3 (S.D. Cal. Mar. 11, 2015) ("Under these rules, courts may take judicial notice of the records and reports of administrative bodies including documents and information posted on the FDA's public website" (citations and quotations omitted)); *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878 (N.D. Cal. 2013) (taking judicial notice of FDA materials on preemption motion and collecting cases). ***Second***, "[u]nder the incorporation by reference doctrine, the Court may consider in a motion to dismiss any documents referenced in the complaint or on which the complaint necessarily relies." *Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956, 961 (S.D. Cal. 2021). Here, Plaintiffs cite to www.accessdata.fda.gov in their Complaint. Because Plaintiffs incorporated this website, Tandem may cite to it in its Motion to Dismiss and the Court may consider these citations—the website is part of Plaintiffs' pleading.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal based on "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, Plaintiffs must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1974 (2007). In other words, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to

---

&PMANumber=P180008&SupplementNumber= (last visited on February 3, 2024).

survive dismissal. *Twombly*, 550 U.S. at 570. Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Court need "not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 663); *Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citing Fed. R. Civ. P. 8(a))); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable interferences"). Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

This "plausibility" standard applies to all claims brought in federal court, including those based on state law that have been removed from state court. See *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

## IV.    LAW AND ANALYSIS

### A.    Federal law expressly preempts all of Plaintiffs' claims.

#### i.    Overview of the MDA and preemption principles.

In enacting the Medical Device Amendments of 1976 ("MDA"), Congress granted FDA the exclusive authority to regulate medical devices, thereby creating a comprehensive "regime of federal oversight." *Riegal v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008).[6] Recognizing the "undue burdens" imposed by differing state regulations,

---

[6] In *Riegel*, the plaintiff brought a personal injury suit against Medtronic, the manufacturer of a Class III PMA-approved balloon catheter that allegedly ruptured during the plaintiff's angioplasty procedure. The plaintiff asserted state-law product

Congress included within the MDA a "general prohibition on non-Federal regulation" of medical devices in the form of an express preemption clause. 21 U.S.C. §360k; *See* H.R. Rep. No. 94-853, at 45 (1976). Under Section 360k(a), no state may impose "any requirement" relating to the safety or effectiveness of a medical device that "is different from, or in addition to, any requirement applicable . . . to the device" under federal law. 21 U.S.C. § 360k(a).

To determine whether a state law claim is expressly preempted by the MDA, the Supreme Court in *Riegel* established a two-step test. 552 U.S. at 321-22. First, a court must examine whether "the Federal Government has established requirements applicable to" the medical device. *Id.* at 321. Second, if the Federal Government has, the court then must determine whether the plaintiff's state-law claim would impose "requirements with respect to the device that are 'different from, or in addition to'" the federal requirements. *Id.* at 321-22. In other words, "[a] claim is expressly preempted if it would impose requirements relating to safety or effectiveness that are "different from, or in addition to" federal requirements." If both steps of the *Riegel* test are satisfied, any state-law claim relating to the safety or effectiveness of a medical device is expressly preempted. *See also Weber v. Allergan, Inc.*, 940 F.3d 1106, 1111 (9th Cir. 2019) (explaining preemption analysis and holding "for a state law claim regarding a Class III medical device to survive express preemption by the MDA, a plaintiff must establish that the defendant violated an FDA requirement."); *Grant v. Corin Grp. PLC*, No. 3:15-CV-169-CAB-BLM, 2016 WL 4447523, at *3 (S.D. Cal. Jan. 15, 2016) (explaining two-step standard).[7]

_____

liability claims, including strict liability, breach of implied warranty, and negligence. *See Riegel*, 552 U.S. at 312. The Supreme Court held each of the plaintiff's state law claims was expressly preempted. *Id.* at 322–23, 330.

[7] The Tenth Circuit applies the same two-step analysis. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1279 (10th Cir. 2021).

ii.    **The first prong of the *Riegel* test is satisfied because the t:slim Insulin Pump with Basal-IQ Technology is a class III medical device that was approved through the PMA process.**

In analyzing the first part of the two-step test, the Court in *Riegel* gave particular deference to Class III medical devices approved by the FDA through the premarket approval ("PMA") process. *Riegel*, 552 U.S. at 317-319. As the Court noted, the FDA "grants premarket approval only if it finds there is a 'reasonable assurance' of the device's safety and effectiveness." *Id.* at 317. The Court explained that to obtain premarket approval, a manufacturer must submit a detailed, typically multivolume application that contains, among other things:

> full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a full statement of the device's components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device; samples or device components required by the FDA; and a specimen of the proposed labeling.

*Riegel*, 552 U.S. at 318 (quotation marks omitted). The FDA closely scrutinizes all premarket approval applications, spending "an average of 1,200 hours reviewing each application" and "weig[hing] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Riegel*, 552 U.S. at 318 (citing 21 U.S.C. § 360c(a)(2)(C)).

Even after the PMA process is complete, the FDA's involvement with the subject PMA device continues. *See* 21 C.F.R. § 814.80 (prohibiting the production or labeling of any device in a manner inconsistent with any conditions of approval specified in the PMA order); 21 C.F.R. § 814.3a(d) (requiring an applicant to submit a supplemental application setting forth any proposed changes for FDA approval before implementing any changes). In other words, once a device receives premarket approval, the FDA forbids the manufacturer from making any changes to the design

specifications, manufacturing process, labeling, or any other attribute that would affect the product's safety or effectiveness absent additional FDA approval. *Reigel*, 552 U.S. at 319.

Because the FDA's premarket approval review is so exhaustive, the Supreme Court has found devices that receive premarket approval to be automatically subject to federal requirements for purposes of the preemption analysis. *See id.* at 322-23; *See also Perez v. Nidek Co.*, 711 F.3d 1109, 1118 (9th Cir. 2013) (explaining that the first prong is satisfied for PMA devices); *Herron v. Smith & Nephew, Inc.*, 7 F. Supp. 3d 1043, 1048 (E.D. Cal. 2014) ("This first step is plainly met by the PMA process here, as pre-market approval imposes requirements under the MDA, and they are specific to individual devices." (quotation marks omitted)).[8]

As previously demonstrated herein, the t:slim X2 insulin pump with Basal-IQ technology is a Class III device subject to the PMA process, receiving approval on or about June 18, 2018 Because it is automatically subject to "federal requirements" , the first prong of the Riegel test is satisfied.

> ### iii.   The second prong is satisfied as Plaintiffs' state law claims seek to impose requirements that are different to federal requirements—they are not permissible parallel claim.

Having clearly satisfied the first prong, the only issue before this Court regarding preemption is whether the second prong of the *Riegel* test is satisfied  - i.e., whether the state claims brought by plaintiffs impose requirements relating to safety or effectiveness that are "different from, or in addition to" federal requirements. The courts have explained that to survive this second prong, the state law claim must be "parallel, rather than add to, federal requirements." *Anderson v. Medtronic, Inc.*, No. 14-CV-00615-BAS-RBB, 2015 WL 2115342, at *4 (S.D. Cal. May 6, 2015) (quoting

---

[8] *Brooks*, 985 F.3d at 1279 n.2 (10th Cir. 2021) ("[T]hese implants have endured the premarket approval process, which subjects them to federal requirements.")

TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT

*Riegel*, 552 U.S. at 330); *Lawrence v. Medtronic*, 791 F. App'x 679 (9th Cir. 2020) ("State-law claims for devices that have undergone PMA are preempted to the extent that they impose requirements that are different from, or in addition to' the requirements imposed by federal law" (cleaned up)).[9] Put another way, the state law claim must mirror the federal law, it cannot be different. State law claims that meet this requirement are referred to as parallel claims.

Notably, state law claims nearly identical to those alleged here, brought with respect to the same Class III PMA pump at issue here, have previously been dismissed under this second prong of the *Riegel* text. In a product liability case brought against Tandem concerning Tandem's t:slim X2 insulin pump with Basal-IQ technology, the United States District Court for the Western District of Louisiana recently held that the plaintiff's common law tort claims for strict liability and negligence in design and manufacturing were preempted under the MDA. *Richardson v. Tandem Diabetes Care Inc.*, No. 2:21-CV-03522, 2023 WL 2393692, at \*4 (W.D. La. Mar. 7, 2023). Specifically, with respect to the second prong of Riegel's two-part test, the court found that "state tort claims brought against manufacturers of Class III PMA medical devices that are not premised on violations of federal requirements necessarily impose duties that are 'different from or in addition to' the requirements set forth by the FDA and, as such, are preempted." *Id.*

As detailed below, the state law claims brought by plaintiffs here against Tandem seek to impose requirements that are different from those imposed by the FDA with respect to Tandem's t:slim X2 insulin pump with Basal-IQ technology. Because the second prong of the *Riegel* test is not satisfied here, plaintiffs claims against Tandem are preempted and must be dismissed.

---

[9]*Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1338 (10th Cir. 2015) (10th Circuit Accord*)*

### 1. *Design-defect claims (Counts 1 and 2)*[10]

Plaintiffs assert a design-defect claim as part of both their general negligence claim (Count 1) and strict liability claim (Count 2). In support of these claims, Plaintiffs rely on conclusory allegations that the design of the insulin pump was defective and that it may deliver a second bolus of insulin because of the G6 System's failure. (Plfs.' Compl. ¶¶ 74, 80, 95, 100.) Notably, neither claim asserts that the design of the insulin pump deviated from the design approved by the FDA. Indeed, plaintiffs fail to allege any specific allegations regarding the defective design of the pump. At their core, Plaintiffs' design defect claims are an attack on the FDA's approval requirements for the pump. As such, Plaintiffs are attempting to impose requirements on the insulin pump that are either "different from, or in addition to" the federal requirements already imposed by the FDA. *Riegel,* 551 U.S. at 321-322.

California federal courts have repeatedly dismissed claims like these that contend the design is defective, finding that such claims necessarily impose requirements different than the FDA. For example, in *Houston v. Medtronic, Inc.*, a product liability case involving injuries related to a spinal fusion device, plaintiffs design defect allegations were simply conclusory attacks on the safety of the device's design. 957 F. Supp. 2d 1166, 1170 (C.D. Cal. 2013). The court noted :

> Plaintiff's design defect claim alleges that the Infuse Device was "defectively designed at the time that it left the Defendants' control" because "the design was unsafe when used in the manner promoted by Defendants," and because "the risks of danger in the design outweigh the benefits of the design." In other words, this claim attacks "the

---

[10] Plaintiff alleges three independent claims for strict liability under theories of design, manufacturing, and warning defects (Counts 2, 3, and 4). Plaintiff also alleges a general negligence claim on the grounds that a design, manufacturing, and warning defect exists (Count 1). Because the negligence and strict liability claims fail for the same reasons, Tandem's motion to dismiss combines its analysis on these claims—the strict liability and negligent design defect claims are discussed as one, as are the manufacturing and warning claims.

1    risk/benefit analysis that led the FDA to approve an inherently dangerous
2    Class III device."

3    *Id.* at 1177 (citations omitted). The court concluded that these attacks on the FDA-
4    approved design are "expressly preempted" and warranted dismissal.

5        *See, e.g.*, *Paturzo v. Bos. Sci. Corp.*, No. 8:16-CV-2174-JLSKESX, 2017 WL
6    8220600, at *3 (C.D. Cal. Apr. 21, 2017) (holding design-defect claim preempted
7    because "[t]here is no allegation in the FAC that the design of the Teligen ICD is not
8    the design approved by the FDA," therefore, "Plaintiffs are asking that a jury or court
9    second-guess the FDA's approval of the Teligen ICD after it has undergone the PMA
10   process"); *Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK AJWX, 2014 WL
11   3056026, at *4 (C.D. Cal. June 25, 2014) (finding claims preempted because "[b]y
12   way of their claim, Plaintiffs attack the risk/benefit analysis that led the FDA to
13   approve an inherently dangerous Class III device" and "[t]o prevail on this claim, a
14   jury would have to making findings that conflict with those of the FDA"); *Kashani-
15   Matts v. Medtronic, Inc.*, No. SACV 13-01161-CJC(RNBx), 2013 WL 6147032, at
16   *4 (C.D. Cal. Nov. 22, 2013) ("Because Plaintiff's design defect claim is an 'attack'
17   on the FDA review process rather than a parallel state claim, it is preempted by the
18   MDA.").[11]

19       Plaintiffs' conclusory allegations regarding the design defects of the t:slim X2
20   insulin pump with Basal-IQ technology are no different than those addressed by the
21   court in *Houston* and the other cases discussed above. They are veiled attacks on the
22   risk/benefit analysis that led the FDA to approve the insulin pump pursuant to the
23   PMA process.   Such claims are clearly preempted under the law and must be
24   dismissed.

25

26

27

28

---

[11] *See also Caplinger*, 784 F.3d at 1341 (10th Cir. 2015) (affirming dismissal of
design-defect claim because it was not a permissible parallel claim).

## 2.  *Manufacturing-defect claims (Counts 1 and 3)*

Plaintiffs assert a manufacturing defect as part of their general negligence claim (Count 1) and strict liability claim (Count 3). Plaintiffs' manufacturing-defect allegations never rise above conclusory averments and legal recitations: "Tandem breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture . . . of the t:slim pump"; "[t]he t:slim pump was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent"; "[a]s a result of the manufacturing defects, the G6 System and t:slim pump create risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System and t:slim pump." (Plfs.' Compl. ¶¶ 72, 122, 123.) In essence, the insulin pump has a manufacturing defect because it was (somehow) manufactured defectively.

But claims contending a device was manufactured defectively, without explaining how the device deviated from the FDA-approved manufacturing process, are preempted. *See Nunn v. Mentor Worldwide, LLC*, 847 F. App'x 373, 376 (9th Cir. 2021) (explaining that for a manufacturing-defect claim "to survive express preemption under the MDA, Plaintiffs must allege that Defendants deviated from a particular pre-market approval or other FDA requirement applicable to the Class III medical device." (internal quotation mark omitted)).

Instructive to this Court is the Ninth Circuit's decision in *Billetts v. Mentor Worldwide, LLC*, 847 F. App'x 377, 380 (9th Cir. 2021). There, the plaintiffs contended the defendant's breast implants had manufacturing and warning defects, but the district court dismissed their lawsuit as preempted. *Id.* Regarding the manufacturing claim, the court explained that "[f]or their manufacturing defect claims to survive express preemption under the MDA, Plaintiffs must allege that Defendants deviated from a particular pre-market approval or other FDA requirement applicable

to the Class III medical device." *Id.* (internal quotation marks omitted). However, the plaintiffs only "vaguely allege[d]" that the implants contains unidentified materials that differed than those approved by the FDA. *Id.* The court determined that this was conclusory allegation was insufficient, and affirmed dismissal. *Id.*

Because Plaintiffs' manufacturing allegations consists of nothing more than conclusory allegations the insulin pump was defectively manufacturing—which is less than the vague allegation in *Billetts* that was preempted—it is preempted. *See, e.g.*, *Weaver v. Ethicon, Inc.*, No. 16-CV257-GPC(BGS), 2017 WL 680725, at *8 (S.D. Cal. Feb. 21, 2017) (granting motion to dismiss because in order to survive preemption, the plaintiff needed to, but did not, allege "specific allegations that the manufacturing of the device both fell short of the FDA's requirements for manufacturing and—based on the same deficiency—was defectively manufactured under California law" (quotation marks omitted)), aff'd, 737 F. App'x 315 (9th Cir. 2018); *Lawrence v. Medtronic*, No. CV 16-7289 DSF (ASX), 2017 WL 826963, at *1 (C.D. Cal. Feb. 27, 2017) (granting motion to dismiss and explaining "Plaintiff's state law claims based on design and manufacturing defects are preempted to the degree that they are not based on a violation of the FDA's particularized standards for the Synchromed product").

### 3. *Warning-defect claims (Counts 1 and 4)*

Plaintiffs assert a warning defect as part of their general negligence claim (Count 1) and strict liability claim (Count 4). Plaintiffs' warning allegations are straightforward, Tandem should have warned of certain information (from what Tandem can discern, that it should have warned healthcare providers and users of issues with a different product, the G6 System), but did not. (Plfs.' Compl. ¶¶ 74, 76, 138, 140.) In simplest terms, Plaintiffs are contending that Tandem's warnings for its insulin pump were inadequate, and should have contained additional information.

This patently gives rise to textbook express preemption—Plaintiffs are contending the FDA-approved warning materials should have been different. For

example, in *Dunbar v. Medtronic, Inc.*, the plaintiffs contended the defendant's spinal implant was defective. No. CV 14-01529-RGK AJWX, 2014 WL 3056026, at *1 (C.D. Cal. June 25, 2014). For their warning claim, the plaintiffs contended the defendant knew of the dangers of the device, and should have included additional warnings and issued post-sale warnings. *Id.* at *4. The court determined these types of allegations are expressly preempted because they "seek[] to impose on Medtronic labeling or warning requirements that go beyond what federal law requires." *Id.*

Because Plaintiffs' warning claims would require Tandem's labeling to be different than what the FDA approved, these claims are preempted. *See, e.g.*, *Houston*, 957 F. Supp. 2d at 1177 (C.D. Cal. 2013) (holding that the warning "claim is expressly preempted" because "Plaintiff aims to foist upon Defendants labeling or warning requirements 'in addition to' what federal law requires").[12]

## B. Plaintiffs' claims are implausible.

Even if Plaintiffs' claims were not preempted (they are), they are nonetheless implausible. Indeed, Plaintiffs never adequately identify a defect or causation—relying wholly on the conclusory logic that because the product allegedly failed, it must have been defective and the cause of harm. *See Cruz v. Sears*, No. 12-CV-00623-H (BGS), 2012 WL 13175896, at *2 (S.D. Cal. Apr. 16, 2012). This type of logic is insufficient to assert product-liability claims under California law. *See Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560, 565 (Ct. App. 1978); *Henderson v. Harnischfeger Corp.*, 12 Cal. 3d 663, 676, 527 P.2d 353 (1974).

### i. Design-defect claims (Counts 1 and 2)

Generally, a design defect exists if a product is built in accordance with its intended specifications but the design itself is inherently defective. *Barker v. Lull*

---

[12] *See also Caplinger*, 784 F.3d at 1341 (10th Cir. 2015) (affirming dismissal of warranty-defect claim because it goes beyond the "potential scope of any federal regulation" by "attacking not just Infuse's label but also Medtronic's advertising and oral and written representations").

*Eng'g Co.*, 20 Cal. 3d 413, 429, 573 P.2d 443, 454 (1978). To prevail under a strict-liability theory of recovery, Plaintiffs must establish "a defect in the . . . design of the product . . . , causation, and injury." *Knoppel v. St. Jude Med. Inc.*, No. SACV 13-383 JVS ANX, 2013 WL 3803612, at *2 (C.D. Cal. May 7, 2013). While to prevail under a negligence theory of recovery, "a plaintiff must allege duty, breach, and causation, and that "the defect in the product was due to the negligence of the defendant."" *Id.* "Where liability depends on proof of a design defect, there is no practical difference between negligent design and strict liability design." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1025 (N.D. Cal. 2012). Here, Plaintiffs' design-defect claims fail because: (1) Plaintiffs have not identified any defect in the design; and (2) wholly ignore causation.[13]

*First*, Plaintiffs' have not identified—even in vague or conclusory manner—any defect in Tandem's design of the insulin pump. At no point do Plaintiffs identify any defect other than alleging the design should have accounted for the risks of the G6 System. Plaintiffs do not allege was part of the design is at issue, how it was effective, or how it should have been different. This complete lack of any factual allegations regarding the insulin pump's supposed design defect renders this claim implausible. *See, e.g.*, *DeCoteau v. FCA US LLC*, No. 2:15-CV-00020-MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (dismissing design-defect claim because the plaintiffs failed to "allege actual facts that make the existence of" a design defect plausible).[14]

---

[13] Like in California, design-defect claims in Wyoming require the identification of a design defect and causation. *See Rohde v. Smiths Med.*, 2007 WY 134, ¶ 18, 165 P.3d 433, 437 (Wyo. 2007) (discussing elements of design-defect claim). Therefore, Tandem's arguments apply equally under Wyoming law.

[14] *Accord Houska v. Newkota Servs. & Rentals*, No. 20-CV-68-SWS, 2020 WL 10356992, at *4 (D. Wyo. Aug. 3, 2020) (dismissing design-defect claim because there was an "absence of any allegations to support Plaintiff's claim that the missile

***Second***, there are no allegations that the specific (unidentified) design defect was the cause of the insulin pump's alleged failure and Decedent's accident. Meaning, had Plaintiffs identified a defect in the design as they were required to do, there must be some allegation setting forth how ***that*** design defect caused the injuries. That allegation is wholly missing beyond conclusory legal statements. Wholly conclusory allegations regarding causation, like these, are insufficient under Rule 12(b)(6). *See Krulewich v. Covidien, LP*, No. 19cv2857 (JGK), 2020 WL 5995103, at *4 (S.D.N.Y. Oct. 9, 2020) (finding dismissal appropriate where complaint did not adequately allege "that the [design defect] caused [the plaintiff's] injuries, apart from conclusory allegations, such as that the injuries were a direct and proximate result of the defective and unreasonably dangerous product"). Therefore, Plaintiffs' claim fails and is ripe for dismissal. *See Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1081 (N.D. Cal. 2011) (holding that the "but-for standard of causation applies to plaintiffs' design-defect claims" for purposes of Rule 12 motions).[15]

### ii.    *Manufacturing-defect claims (Counts 1 and 3)*

In general, "a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. For example, when

---

manufactured by Defendant FMC suffered from a design defect or was unreasonably dangerous).

[15] To the extent that Plaintiffs' design-defect claims survive both preemption and Tandem's plausibility arguments, the claim can only be pursued under a negligence theory; Count 2's strict-liability theory must be dismissed. This is because California does not recognize strict-liability design-defect claims against prescription medical devices. *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *7 (N.D. Cal. May 31, 2011) ("California law categorically protects manufacturers of prescription medical devices from strict liability for design defects."). And the insulin pump is a prescription medical device. *See* https://www.accessdata.fda.gov/cdrh_docs/pdf18/P180008B.pdf (stating that the device "requires a prescription."

a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect." *Barker*, 20 Cal. 3d at 429, 573 P.2d at 454. To "sufficiently plead a manufacturing defect claim, a plaintiff must identify or describe how a product varies from its intended design or from other 'seemingly identical' product models." *Faustino v. Alcon Lab'ys, Inc.*, No. CV-1504145-RGK-AJWX, 2015 WL 12839161, at *4 (C.D. Cal. Sept. 22, 2015), aff'd sub nom. *Faustino v. Alcon Lab'ys, Inc. (a division of Novartis AG)*, 692 F. App'x 819 (9th Cir. 2017). Here, Plaintiffs' manufacturing-defect claims must be dismissed because: (1) Plaintiff has not identified a manufacturing defect; and (2) causation has not been adequately pleaded.[16]

**First**, nowhere in Plaintiffs' Complaint do they allege the existence of a manufacturing defect. Plaintiffs' merely state, in conclusory terms, that the insulin pump was defectively manufactured. (Plfs.' Compl. ¶¶ 72, 122, 123.) Plaintiffs simply do not contend how the insulin pump deviated from the intended manufacturing specifications. Without identifying a manufacturing defect, Plaintiffs' conclusory claim must be dismissed. *See, e.g.*, *Sivilli v. Wright Med. Tech., Inc.*, No. 18-CV-2162-AJB-JLB, 2019 WL 3803808, at *3 (S.D. Cal. Aug. 13, 2019) (dismissing the plaintiff's manufacturing defect claim because conclusory statements "alleging his Device was manufactured differently than other devices does not survive *Iqbal/Twombly*"); *Faustino*, No. CV-1504145-RGK-AJWX, 2015 WL 12839161, at *4 (C.D. Cal. Sept. 22, 2015) (dismissing manufacturing-defect claim because "[n]owhere in the FAC does Plaintiff put forward any allegations as to how the Systrane eye drops deviated from Defendant's intended design or other product models" and "Plaintiff merely recites the elements of a products liability claim in a conclusory manner without alleging sufficient facts to support a plausible claim of

---

[16] Tandem's arguments regarding the identification of a defect and causation apply equally under Wyoming law. *See McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 64 (Wyo. 1989) (discussing elements of a manufacturing-defect claim).

manufacturing defect"); *Currier v. Stryker Corp.*, No. 2:11-CV-1203 JAM-EFB, 2011 WL 4898501, at *3 (E.D. Cal. Oct. 13, 2011) (dismissing strict-liability claim because "[t]o the extent that Plaintiff's claim rests on the manufacturing defect theory, the FAC does not contain allegations of how the femoral stem product deviated from the manufacturer's original design or from other seemingly identical models").

**Second**, there are no allegations as to causation—i.e. that the (unidentified) manufacturing defect was the cause of the device failure and Plaintiffs' injuries. Merely reciting the element of causation, rather than actual supporting allegations, does not suffice and demands dismissal. *See Frere v. Medtronic, Inc.*, No. CV-1502338-BRO-DTBX, 2016 WL 1533524, at *6 (C.D. Cal. Apr. 6, 2016) ("Nowhere in Plaintiff's FAC does Plaintiff allege any facts to suggest how Defendants' manufacturing defect and failure to warn—as defined by Plaintiff— caused her injuries; she merely alleges the conclusion of causation itself.").

### iii.    *Warning-defect claims (Counts 1 and 4)*

To prevail on a failure-to-warn claim under a strict-liability theory of recovery, Plaintiffs must show that "the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Carlin v. Superior Ct.*, 13 Cal. 4th 1104, 1112, 920 P.2d 1347, 1351 (1996). And to recover under a negligence theory of recovery, Plaintiffs must "prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Id.* Causation is a required element under either theory of recovery. *See Chandler v. Chiron Corp.*, 176 F.3d 481 (9th Cir. 1999). Plaintiffs' failure-to-warn claims must be dismissed because: (1) they

have not identified any inadequacy of the warnings; and (2) there are no allegations that any such defect caused Decedent's accident.[17]

*First*, Plaintiffs have not adequately identified any warning defect. "A plausible claim for a failure to warn should include allegations that inter alia identify which danger was not warned against, explain that the danger was substantial, and that the danger was known or reasonably knowable, or explain how any warning that was given was inadequate." *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1160–61 (E.D. Cal. 2019). Here, apart from legal conclusions that can be disregarded, the only specific allegation is that Tandem should have, but did not, "warn of the risk of harm associated with the t:slim pump administering insulin based upon inaccurate BGV transmitted to the device by the G6 System and to provide adequate warnings concerning the risk of insulin stacking to patients using the t:slim pump" (Plfs.' Compl. ¶ 138.) But there are no allegations that this (vague) danger was substantial, how Tandem knew of this (vague) risk, or what warnings were actually given and how they were inadequate. As currently pleaded, Plaintiffs merely contend that Tandem should have included a generic warning regarding a different medical device, and nothing more. This is insufficient. *See, e.g.*, *Marroquin*, 367 F. Supp. 3d at 1160–61 (granting motion to dismiss warning claim because, in part, "[m]erely stating that the Defendants failed to 'adequately warn' of potentially fatal lung conditions is a bare legal conclusion"); *see also Garcia v. Sanofi Pasteur Inc.*, 617 F. Supp. 3d 1169, 1175 (E.D. Cal. 2022) (explaining that conclusory warnings that a certain risk should have been included does not satisfy federal pleading standards).

*Second*, even if Plaintiffs did identify a warning defect, they did not allege causation. *See, e.g.*, *Park-Kim v. Daikin Indus., Ltd*, No. 2:15-CV-09523-CAS-KKX,

---

[17] Under Wyoming law, Plaintiffs must meet similar elements— Tandem's arguments apply equally under Wyoming law. *See Woodard v. Stryker Corp.*, No. 11-CV-36-F, 2012 WL 12860868, at *4 (D. Wyo. Feb. 9, 2012) (setting forth elements of warning claim).

TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT

2016 WL 6744764, at *7 (C.D. Cal. Nov. 14, 2016) (noting that even if a warning defect was adequately pleaded, the "claim would nonetheless fail because the [complaint] fails adequately to plead causation" as "Plaintiffs do not plausibly allege that 'but for' defendant's failure to warn, the alleged injury to plaintiffs would not have occurred"), aff'd sub nom. *Park-Kim v. Daikin Applied Americas, Inc.*, 747 F. App'x 639 (9th Cir. 2019). Here, there are no allegations that anyone reviewed or read any warnings at any point, or that any change in warning would have made a difference—causation is not alleged beyond a legal recital of the elements. *See, e.g.*, *Tapia*, 116 F. Supp. 3d at 1159 (S.D. Cal. 2015) (dismissing failure-to-warn claim because even though a warning defect was adequately pleaded, causation was generic and insufficient).

Moreover, California applies the learned intermediary doctrine which provides that "the duty to warn in the case of medical devices runs to the physician, not the patient." *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1158 (S.D. Cal. 2015). Here, there are no allegations as to what Tandem warned of Decedent's healthcare provider, if the healthcare provider was already aware of the alleged risk, or if any change of warning would have changed anything. Because Plaintiffs' Complaint fails to adequately allege causation, the claim must be dismissed.

### C. Plaintiffs' derivative wrongful death claim must be dismissed.

Plaintiff's Complaint also contains a wrongful death claim. This claim is derivative of Plaintiffs' product liability claims. *See Lin Joon Oh v. Tchrs. Ins. & Annuity Ass'n of Am.*, 53 Cal. App. 5th 71, 82, 266 Cal. Rptr. 3d 622, 631 (2020). Therefore, to the extent the Court dismisses Plaintiffs' substantive claims, the wrongful death claim must be dismissed as well. *See, e.g.*, *Weaver v. Ethicon, Inc.*, 737 F. App'x 315, 318 (9th Cir. 2018) (affirming dismissal of a derivative claim where the substantive claims were dismissed).[18]

---

[18] Under Wyoming law, wrongful death claims are similarly derivative. *See Farmers*

1  **V.    <u>CONCLUSION</u>**

2         Plaintiffs' lawsuit both preempted by the MDA to the FDCA and implausible.

3  Accordingly, the Court should grant this motion and dismiss all of Plaintiffs' claims

4  against Tandem with prejudice.

5

6  DATED: February 20, 2024          NELSON MULLINS RILEY &
                                      SCARBOROUGH LLP
7

8
                                      By:  */s/ Jenny A. Covington*
9                                          _____
                                           Jenny A. Covington
10                                         Attorneys for Defendant
                                           TANDEM DIABETES CARE, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
*Ins. Exch. v. Dahlheimer*, 3 P.3d 820, 824 (Wyo. 2000).

1

**PROOF OF SERVICE**
**F.R.C.P. Rule 5(b)(2)(3)**

2

3        I, the undersigned, am employed in the County of Duval, State of Florida. I am over the age of 18 and not a party to the within action; am employed with Nelson Mullins Riley & Scarborough LLP and my business address is 50 N. Laura Street, Suite 4100, Jacksonville, FL 32202.

4

5        On February 20, 2024, I served the foregoing document entitled ***DEFENDANT TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT*** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof as follows:

6

7

8        ☐   **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

9

10

11        ☐   **[by FEDERAL EXPRESS]** - I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express. Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

12

13

14        ☐   **[by ELECTRONIC SUBMISSION]** – By transmitting such document(s) electronically from my e-mail address at Nelson Mullins Riley & Scarborough LLP to the person(s) at the electronic mail addresses listed above pursuant to Emergency Rule 12 and/or the agreement of the parties.

15

16

17        ☒   **[by ELECTRONIC SUBMISSION]** – I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

18

19

20

21        ☐   **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s). Such messenger is over the age of eighteen years and not a party to the within action and employed with [attorney service].

22

23

24        I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

25        Executed February 20, 2024 at Jacksonville, FL.

26

27    Allison Abbott                    By: *Allison Abbott*
      ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾                  ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
              Print Name                              Signature

28

1

## SERVICE LIST

2

3

4   Melissa A. Rosadini-Knott, Esq.
    Peiffer Wolf Carr Kane Conway & Wise, LLP
5   3435 Wilshire Blvd., Suite 1400
    Los Angeles, CA 90010
6   mrosadini@peifferwolf.com

7

8   Robert M. Hammers, Jr., Esq.
    Hammers Law Firm, LLC
9   5555 Glenridge Connector, Suite 975
    Atlanta, GA 30342
10  rob@hammerslawfirm.com

11

12  Jason E. Ochs, Esq.
    Ochs Law Firm
13  P.O. Box 10944
    Jackson, WY 83002
14  jason@ochslawfirm.com
15  *Attorneys for Plaintiff*

16

17  Kevin W. Alexander, Esq.
18  Renata Ortiz Bloom, Esq.
    Matthew Nugent, Esq.
19  Gordon Rees Scully Mansukhani LLP
20  101 W. Broadway, Suite 2000
    San Diego, CA 92101
21  kalexander@grsm.com
22  rbloom@grsm.com
    mnugent@grsm.com
23  *Attorneys for Dexcom, Inc.*

24

25

26

27

28

TANDEM DIABETES CARE, INC.'S MOTION TO DISMISS COMPLAINT