MELISA A. ROSADINI-KNOTT (Bar No. 316369)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
3435 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90010
Telephone : (323) 982-4109
Facsimile :  (415) 840-9435
Email: mrosadini@peifferwolf.com

ROBERT M. HAMMERS, JR. (PHV application forthcoming)
5555 Glenridge Connector, Suite 975
Atlanta, Georgia 30342
Telephone: (770) 900-9000
Email: rob@hammerslawfirm.com

JASON EDWARD OCHS (Bar No. 232819)
P.O. Box 10944
Jackson, WY  83002
Telephone: 307.234.3239
Facsimile: 307.235.6910
Email: jason@ochslawfirm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM, ,<br><br>            Plaintiff,<br><br>      v.<br><br>DEXCOM, INC.;<br>TANDEM DIABETES CARE, INC.; and DOES 1-50, inclusive,<br><br>            Defendants. | Case No. 3:24-cv-00195-WQH-BLM<br><br>**DECLARATION OF MELISA ROSADINI-KNOTT IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO SUPERIOR COURT OF SAN DIEGO, CALIFORNIA**<br><br>Hon. William Q. Hayes<br>Date:    April 8, 2024<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

## DECLARATION OF MELISA A. ROSADINI-KNOTT

I, MELISA A. ROSADINI-KNOTT, declare as follows:

1.      I am an attorney at Peiffer Wolf Carr Kane Conway & Wise, LLP, counsel of record for Plaintiff Joseph Higginbottom.  I make this declaration based on personal knowledge unless otherwise stated and if called to testify on such matters, could and would competently testify.  I make this Declaration in support of Plaintiff's Motion to Remand to this Action to the Superior Court of California.

2.      Attached as Exhibit "A" is a true and correct copy of Defendant's Notice of Removal filed in this Court.

3.      Attached as Exhibit "B" are true and correct copies of the proofs of service of summons on Defendants Tandem Diabetes Care, Inc. and Dexcom, Inc.

4.      Attached as Exhibit "C" is a true and correct copy of correspondence from counsel for Tandem Diabetes Care, Inc.

5.      Attached as Exhibit "D" is a true and correct copy of Defendant's filing regarding removal that I obtained from the San Diego Superior Court.

6.      Attached as Exhibit "E" is a true and correct copy of the Order granting Plaintiff's Motion to Remand in Casola v. Dexcom, Inc., Case No. 22-cv-1865-JO-MDD (S.D. Cal. Mar. 31, 2023).

7.      Attached as Exhibit "F" is a Notice of Related Case filed in Casola v. Dexcom, Inc., et al. which identifies other similar cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 29th day of February, 2024 in Los Angeles, California.


_____/s/ Melisa A. Rosadini-Knott_____

DECLARATION OF MELISA ROSADINI-KNOTT IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
ACTION TO SUPERIOR COURT OF SAN DIEGO, CALIFORNIA

# EXHIBIT "A"

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/26/2024** at 02:51:18 PM

Clerk of the Superior Court
By Malka Manneh,Deputy Clerk

MELISA A. ROSADINI-KNOTT (Bar No. 316369)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
3435 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90010
Telephone : (323) 982-4109
Facsimile :  (415) 840-9435
Email:  mrosadini@peifferwolf.com

ROBERT M. HAMMERS, JR. (*PHV application forthcoming*)
HAMMERS LAW FIRM, LLC
5555 Glenridge Connector, Suite 975
Atlanta, Georgia 30342
Telephone: (770) 900-9000
Email: rob@hammerslawfirm.com

JASON EDWARD OCHS (Bar No. 232819)
OCHS LAW FIRM
P.O. Box 10944
Jackson, WY  83002
Telephone: 307.234.3239
Facsimile: 307.235.6910
Email: jason@ochslawfirm.com

*Attorneys for Plaintiff*

## SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM, <br><br> Plaintiff, <br><br> v. <br><br> DEXCOM, INC.; and TANDEM DIABETES CARE, INC., <br><br> Defendants. | **CASE NO:**  37-2024-00003700-CU-PL-CTL <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1. **NEGLIGENCE** <br> 2. **STRICT PRODUCT LIABILITY - DESIGN DEFECT** <br> 3. **STRICT LIABILITY – MANUFACTURING DEFECT** <br> 4. **STRICT LIABILITY- FAILURE TO WARN** <br> 5. **WRONGFUL DEATH** |

**<u>DEMAND FOR JURY TRIAL</u>**

1.      Plaintiff JOSEPH HIGGINBOTTOM, individually and on Behalf of the Estate of ANTHONY HIGGINBOTTOM, hereby requests a trial by jury as to all issues and as to all material fact.

**<u>PARTIES</u>**

2.      Plaintiff JOSEPH HIGGINBOTTOM (hereinafter "Plaintiff") is, and at all times relevant was, a resident and citizen of Wyoming.  He brings this action individually and on Behalf of the Estate of ANTHONY HIGGINBOTTOM, minor decedent.  Decedent ANTHONY HIGGINBOTTOM (herein referred to as "Decedent") died in a motor vehicle collision on August 5, 2020.  Plaintiff is an authorized successor-in-interest to his Estate. The Declaration of Joseph Higginbottom, Successor-in-Interest, Pursuant to C.C.P. § 337.32, is included with this complaint.

3.      Defendant, DEXCOM, INC. (hereinafter "Dexcom"), is a Delaware corporation with its principal place of business located at 6340 Sequence Drive, San Diego, California, 92121. Defendant Dexcom may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

4.      Dexcom is, and at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California, including San Diego County.

5.      Dexcom was and is engaged in the business of manufacturing, marketing, testing, labeling, promoting, selling, and/or distributing the Dexcom G6 Continuous Glucose Monitoring System (hereinafter "G6 System").  At all pertinent times, Dexcom derived substantial revenue from the sale of the G6 System in the State of California and County of San Diego.

6.      Defendant TANDEM DIABETES CARE, INC. (hereinafter "Tandem") is a Delaware Corporation with its principal place of business located at 12400 High Bluff Drive, San Diego, California, 92130. Defendant Tandem may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

7.      Tandem is, and at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California,

1  including San Diego County.

2      8.      Tandem was and is engaged in the business of manufacturing, marketing, testing,

3  labeling, promoting, selling, and/or distributing the Tandem t:slim X2™ Insulin Pump (hereinafter

4  "t:slim pump"). At all pertinent times, Tandem derived substantial revenue from the sale of the

5  t:slim pump in the State of California and County of San Diego.

6      9.      At all pertinent times, both Defendants were engaged in the research, development,

7  manufacture, design, testing, sale and marketing of the products, and introduced such products into

8  interstate commerce with the knowledge and intent that such products would be sold in the State of

9  California.

10                          **VENUE AND JURISDICTION**

11     10.     The California Superior Court has jurisdiction over both Defendants because, based

12  on information and belief, each is a corporation maintains its principal place of business in the State

13  of California, has sufficient minimum contacts in California, and otherwise intentionally avails

14  itself of the California market so as to render the exercise of jurisdiction over it by the California

15  courts consistent with traditional notions of fair play and substantial justice.

16     11.     Further, Defendants have each purposefully availed themselves of the benefits and

17  protections of the laws within the State of California.  Collectively, Defendants conduct substantial

18  business in California and have sufficient contact with California such that the exercise of

19  jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

20     12.     Venue is proper in this Court pursuant to Code of Civil Procedure section 395(a)

21  and 395.5 because the principal place of business of both Defendants is in San Diego County.

22     13.     The amount in controversy exceeds the jurisdictional limits of this court.

23                              **INTRODUCTION**

24     14.     This is an action for damages relating to Dexcom's design, manufacture,

25  surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the

26  Dexcom G6 System.

27

28

15. This is an action for damages relating to Tandem's design, manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the Tandem t:slim pump.

16. The G6 System is a prescribed medical device intended for use by diabetic patients to replace fingerstick blood glucose testing and scanning and to detect and alert dangerous glucose levels likely to trigger life-threatening medical events as a part of short-term and long-term diabetes treatment plan.

17. The t:slim pump is a prescribed medical device intended for use by diabetic patients as an automated insulin delivery system (hereinafter "AID") to provide subcutaneous delivery of insulin, at set and variable rates, for the management of diabetes mellitus in persons requiring insulin. The t:slim pump can be used solely for continuous insulin delivery and also integrates with the G6 System to receive and display continuous glucose measurements.

18. The Dexcom G6 System consists of three primary components: (1) a wearable patch sensor which continuously measures blood glucose values (hereinafter "BGV") from interstitial fluids below the skin; a transmitter that attaches to the sensor and collects the BGV data and then pushes the information via a Bluetooth® connection to (3) a display device: either its proprietary receiver or a smartphone using its proprietary application (hereinafter "G6 App").

19. The Tandem t:slim pump also pairs with the Dexcom G6 sensor and transmitter. The t:slim pump also aids in the detection of episodes of hyperglycemia and hypoglycemia by providing the G6 System BGV data to the t:slim display.

20. The G6 System is designed to literally "sound the alarm" when a near-dangerous glucose level is detected to provide the diabetic patient with advance warning to avoid a potential hyperglycemic or hypoglycemic event.

21. The G6 Systems have a propensity to obtain inaccurate glucose readings, fail to transmit glucose readings, and/or notify and alert its users of potential hyperglycemic and hypoglycemic events, resulting in serious injuries or death. The G6 System when integrated with the t:slim pump also increases the risk of insulin stacking when inaccurate hyperglycemic results are

-4-

transmitted to the display device leading to patient overdosing insulin and falling quickly into hypoglycemia.

22.     On information and belief, Plaintiff, the father of decedent: Anthony Higginbottom, a diabetic patient, brings this action for wrongful death directly and proximately caused by productdefects in the G6 System and t:slim pump.

## **FACTUAL ALLEGATIONS**

23.     Dexcom designs, develops, manufactures, markets, advertises, promotes, supplies, distributes, sells, and instructs in the use of the G6 System, which is a Class II device.[1]

24.     The G6 System is a prescribed medical device for diabetics to use to monitor and manage their glucose level and to detect and alert its user of potential hyperglycemic and hypoglycemic events in real-time.

25.     According to Dexcom, the G6 System is the first real-time, integrated Continuous Glucose Monitoring system (hereinafter "iCGM") requiring "zero fingersticks or calibrations" and replaces fingerstick blood glucose testing and scanning to monitor and manage diabetes.[2]

26.     Dexcom marketed and sold the G6 System as a potentially life-saving medical device capable of detecting and preventing hyperglycemic and hypoglycemic events by alerting users of near-dangerous blood glucose levels that may trigger such events.

27.     As shown in Dexcom's G6 System User Guide and noted herein, the G6 System has three key component parts: 1) the wearable sensor patch, which collects real-time BGV from just under the skin, 2) the transmitter, which sends the glucose reading from the sensor to the user's display device, and 3) the display device (G6 App or Receiver): which shows glucose reading and information to the user.

///

///

///

///

---

[1] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=682
[2] https://www.dexcom.com/faqs/does-the-dexcom-g6-cgm-system-require-calibrations.

COMPLAINT AND DEMAND FOR JURY TRIAL

| | | |
|---|---|---|
|  | Applicator with **built-in sensor** | Applicator helps you **insert the sensor wire under your skin.** Sensor gets your glucose information. |
| | **Transmitter** | **Transmitter sends your** glucose information from the sensor to the display device. |
|  | Display Device(s): • **Receiver** • **Your smart** device | Display device(s) shows your glucose information. Receiver is required for Medicare. |

28. Dexcom's G6 App allows patients to use their smartphones and smartwatches like iPhones, Apple Watch and Android devices.[3] The G6 App enables the G6 System users to use their smart devices as the display device to receive real-time BGV readings, notifications, and sound alarms resulting from potential hyperglycemic and hypoglycemic events.

29. If any one of G6 System's three component parts is defective or does not operate as intended, its diabetic user would not receive accurate and timely BGV alerts and warnings.

30. The G6 System sensor patch's failure to obtain accurate, real-time BGV information can cause a diabetic patient to suffer serious injury or death.

31. The G6 System transmitter's failure to transmit accurate, real-time BGV information to a display device can cause a diabetic patient to suffer serious injury or death.

---

[3] See  https://apps.apple.com/us/app/dexcom-g6/id1209262925

COMPLAINT AND DEMAND FOR JURY TRIAL

32.    The G6 System and/or G6 App's failure to notify or sound the alarm when a hyperglycemic or hypoglycemic event occurs can cause a diabetic serious injury or death.

33.    The G6 System and/or G6 App's inaccurate readings of the user's BGV may cause a diabetic patient who integrates the G6 System with the Tandem t:slim pump to mistreat hyperglycemia or hypoglycemia, including inadvertently stacking insulin.

34.    Dexcom and Tandem are responsible for identifying all risks associated with the foreseeable uses of the G6 System and t:slim pump before marketing and selling the products, and for every identified risk, Dexcom and Tandem had and have a duty to either design the risk out or to adequately warn the users of those risks. These obligations are met by conducting risk assessments, system hazard analyses, and design/process failure modes and effects analyses.

35.    Decedent's medical provider prescribed Dexcom's G6 System and the Tandem t:slim pump as a part of decedent's diabetes treatment plan.

36.    Plaintiff's spouse purchased the G6 System from Dexcom and the t:slim pump from Tandem on behalf of decedent, a minor.

37.    As represented by Dexcom, decedent replaced the fingerstick testing method with the Dexcom G6 System. During the relevant time, decedent used the G6 System as the primary device for blood glucose testing and for diabetes treatment decisions.

38.    During the relevant time, decedent used the t:slim pump to administer bolus of insulin as needed or at preset intervals in accordance with the user instructions and training provided by Tandem.

39.    During the relevant time, decedent used the G6 System on a daily basis to monitor his BGV trends in real-time, prevent hyperglycemic and hypoglycemic episodes, and in the overall management of decedent's diabetes.

40.    During the relevant time, decedent used Dexcom's software to obtain and review glucose information from the G6 System.

41.    During the relevant time, decedent made no changes or alterations to the G6 System, the t:slim pump, or any of their component parts.

COMPLAINT AND DEMAND FOR JURY TRIAL

42.     During the relevant time, decedent used the G6 System and t:slim pump as prescribed by his physician and as directed by Dexcom and Tandem.

43.     On or about August 4, 2020, decedent changed out his sensor with his new one that evening, undertook the necessary programming, and went to bed. After the two-hour start up process, the G6 System read his BGV as extremely high.

44.     On August 5, 2020 at 2AM, his BGV read 258, and five hours later at 7AM his BGV read 214. At approximately 7:28 AM, decedent received an insulin bolus from his t:slim pump as his BGV were still reading high at 218. The t:slim pump then administered a second bolus, thereby stacking his insulin, at 8:43 AM.

45.     At the time of the second bolus administered by the t:slim pump at 8:43 AM, decedent was on his way to pick up his girlfriend to go hiking. He was operating his 1973 Chevy Nova northbound on County Road 120 just outside of Cheyene, Wyoming.

46.     The second bolus dropped decedent into hypoglycemia, causing him to pass out behind the wheel, and crash into a Laramie County weed and pest truck servicing the shoulder of the road.

47.     Anthony Higginbottom died from the injuries suffered in the collision.

48.     Decedent's G6 App failed to alert him to dangerous glucose levels and/or stopped receiving glucose information from the G6 System prior to second bolus.

49.     Decedent's G6 System failed to make accurate readings of his real-time BGV prior to administering first bolus from the t:slim pump.

50.     Decedent's G6 System failed to make accurate readings of his real-time BGV prior to administering the second bolus from the t:slim pump.

51.     Decedent's G6 System and t:slim pump malfunctioned by allowing the second bolus when his BGV levels were no longer reading high at 8:43 AM.

52.     Moreover, when Decedent's G6 App failed to notify or sound the alarm of a dangerous glucose level and/or stopped receiving glucose information from the G6 System, decedent was unaware he was experiencing a hypoglycemic event.

53.     The G6 System's and t:slim pump's failure to notify or sound the alarm of the dangerous glucose level deprived decedent and/or Plaintiff the "golden window" of time to intervene and prevent the tragic hypoglycemic-induced fatal collision.

54.     As a direct and proximate result thereof, Anthony Higginbottom suffered serious injuries and died at the scene of the collision.

55.     During all relevant times, decedent exercised ordinary care for his own safety and could not reasonably avoid his serious injuries, which resulted from G6 System's and t:slim pump's failure or defect.

56.     Dexcom induced Plaintiff to rely on its representations about the G6 System's and G6 App's accuracy and efficacy for treating his son's diabetes.

57.     Tandem induced Plaintiff to rely on its representations about the t:slim's reliability and efficacy for treating his son's diabetes.

58.     Plaintiff reasonably relied on Dexcom's representations as to the G6 System and the G6 App's accuracy and efficacy for treating his son's diabetes.

59.     Plaintiff reasonably relied on Tandem's representations as to the t:slim's reliability and efficacy for treating his son's diabetes.

## PUNITIVE DAMAGES ALLEGATIONS

60.     Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

a.  Prior to FDA clearance, Defendants knew the G6 System integrated with the t:slim pump was often inaccurate and struggled to maintain reliable connectivity between transmitter and display device;

b.  After FDA clearance, Defendants received complaints from users and providers detailing the high rates of reports regarding the G6 System integrated with the t:slim pump being inaccurate and struggling to maintain reliable connectivity between transmitter and display device;

c.  Despite their knowledge of the inaccuracy of the BGV data and the unreliable wireless communications between tranmistter and display deveice, Defendants

-9-

COMPLAINT AND DEMAND FOR JURY TRIAL

affirmatively minimized this risk through marketing and promotional efforts and product labeling;

d. With said knowledge, Defendants opted to manufacture and distribute and market the products without attempting to warn consumers or the public of the high risk of injury or death that could result from the use of the products intentionally fraudulently, consciously and actively concealing and suppressing their knowledge of this risk from consumers and the public;

e. Defednants impliedly represented the products were safe for their intended and reasonably foreseeable use with knowledge of the falsity of said implied representations.

61.      The above referenced conduct of Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of the G6 System and t:slim pump.  In pursuance of said financial motivation, Defendants consciously disregarded the safety of the consumer of the products, decedent Anthony Higginbottom, and were, in fact, consciously willing to permit the products to cause injury to consumers, including Decedent Anthony Higginbottom.

62.      As the above referenced conduct of Defendants was and is vile, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of consumers of the G6 System and t:slim pump, including Decedent Anthony Higginbottom, for the sake of example and by way of punishing Defendants seek punitive damages according to proof.

## **TOLLING**

63.      Plaintiff pleads he, Dexcom, and Tandem agreed to toll all applicable statutes of limitation and this action is being brought before the expiration of the tolling agreement.

64.      Accordingly, any applicable statutes of limitations have been tolled.

65.      Defendants are estopped from relying on the statute of limitations defense because of the tolling agreement.

COMPLAINT AND DEMAND FOR JURY TRIAL

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

66.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

67.     At all times relevant, Dexcom was in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing and instructing in the use of the G6 System, including the one purchased for decedent.

68.     At all times relevant, Tandem was in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing and instructing in the use of the t:slim pump, including the one purchased for decedent.

69.     Dexcom had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the G6 System so as to avoid exposing others to foreseeable and unreasonable risks of harm.

70.     Tandem had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the t:slim pump so as to avoid exposing others to foreseeable and unreasonable risks of harm.

71.     Dexcom breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of the G6 System.

72.     Tandem breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of the t:slim pump.

73.     Dexcom knew, or reasonably should have known, the G6 System failed  to measure its user's BGV accurately and failed to adequately warn Plaintiff of this defect.

74.     Tandem knew, or reasonably should have known, the t:slim pump may administer a second bolus of insulin, and therefore, stack insulin because the G6 System failed to  measure its user's BGV accurately and also failed to adequately warn Plaintiff of this defect.

75.     Dexcom knew, or reasonably should have known, the G6 System failed to transmit

-11-

or failed to transmit in real-time BGV information from the sensor to the transmitter and/or display device and failed to warn Plaintiff of this defect.

76.     Dexcom had a duty to warn Plaintiff, decedent's physician, and/or the medical community of the potential for G6 System to malfunction or otherwise not operate as Dexcom represented and failed to do so.

77.     Tandem had a duty to warn Plaintiff, decedent's physician, and/or the medical community of the potential for t:slim to malfunction or otherwise not operate as Tandem represented and failed to do so.

78.     Defendants breached these respective duties owed to Plaintiff and decedent, and, as a direct and proximate result, was harmed thereby.

79.     Defendants knew, or reasonably should have known, the G6 System and t:slim pump were dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

80.     At the time of the manufacture and sale of the G6 System, Dexcom knew, or reasonably should have known, the G6 System was designed and manufactured in such a way to present an unreasonable risk of inaccurate BGV readings inaccurate "real-time" reporting, and/or non-functioning alarm and notification.

81.     At the time of the manufacture and sale of the t:slim pump, Tandem knew, or reasonably should have known, the G6 System was designed and manufactured in such a way as to present an unreasonable risk of calculating and transmitting inaccurate BGV readings to the integrated t:slim pump, thereby creating an unreasonably dangerous risk of insulin stacking to users like decedent.

82.     At the time of the manufacture and sale of the G6 System, Dexcom knew, or reasonably should have known, the G6 System was designed and manufactured in such a way to present an unreasonable risk of harm by failing to accurately report or notify its user of a near-dangerous glucose level, which, in turn, deprived its users of a "golden window" of time to intervene and prevent serious injury or death.

83.     At the time of the manufacture and sale of the G6 System, Dexcom knew, or

-12-

COMPLAINT AND DEMAND FOR JURY TRIAL

reasonably should have known, using the G6 System for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries, including but not limited to cardiac arrest, loss of consciousness, and coma, or death.

84.    Dexcom knew, or reasonably should have known, that the consumer-patients of the G6 System would not realize the danger associated with using the G6 System for its intended use and/or in a reasonably foreseeable manner.

85.    Tandem knew, or reasonably should have known, that the consumer-patients of the t:slim pump would not realize the danger of inaccurate BGV readings from the G6 System might cause them to receive an unreasonably dangerous amount of insulin from the device.

86.    Defendants, jointly and severally, breached their respective duties to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the G6 System and t:slim pump in, among others, the following ways:

a.  Designing and distributing products in which each Defendant knew, or reasonably should have known, the likelihood and severity of potential harm from the products exceeded the burden of taking measures to reduce or avoid harm;

b.  Designing and distributing products in which each Defendant knew, or reasonably should have known, the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other integrated glucose monitoring systems available for the same purpose;

c.  Failing to use reasonable care in manufacturing the products and producing products that differed from their design or specifications;

d.  Failing to use reasonable care to warn or instruct Plaintiff, decedent, decedent's healthcare providers, or the general health care community about the G6 System's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

e.  Failing to use reasonable care to warn or instruct Plaintiff, decedent,

-13-

COMPLAINT AND DEMAND FOR JURY TRIAL

decedent's healthcare providers, or the general health care community about the t:slim pump's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

f.  Failing to perform reasonable pre-and post-market testing of the G6 System and t:slim pump to determine whether or not the product was safe for its intended use;

g.  Failing to provide adequate instructions, guidelines, and safety precautions, to those persons to whom it was reasonably foreseeable would prescribe the G6 System and t:slim pump to diabetics;

h.  Advertising, marketing and recommending the use of the G6 System and t:slim pump, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the G6 System and integrated t:slim pump;

i.  Representing that the G6 System was safe for its intended use when, in fact, Dexcom knew, or reasonably should have known, the product was not safe for its intended purpose;

j.  Representing that the t:slim pump was safe for its intended use when, in fact, Tandem knew, or reasonably should have known, the product was not safe for its intended purpose when integrated with the G6 System;

k.  Continuing the manufacture and sale of the G6 System with the knowledge the G6 System was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

l.  Continuing the manufacture and sale of the t:slim pump with the knowledge the t:slim pump was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

m. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the G6 System so as to avoid the risk of serious harm associated with the use of the G6 System;

n.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the t:slim pump so as to avoid the risk of serious harm associated with the use of the t:slim pump with G6 System;

o.  Failing to establish an adequate quality assurance program used in the manufacturing of the G6 System;

p.  Failing to establish an adequate quality assurance program used in the manufacturing of the t:slim pump;

q.  Failing to establish and maintain an adequate post-marketing surveillance program for the G6 System;

r.  Failing to establish and maintain an adequate post-marketing surveillance program for the t:slim pump;

s.  Failing to adequately and correctly report safety information relative to theG6 System product resulting in inadequate warnings;

t.  Failing to adequately and correctly report safety information relative to the t:slim product resulting in inadequate warnings;

u.  Failing to provide adequate and continuous warnings about the inherent danger of the G6 System's inaccurate glucose monitoring and reporting;

v.  Failing to provide adequate warnings about the inherent danger of insulin stacking resulting from the G6 System's inaccurate glucose monitoring and reporting; and

w.  In committing other negligent acts or omissions as may be shown by the evidence and proven at trial.

87.    During all relevant times, decedent exercised ordinary care for his own safety and could not reasonably avoid his serious injuries and death caused by G6 System's and t:slim pump's failure or defect .

88.    Reasonable manufacturers, distributors, and/or sellers under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

COMPLAINT AND DEMAND FOR JURY TRIAL

89.    As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

90.    As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

91.    In performing the foregoing acts or omissions, the Johnson & Johnson Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

92.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

93.    Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

94.    The G6 System is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

95.    The t:slim pump is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

96.    The G6 System was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Dexcom's possession. The t:slim pump was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Tandem's possession.

97.    The G6 System purchased by Plaintiff for decedent was defective in design because

it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

98.     The t:slim purchased by Plaintiff for decedent was defective in design because it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

99.     The G6 System purchased by Plaintiff for decedent was defective in design, in that the G6 System's risks of harm exceeded its claimed benefits.

100.    The t:slim pump purchased by Plaintiff for decedent was defective in design, in that the t:slim pump's risks of harm exceeded its claimed benefits.

101.    Plaintiff, decedent, and decedent's healthcare providers used the G6 System in a manner that was reasonably foreseeable to Dexcom.

102.    Plaintiff, decedent, and decedent's healthcare providers used the t:slim pump in a manner that was reasonably foreseeable to Tandem.

103.    Plaintiff, decedent, and decedent's healthcare providers could not have by the exercise of reasonable care discovered the G6 System's defective conditions or perceived its unreasonable dangers prior to the purchase of the system.

104.    Plaintiff, decedent, and decedent's healthcare providers could not have by the exercise of reasonable care discovered the t:slim pump's defective conditions or perceived its unreasonable dangers prior to the purchase of the product.

105.    As a result of the foregoing design defects, the G6 System created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System.

106.    As a result of the foregoing design defects, the t:slim pump created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the t:slim pump.

107.    Dexcom has intentionally and recklessly designed the G6 System and t:slim pump

-17-

COMPLAINT AND DEMAND FOR JURY TRIAL

with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

108.　As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

109.　As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

110.　In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

111.　WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## THIRD CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

112.　Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

113.　Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed post-market surveillance, distributed and sold the G6 System that was purchased for decedent.

114.　Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed post-market surveillance, distributed and sold the t:slim pump that was purchased for decedent.

115.　The G6 System purchased for decedent contained a condition or conditions, which Dexcom did not intend, at the time the G6 System left Dexcom's control and possession.

116.　The t:slim pump purchased for decedent contained a condition or conditions, which

-18-

117.   Tandem did not intend, at the time the t:slim pump left Tandem's control and possession.

118.   Decedent and decedent's health care providers used the G6 System in a manner consistent with and reasonably foreseeable to Dexcom.

119.   Decedent and decedent's health care providers used the t:slim pump in a manner consistent with and reasonably foreseeable to Tandem.

120.   As a result of these conditions, the products failed to perform as safely as the ordinary consumer would expect, causing injury, when used in a reasonably foreseeable manner.

121.   The G6 System was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent.

122.   The t:slim pump was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent.

123.   As a result of the manufacturing defects, the G6 System and t:slim pump create risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System and t:slim pump.

124.   Dexcom has intentionally and recklessly manufactured the G6 System with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others

125.   Tandem has intentionally and recklessly manufactured the t:slim pump with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

126.   As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

127.   As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

-19-

128.     In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

129.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **FOURTH CAUSE OF ACTION**

### **STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

130.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

131.     Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the G6 System, including the one purchased for decedent, into the stream of commerce and in the course of same, directly advertised and marketed the G6 System to consumers or persons responsible for consumers.

132.     Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the t:slim pump, including the one purchased for decedent, into the stream of commerce and in the course of same, directly advertised and marketed the t:slim pump to consumers or persons responsible for consumers.

133.     At the time Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and put the G6 System into the stream of commerce, Defendant knew, or reasonably should have known, the G6 System presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

134.     At the time Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and put the t:slim pump into the stream of commerce, Tandem knew, or reasonably should have known, the t:slim pump presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated

-20-

1    use.

2        135.    Specifically, Dexcom knew, or reasonably should have known, the G6 System posed

3    a significant risk of inaccurate or failed glucose monitoring, reporting and alerting, resulting in

4    significant injuries or deaths.

5        136.    Specifically, Tandem knew, or reasonably should have known, the t:slim pump

6    posed a significant risk of insulin stacking if the G6 System transmitted an inaccurate BGV, which

7    would likely cause a hypoglycemic event resulting in significant injuries or death.

8        137.    Dexcom had a duty to warn of the risk of harm associated with the use of the G6

9    System and to provide adequate warnings concerning the risk of failed, inaccurate, or delayed (not

10   real-time) BGV readings, notifications, and alarm failures to the user and his or her medical

11   providers.

12       138.    Tandem had a duty to warn of the risk of harm associated with the t:slim pump

13   administering insulin based upon inaccurate BGV transmitted to the device by the G6 System and to

14   provide adequate warnings concerning the risk of insulin stacking to patients using the t:slim pump.

15       139.    Dexcom failed to adequately warn and instruct the decedent and his health care

16   providers that the G6 System should not be relied upon as a sole method to calculate, measure,

17   report and assess a diabetic's BGV.

18       140.    Tandem failed to adequately warn and instruct the decedent and his health care

19   providers that the G6 System should not be relied upon as a sole method to calculate, measure,

20   report and assess a diabetic's BGV, and therefore, a user such as decedent should take fingerstick

21   test before administering unscheduled insulin bolus from the t:slim pump.

22       141.    The risks associated with the G6 System are of such a nature that health care

23   providers and users could not have recognized the potential harm. The risks associated with the

24   t:slim pump are of such a nature that health care providers and users could not have recognized the

25   potential harm.

26       142.    The G6 System was defective and unreasonably dangerous at the time of its release

27   into the stream of commerce due to the inadequate warnings, labeling and/or instructions

28   accompanying the product, including but not limited to, its representation as the replacement for

-21-

COMPLAINT AND DEMAND FOR JURY TRIAL

fingerstick glucose testing system.

143.    The t:slim pump was defective and unreasonably dangerous at the time of its release into the stream of commerce due to the inadequate warnings, labeling and/or instructions accompanying the product, including but not limited to, its representation the G6 System serves as the replacement for fingerstick glucose testing system.

144.    The G6 System, when purchased for decedent, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Dexcom.

145.    The t:slim pump, when purchased for decedent, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Tandem.

146.    Dexcom intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the G6 System in order to advance their own financial interests, with wanton and willful disregard for the rights and health of decedent.

147.    Tandem intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the t:slim pump in order to advance their own financial interests, with wanton and willful disregard for the rights and health of decedent.

148.    As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

149.    As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

150.    In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

151.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **FIFTH CAUSE OF ACTION**

### **WRONGFUL DEATH**

152.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

153.     As a result of the acts and/or omissions of Defendants, and each of them, as set aforesaid, Decedent Anthony Higginbottom's use of the G6 Sytem and t:slim pump caused him to stack insulin, become hypoglycemic, lose consciousness while operating a motor vehicle, crash, and die on August 5, 2020.

154.     Plaintiff Joseph Higginbottom was Decedent Anthony Higginbottom's father and is a rightful heir to his estate.

155.     As a direct and proximate result of the acts of Defendants, and each of them, Plaintiff Joseph Higginbottom has sustained pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of Decedent in a sum exceeding $25,000 exclusive of interest and costs.

156.     Plaintiff has lost pre-judgment interest pursuant to Civil Code Section 3288, the exact amount of which Plaintiff prays leave of the Court to insert herein when finally ascertained.

157.     As a further direct and proximate result of the said conduct of Defendants, and each of them, Plaintiff has incurred, and will incur, loss of income, wages, pensions, profits and commissions, a diminished earning potential and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this Complaint to conform to proof at the time of trial.

158.     WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorney's fees, and such further relief as the Court deems equitable and just.

///

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. For general damages according to proof;

2. For loss of income according to proof;

3. For punitive damages according to proof;

4. For Plaintiff's costs of suit herein; and

5. For such other and further relief as this Court deems just and proper, including costs as provided in California Code of Civil Procedure sections 998 and 1032 and related provisions of law.

DATED: January 26, 2024          Respectfully Submitted,

By: _____
Melisa A. Rosadini-Knott
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

By: _____/s/ Robert M. Hammers, Jr._____
Robert M. Hammers, Jr. (*Pro hace vice* application forthcoming)
HAMMERS LAW FIRM, LLC

By: _____/s/ Jason E. Ochs_____
Jason Edward Ochs
OCHS LAW FIRM

*Attorneys for Plaintiff*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED:  January 26, 2024                    Respectfully Submitted,

By: _____
Melisa A. Rosadini-Knott
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP


By: _____
_/s/ Robert M. Hammers, Jr._
Robert M. Hammers, Jr. (*Pro hace vice application forthcoming*)
HAMMERS LAW FIRM, LLC


By: _____
_/s/ Jason E. Ochs_
Jason Edward Ochs
OCHS LAW FIRM


*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL

# EXHIBIT "B"

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Peiffer Wolf Carr Kane Conway & Wise, LLP<br>Melisa Rosadini-Knott SBN 316369<br>3435 Wilshire Boulevard, Suite 1400<br>Los Angeles, CA 90010<br>    TELEPHONE NO:                FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:  mrosadini@peifferwolf.com<br>    ATTORNEY FOR *(Name)*:  Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego |
|---|
|   STREET ADDRESS:  330 W. Broadway |
|   MAILING ADDRESS: |
| CITY AND ZIP CODE:  San Diego, 92101-3409 |
|   BRANCH NAME:  Central - Civil |

| PLAINTIFF / PETITIONER:  Joseph Higginbottom, et al.<br>DEFENDANT / RESPONDENT:  Dexcom Inc., et al. | CASE NUMBER:<br>37-2024-00003700-CU-PL-CTL |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>10333312 (22119878) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

I served copies of:

  a. ☒ Summons

  b. ☐ Complaint

  c. ☒ Alternative Dispute Resolution (ADR) Package

  d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

  e. ☐ Cross-Complaint

  f. ☒ Other *(specify documents)*:  Complaint and Demand for Jury Trial, Plaintiff Joseph Higginbottom's CCP 377.32 Successor-In-Interest Declaration, Notice of Case Assignment and Case Management Conference, Stipulation to Use of Alternative Dispute Resolution

3.  a.  Party served *(specify name of party as shown on documents served)*:

      Tandem Diabetes Care, Inc.

  b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

      CSC Lawyers Incorporating Service - Jenn Bautista - Person Authorized to Accept Service of Process

4.  Address where the party was served:

    2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833

5.  I served the party *(check proper box)*

  a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:  Tue, Jan 30 2024      (2) at *(time)*:  01:37 PM

  b. ☐ **by substituted service.** On *(date)*:        at *(time)*:             I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

    (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:            from *(city)*:             or ☐ a declaration of mailing is attached.

    (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER:   Joseph Higginbottom, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:   Dexcom Inc., et al. | 37-2024-00003700-CU-PL-CTL |

5.  c.  ☐  **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:        (2)  from *(city)*:

    (3)  ☐  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

    d.  ☐  **by other means** *(specify means of service and authorizing code section)*:

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

    a.  ☐  as an individual defendant.

    b.  ☐  as the person sued under the fictitious name of *(specify)*:

    c.  ☐  as occupant.

    d.  ☒  On behalf of *(specify)*:   Tandem Diabetes Care, Inc.

        under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒  416.10 (corporation) | ☐  415.95 (business organization, form unknown) |
| ☐  416.20 (defunct corporation) | ☐  416.60 (minor) |
| ☐  416.30 (joint stock company/association) | ☐  416.70 (ward or conservatee) |
| ☐  416.40 (association or partnership) | ☐  416.90 (authorized person) |
| ☐  416.50 (public entity) | ☐  415.46 (occupant) |
| ☐  other: | |

7.  **Person who served papers**

    a.  Name:   Tyler DiMaria

    b.  Address:   1400 N McDowell Blvd, Suite 300, Petaluma, CA  94954

    c.  Telephone number:   800-938-8815

    d.  **The fee** for service was:   $40.00

    e.  I am:

        (1)  ☐  not a registered California process server.

        (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

        (3)  ☒  a registered California process server:

            (i)  ☐ owner  ☐ employee  ☒ independent contractor

            (ii)  Registration No:   2006-006

            (iii)  County:   Sacramento

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:   January 30, 2024

Tyler DiMaria

_____

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000618
1400 N McDowell Blvd, Suite 300
Petaluma, CA  94954
800-938-8815

_____

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Peiffer Wolf Carr Kane Conway & Wise, LLP<br>Melisa Rosadini-Knott SBN 316369<br>3435 Wilshire Boulevard, Suite 1400<br>Los Angeles, CA 90010<br>  TELEPHONE NO:                              FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:  mrosadini@peifferwolf.com<br>  ATTORNEY FOR *(Name)*:  Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego |
|---|
|   STREET ADDRESS:  330 W. Broadway<br>  MAILING ADDRESS:<br>  CITY AND ZIP CODE:  San Diego, 92101-3409<br>  BRANCH NAME:  Central - Civil |

| PLAINTIFF / PETITIONER:   Joseph Higginbottom, et al<br>DEFENDANT / RESPONDENT:   Dexcom Inc., et al. | CASE NUMBER:<br>37-2024-00003700-CU-PL-CTL |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>10333313 (22119879) |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
I served copies of:
  a.  [X] Summons
  b.  [ ] Complaint
  c.  [X] Alternative Dispute Resolution (ADR) Package
  d.  [X] Civil Case Cover Sheet *(served in complex cases only)*
  e.  [ ] Cross-Complaint
  f.  [X] Other *(specify documents)*:   Complaint and Demand for Jury Trial, Plaintiff Joseph Higginbottom's CCP 377.32 Successor-In-Interest Declaration, Notice of Case Assignment and Case Management Conference, Stipulation to Use of Alternative Dispute Resolution

3.  a.  Party served *(specify name of party as shown on documents served)*:
    Dexcom, Inc.
  b.  [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
    CSC Lawyers Incorporating Service -Jenn Bautista - Person Authorized to Accept Service of Process
4.  Address where the party was served:
    2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833
5.  I served the party *(check proper box)*
  a.  [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:  Tue, Jan 30 2024          (2) at *(time)*:   01:37 PM
  b.  [ ] **by substituted service.** On *(date)*:                    at *(time)*:                         I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

    (1)  [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
    (2)  [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
    (3)  [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
    (4)  [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:                  from *(city)*:                              or [ ] a declaration of mailing is attached.
    (5)  [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

---

**PROOF OF SERVICE OF SUMMONS**

| PLAINTIFF / PETITIONER:  Joseph Higginbottom, et al | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:  Dexcom Inc., et al. | 37-2024-00003700-CU-PL-CTL |

5.  c.  [ ]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:                (2)  from *(city)*:

    (3)  [ ]  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4)  [ ]  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section)*:

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  [ ]  as an individual defendant.

  b.  [ ]  as the person sued under the fictitious name of *(specify)*:

  c.  [ ]  as occupant.

  d.  [X]  On behalf of *(specify)*:   Dexcom, Inc.

    under the following Code of Civil Procedure section:

    [X]  416.10 (corporation)             [ ]  415.95 (business organization, form unknown)

    [ ]  416.20 (defunct corporation)        [ ]  416.60 (minor)

    [ ]  416.30 (joint stock company/association)   [ ]  416.70 (ward or conservatee)

    [ ]  416.40 (association or partnership)    [ ]  416.90 (authorized person)

    [ ]  416.50 (public entity)            [ ]  415.46 (occupant)

    [ ]  other:

7.  **Person who served papers**

  a.  Name:  Tyler DiMaria

  b.  Address:         1400 N McDowell Blvd, Suite 300, Petaluma, CA  94954

  c.  Telephone number:  800-938-8815

  d.  **The fee** for service was:  $40.00

  e.  I am:

    (1)  [ ]  not a registered California process server.

    (2)  [ ]  exempt from registration under Business and Professions Code section 22350(b).

    (3)  [X]  a registered California process server:

      (i)  [ ] owner  [ ] employee  [X] independent contractor

      (ii)  Registration No:   2006-006

      (iii)  County:   Sacramento

8.  [X]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  [ ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:   January 30, 2024

Tyler DiMaria

_____

  (NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000618
1400 N McDowell Blvd, Suite 300
Petaluma, CA  94954
800-938-8815

_____

                  (SIGNATURE)

# EXHIBIT "C"

| From: | Jenny Covington |
|---|---|
| To: | Rob Hammers |
| Cc: | Mike Hurvitz; Tracy Lyon; Allison Abbott; Jason Edward Ochs; Melisa Rosadini-Knott; HigginbottomAnthonyZ11595943@hammerslawfirm.filevineapp.com |
| Subject: | Re: Service of process complete for Joseph Higginbottom vs. Dexcom Inc., et al. |
| Date: | Thursday, February 1, 2024 9:27:28 PM |

EXTERNAL EMAIL - Use caution before opening attachments or clicking links.

Hi Rob-

Happy to chat tomorrow but in the meantime see the attached filing confirmation.  We filed at 12:38 PM.

Jenny

## File a New Civil Case - Attorney

### U.S. District Court

### Southern District of California

### Notice of Electronic Filing

The following transaction was entered by Hurvitz, Michael on 1/30/2024 at 12:38 PM PST and filed on 1/30/2024

**Case Name:** Plaintiffs v. Defendants
**Case Number:** 3:24-cv-99999
**Filer:**
**Document Number:** 164

**Docket Text:**
**New Civil Case documents submitted ( Filing fee received: $ 405 receipt number ACASDC-18543223.) Plaintiff: Joseph Higginbottom, Defendant: Dexcom, Inc. and Tandem Diabetes Care, Inc. (Attachments: # (1) Exhibit A - Complaint, # (2) Exhibit B - Register of Actions, # (3) Info Sheet Civil Cover Sheet)(Hurvitz, Michael)**

**No public notice (electronic or otherwise) sent because the entry is private**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=1/30/2024] [FileNumber=18122793-0] [a11e5ebe6f06e433b07793b9635b305e8621241196f56e60eb91b5e7f4faaf46d7 b17e1b27863516118f9d40b368d94f052bcdd0028be2e393dcb94dcccc0df5]]
**Document description:**Exhibit A - Complaint
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=1/30/2024] [FileNumber=18122793-1] [a272979033be477c9b822c6b965f37944da6eb8306f633534d0ef346ce798b4af8 89f2c890796937e110f5c9ac97a0d3cc6a1687e7f112578ec69c087745af1a]]
**Document description:**Exhibit B - Register of Actions
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=1/30/2024] [FileNumber=18122793-2] [86872a9de9badeefed8bccabb9cad6b8030a8e6e9228850f9057fabcc3fb3e93ff bd96aaa0b1a6d8e0c25005270c01c6f84e093e7d95f5767bf1ea3d13079e58]]
**Document description:**Info Sheet Civil Cover Sheet
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=1/30/2024] [FileNumber=18122793-3] [a53291c48b7e74730d0cc11239b7b3c2d00dd504481ad8cf6375c9e5200455c2f3 64ef0a319fe62c2b0d0ca7fe53d15ee9ad31b7f7503cef765c09062bafa941]]

On Feb 1, 2024, at 7:17 PM, Rob Hammers <rob@hammerslawfirm.com> wrote:

Mike,

We received your notice of removal stamped filed at 3:50 PM PST (see below). Dexcom and Tandem were served at 1:37 PM PST (see attached). The tardy removal using the "snap" tactic failed. We are happy to meet and confer before filing a motion to remand, but we ask that you simply withdraw/reverse your removal to save the court and us time litigating this issue.

I am reachable tomorrow any time. Should we not hear from you, we will proceed with a motion to remand on Monday.

Best,

Rob

**Notice of Electronic Filing**

The following transaction was entered on 1/30/2024 at 3:50 PM PST and filed on 1/30/2024

| | |
|---|---|
| **Case Name:** | Higginbottom v. Dexcom, Inc. et al |
| **Case Number:** | [3:24-cv-00195-WQH-BLM](#) |
| **Filer:** | Tandem Diabetes Care, Inc. |
| **Document Number:** | [1](#) |

**Docket Text:**
**NOTICE OF REMOVAL with Jury Demand ( Filing fee $ 405 receipt number ACASDC-18543223.), filed by Tandem Diabetes Care, Inc. (Attachments: # (1) Civil Cover Sheet, # (2) Exhibit A - Complaint, # (3) Exhibit B - Register of Actions)**

**The new case number is 3:24-cv-195-WQH-BLM. Judge William Q. Hayes and Magistrate Judge Barbara Lynn Major are assigned to the case.(ggv)**

**3:24-cv-00195-WQH-BLM Notice has been electronically mailed to:**

Melisa Rosadini-Knott    [mrosadini@peifferwolf.com](#)

**3:24-cv-00195-WQH-BLM Notice has been delivered by other means to:**

Jason Edward Ochs
Ochs Law Firm
P.O. Box 10944
Jackson, WY 83002

Michael J Hurvitz
Nelson Mullins Riley & Scarborough, LLP
750 B Street
Suite 2200
San Diego, CA 92101

<image002.png>

**Robert M. Hammers, Jr.**

<!--[if !vml]-->

<image004.png>
<!--[endif]-->5555 Glenridge Connector, Suite 975 Atlanta, GA 30342 |

Main: (770) 900-9000 | Fax: (404) 600-2626

[rob@hammerslawfirm.com](#) | [www.hammerslawfirm.com](#)

THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL. This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

**From:** Melisa Rosadini-Knott <mrosadini@peifferwolf.com>
**Sent:** Wednesday, January 31, 2024 1:16 AM
**To:** Rob Hammers <rob@hammerslawfirm.com>
**Cc:** Brandon Wise <BWise@peifferwolf.com>; Kevin Conway <kconway@peifferwolf.com>; Jamie Falgout <jfalgout@peifferwolf.com>; Crystal Lathrop <clathrop@peifferwolf.com>
**Subject:** FW: Service of process complete for Joseph Higginbottom vs. Dexcom Inc., et al.

**EXTERNAL EMAIL - Use caution before opening attachments or clicking links.**

Rob,

Attached is the POS showing service at 1:37 p.m. PST.

**Melisa Rosadini-Knott**
Associate

3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010
I **Direct:** 323-982-4109 I **Cell:** 310-402-6591

**peifferwolf.com**

<!--[if !vml]--><!--[endif]-->   <!--[if !vml]--><!--[endif]-->   <!--[if !vml]--><!--[endif]-->

This message is intended for the named recipient(s) only. It may contain information protected by the attorney-client and/or work product privilege. If you have received this email in error, please notify the sender immediately, do not disclose this message to anyone, and delete the message and any attachments.

Thank you very much. No attorney-client relationship is formed unless agreed to explicitly in writing.

**From:** noreply@onelegal.com <noreply@onelegal.com>
**Sent:** Tuesday, January 30, 2024 10:05 PM
**To:** Melisa Rosadini-Knott <mrosadini@peifferwolf.com>
**Subject:** Service of process complete for Joseph Higginbottom vs. Dexcom Inc., et al.

### Service of Process Order Complete

| | |
|---|---|
| Order # | 22119879 |
| Submitted | 1/30/2024 12:08 AM PT by Melisa Rosadini-Knott |
| Case | Joseph Higginbottom vs. Dexcom Inc., et al. |
| Case # | #37-2024-00003700-CU-PL-CTL |
| Party to serve | Dexcom, Inc. |
| Last day to serve | 2/16/2024 |
| Client billing | Dexcom Co-Counsel Cases |

**Documents**

- Complaint and Demand for Jury Trial
- Civil Case Cover Sheet
- Summons
- Plaintiff Joseph Higginbottom's CCP 377.32 Success...
- Notice of Case Assignment and Case Management Conf...
- Alternative Dispute Resolution Information Package
- Stipulation to Use of Alternative Dispute Resoluti...
- Notice of Confirmation of Filing SD
- Affidavit

Please find your affidavit of service for process serve order# 22119879 attached.

You can review the details of your order at any time in your One Legal account.

Thank you,
The One Legal Team

How are we doing? Share your feedback.

You are receiving this email in response to an order that was placed on www.onelegal.com
Get help on our Support Center or by email at support@onelegal.com.

InfoTrack US, Inc. 1400 North McDowell Blvd., Suite 300, Petaluma, CA 94954

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

**** This message originated from outside of our company. Do not click links or open attachments unless you recognize the sender and know the content is safe. ****

<Affidavit.pdf>
<mime-attachment>
<mime-attachment>
<2024.01.30 Tandem's Notice of Removal.pdf>

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

# EXHIBIT "D"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Jenny A. Covington (SBN: 233625)
1600 Utica Avenue South, Suite 600
Minneapolis, MN 55416
Telephone:     612.464.7626
Facsimile:     612.255.0739
jenny.covington@nelsonmullins.com

Attorneys for Defendant
TANDEM DIABETES CARE, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/30/2024** at 12:50:00 PM
Clerk of the Superior Court
By Sophia Felix,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM,<br><br>                              Plaintiff,<br><br>        vs.<br><br>DEXCOM, INC. and TANDEM DIABETES CARE, INC.,<br><br>                              Defendants. | Case No: 37-2024-3700-CU-PL-CTL<br><br>**DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF FILING OF NOTICE OF REMOVAL**<br><br>Action Filed:  January 26, 2024 |

    **TO:    CLERK OF THE COURT
            SUPERIOR COURT OF THE STATE OF CALIFORNIA
            FOR THE COUNTY OF SAN DIEGO**

            **Melissa A. Rosadini-Knott, Esq.
            Peiffer Wolf Carr Kane Conway & Wise, LLP
            3435 Wilshire Blvd., Suite 1400
            Los Angeles, CA 90010
            mrosadini@peifferwolf.com**

            **Robert M. Hammers, Jr., Esq.
            Hammers Law Firm, LLC
            5555 Glenridge Connector, Suite 975
            Atlanta, GA 30342
            rob@hammerslawfirm.com**

///

///

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

**Jason E. Ochs, Esq.**
**Ochs Law Firm**
**P.O. Box 10944**
**Jackson, WY 83002**
**jason@ochslawfirm.com**

*Attorneys for Plaintiff*

   **PLEASE TAKE NOTICE** that, on January 30, 2024, Defendant Tandem Diabetes Care, Inc. has filed its Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 in the Office of the Clerk of the United States District Court for the Southern District of California. A copy of the Notice of Removal with exhibits is attached as <u>Exhibit A</u>. In accordance with 28 U.S.C. §§ 1441 and 1446, the Notice of Removal has effected the removal of the above-captioned action from this Court to the United States District Court for the Southern District of California.

Dated: January 30, 2024

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: _____
Jenny A. Covington
Attorneys for Defendant
TANDEM DIABETES CARE, INC.

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

**PROOF OF SERVICE**
**(CCP § 1013(a) and 2015.5)**

I, the undersigned, am employed in the County of Duval, State of Florida.  I am over the age of 18 and not a party to the within action; am employed with Nelson Mullins Riley & Scarborough LLP and my business address is 50 N. Laura Street, Suite 4100, Jacksonville, FL 32202.

On January 30, 2024 I served the foregoing document entitled *DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF FILING OF NOTICE OF REMOVAL* on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof as follows:

☒ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **[by FEDERAL EXPRESS]** - I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express.  Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

☒ **[by ELECTRONIC SUBMISSION]** – By transmitting such document(s) electronically from my e-mail address at Nelson Mullins Riley & Scarborough LLP to the person(s) at the electronic mail addresses listed above pursuant to Emergency Rule 12 and/or the agreement of the parties.

☐ **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s).  Such messenger is over the age of eighteen years and not a party to the within action and employed with [attorney service].

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed January 30, 2024 at Jacksonville, FL.

Allison Abbott                                      By:  *Allison Abbott*
Print Name                                                        Signature

3

## SERVICE LIST

Melissa A. Rosadini-Knott, Esq.
Peiffer Wolf Carr Kane Conway & Wise, LLP
3435 Wilshire Blvd., Suite 1400
Los Angeles, CA 90010
mrosadini@peifferwolf.com

Robert M. Hammers, Jr., Esq.
Hammers Law Firm, LLC
5555 Glenridge Connector, Suite 975
Atlanta, GA 30342
rob@hammerslawfirm.com

Jason E. Ochs, Esq.
Ochs Law Firm
P.O. Box 10944
Jackson, WY 83002W
jason@ochslawfirm.com

*Attorneys for Plaintiff*

4874-6296-0289

# EXHIBIT A

1

**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**

2
Michael J. Hurvitz (SBN: 249050)
750 B Street, Suite 2200

3
San Diego, CA 92101
Telephone:  619.489.6165

4
Facsimile:  619.821.2834
mike.hurvitz@nelsonmullins.com

5

Jenny A. Covington (SBN: 233625)

6
1600 Utica Avenue South, Suite 600
Minneapolis, MN 55416

7
Telephone:  612.464.7626
Facsimile:  612.255.0739

8
jenny.covington@nelsonmullins.com

9
Attorneys for Defendant
TANDEM DIABETES CARE, INC.

10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM, | Case No. |
| | (Removed from San Diego Superior Court, Case No: 37-2024-00003700-CU-PL-CTL) |
| Plaintiff, | **DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO JURISDICTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446** |
| vs. | |
| DEXCOM, INC. and TANDEM DIABETES CARE, INC., | |
| Defendants. | Trial Date:       None |
| | Action Filed:    January 26, 2024 |

13

14

15

16

17

18

19

20

21
**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

22
**SOUTHERN DISTRICT OF CALIFORNIA:**

23
        Please take notice that Defendant Tandem Diabetes, Care, Inc. ("Tandem"),

24
pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, removes this case from the Superior

25
Court, San Diego County, to the United States District Court for the Southern District

26
of California.  In support of this Notice of Removal, Tandem states as follows:

27
/ / /

28

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

## Factual Background

1.     On January 26, 2024, Plaintiff Joseph Higginbottam, individually and as Personal Representative of the Estate of Anthony Higginbottom ("Plaintiff") filed a lawsuit in the San Diego County Superior Court entitled as follows: *Joseph Higginbottam, individually and as Personal Representative of the Estate of Anthony Higginbottom vs. Dexcom, Inc. and Tandem Diabetes Care, Inc.*, Case No. 37-2024-00003700-CU-PL-CTL.  Pursuant to 28 U.S.C.  § 1446, a true and correct copy of the Complaint is attached hereto as Exhibit A.

2.     The Complaint alleges various product liability and negligence claims related to the Tandem t:slim X2™ Insulin Pump.  While Tandem contests the adequacy of the pleading, it appears the Complaint asserts claims sounding in strict liability—design defect, manufacturing defect, failure to warn, and negligence (*See* Compl.).

3.     Tandem has not been served with the Complaint.

4.     A review of the Register of Actions of the Superior Court for the County of San Diego indicates that no proofs of service of the summons and complaint on any party have been filed.  A true and correct copy of the Register of Actions is attached hereto as Exhibit B.  Tandem is informed and believes the Complaint has not been served on any defendant named in this action.

5.     The Complaint was the first pleading, notice, order, or other paper from which it could be ascertained that this action is removeable. *See* 28 U.S.C. § 1446(b)(1). Accordingly, this Notice of Removal is timely filed.

## Venue

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 115, 1391, 1441(a), and 1446(a) because the San Diego County Superior Court, where the Complaint was filed, is a state court within the Southern District of California.

/ / /

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

## Jurisdiction

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between Plaintiff and Tandem; (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iii) Tandem has satisfied the procedural requirements for removal.

**I.    There is complete diversity of citizenship between Plaintiff and Tandem.**

8.    There is complete diversity of citizenship between the parties in this case. Plaintiff is a citizen of Wyoming.  Exhibit A, ¶ 2.  Because Tandem is a corporation, it is a citizen of any state in which it was incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332.  Tandem is incorporated in the State of Delaware and has its principal place of business in California. Exhibit A, ¶ 6. Therefore, there is diversity of citizenship between Plaintiff and Tandem.

9.    Dexcom is incorporated and has its principal place of business in California. Exhibit A, ¶ 5.  See also, *Erhman v. Cox Commc'ns, Inc.,* 932 F. 3d 1223, 1227 (9th Cir. 2019) (in notice of removal, "a defendant's allegations of citizenship may be based solely on information and belief"); *Carolina Cas. Ins. Co. v. Team Equip, Inc*., 741 F.3d 1082, 1086 (9th Cir. 2014) (permitting pleading of citizenship on information and belief.)

**II.    The amount in controversy exceeds $75,000.**

10.    Federal law limits federal diversity jurisdiction to matters for which the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(b); *see also* 28 U.S.C. § 1446(c)(2).    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88-89 (2014); see also, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  Though Tandem denies any liability to Plaintiff, his allegations of wrongful death and punitive damages plainly place more than $75,00 in controversy.  As Plaintiff alleges that the

decedent died in a car crash after he passed out behind the wheel of a car allegedly due to an improper bolus of insulin from the Defendants' medical device, the amount in controversy exceeds $75,000. Compl. ¶¶ 36-54. Plaintiff also seeks punitive damages. Compl. ¶¶ 60-62. *See, also e.g., Campbell v. Bridgestone/Firestone, Inc.*, 2006 WL 707291, at \*2 (E.D. Cal. Mar. 17, 2006) (amount in controversy satisfied where plaintiff assert strict products liability, negligence, and breach of warranty claims, and allegedly suffered head trauma and broken bones); *See also, Fjelstad v. Vitamin Shoppe Industries LLC*, 2021 WL 364638, \*4 (C.D. Cal. 2021) (courts have traditionally found it facially apparent from complaint that amount in controversy was satisfied in cases alleging serious injuries that require surgery, meaning plaintiff's allegations of third-degree burns and permanent physical incapacitation were sufficient to establish diversity jurisdiction, despite plaintiff's failure to plead specific monetary amount). "[J]udicial experience and common sense dictate that the value of [Plaintiff's] claims (as pled) more likely than not exceeds the minimum jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1066 (11th Cir. 2010). Were Plaintiff to prevail on his claims, she would recover in excess of $75,000.

**III. Tandem has satisfied the procedural requirements for removal.**

11. "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Here, Tandem has not been served with the Complaint, which was filed on January 26, 2024. This Notice of Removal is therefore timely because (i) fewer than thirty days have elapsed since any service of the Complaint; and (ii) this Notice of Removal has been brought less than one year after the commencement of the state action.

/ / /

DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF REMOVAL
OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446

12.   California federal courts permit removal by a home-state defendant that has not received service of the complaint.  *Hong Kong Continental Trade Co. vs. Natural Balance Pet Foods, Inc.*, 2023 WL 2664246, at *4-5 (C.D. Cal. Mar. 28, 2023).  Tandem has not been served with the Complaint and is therefore not barred from removing this action by 28 U.S.C. § 1441(b)(2) (requiring that the defendant be "properly joined and served").  The majority of District Courts and several Circuits have "consistently held a defendant may remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim." *Sherman v. Haynes & Boone*, No. 5:14-CV-01064-PSG, 2014 WL 4211118, at *1 (N.D. Cal. Aug. 22, 2014); *Loewen v. McDonnell*, No. 19-CV-00467-YGR, 2019 WL 2364413, at *7 (N.D. Cal. June 5, 2019); *Monfort v. Adomani, Inc.*, 2019 WL 131842, *3 (N.D. Cal. Jan. 8, 2019) (adopting plain language of section 1441(b)(2)); *Carreon v. Alza Corp.*, No. C 09-5623 RS, 2010 WL 539392, at *1 (N.D. Cal. Feb. 9, 2010) ("Courts in this district have routinely applied [section 1441(b)] as it is written."); *City of Ann Arbor Employees' Ret. Sys. v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, at *10 (N.D. Cal. Mar. 9, 2007) (denying motion to remand as the court was "constrained by the plain language of § 1441(b)"); *Waldon v. Novartis Pharm. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128, at *3 (N.D. Cal. June 18, 2007) (denying motion to remand and following the "plain text of section 1441(b)"); *Regal Stone Ltd. v. Longs Drug Stores California, L.L.C.*, 881 F. Supp. 2d 1123, 1127 (N.D. Cal. 2012) (denying motion to remand based on plain language of section 1441(b)); *Davis v. Hoffman-LaRoche, Inc.*, No. 13-5051 JSC, 2014 WL 12647769, at *2 (N.D. Cal. Jan. 14, 2014) (recommending to deny motion to remand and stating that courts in this district "have uniformly held that the language of Section 1441(b)(2) is clear: the local-defendant rule applies only to those defendants which have been properly joined and served.") (emphasis in original), report & recommendation adopted, 2014 WL 12647768 (N.D. Cal. Jan. 31, 2014); *Saratoga*

*Advantage Trust Tech. & Commc'n Portfolio v. Marvell Tech. Grp., Ltd*., Case No. 15-CV-04881-RMW, 2015 WL 9269166, at *2 (N.D. Cal. Dec. 21, 2015) (denying motion to remand and stating that because the forum defendant "had not been served at the time of removal, the forum defendant rule does not apply"). In the last year, two different courts of appeal have also adopted a plain language interpretation of section 1441(b). See *Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018); *Gibbons v. Bristol-Myers Squibb Co*., 919 F.3d 699, 706-707 (2d Cir. 2019).

13.     Based on information and belief, and review of the Court docket, Dexcom has not been served with the Complaint.

14.     For purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and pursuant to 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal.

15.     Defendants have not been served with the Complaint.

16.     By filing this Notice of Removal, Tandem does not waive any defense that may be available to them and reserves all such defenses.  If any question arises as to the propriety of the removal to this Court, Tandem requests the opportunity to present a brief and oral argument in support of their position that this case has been properly removed.

17.     Tandem will provide written notice of this Notice to Plaintiff's counsel of record and file a written notice of this Notice (along with a true and complete copy of hereof) in the state court action, San Diego County Superior Court Case No. 37-2024-00003700-CU-PL-CTL.     Therefore, Tandem has satisfied the procedural requirements for removal.

/ / /

/ / /

/ / /

DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF REMOVAL
OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446

WHEREFORE, Defendant Tandem Diabetes Care, Inc. respectfully gives notice that the above-captioned civil action pending in San Diego County Superior Court is removed to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated:          January 30, 2024          Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:   */s/ Michael J. Hurvitz*
       Michael J. Hurvitz

Attorneys for Defendant
TANDEM DIABETES CARE, INC.

**PROOF OF SERVICE**
**F.R.C.P. Rule 5(b)(2)(3)**

I, the undersigned, am employed in the County of Duval, State of Florida.  I am over the age of 18 and not a party to the within action; am employed with Nelson Mullins Riley & Scarborough LLP and my business address is 50 N. Laura Street, Suite 4100, Jacksonville, FL 32202.

On January 30, 2024, I served the foregoing document entitled ***DEFENDANT TANDEM DIABETES CARE, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446*** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof as follows:

☒ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **[by FEDERAL EXPRESS]** - I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express.  Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

☒ **[by ELECTRONIC SUBMISSION]** – By transmitting such document(s) electronically from my e-mail address at Nelson Mullins Riley & Scarborough LLP to the person(s) at the electronic mail addresses listed above pursuant to Emergency Rule 12 and/or the agreement of the parties.

☒ **[by ELECTRONIC SUBMISSION]** – I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s).  Such messenger is over the age of eighteen years and not a party to the within action and employed with [attorney service].

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed January 30, 2024 at Jacksonville, FL.

Allison Abbott                                    By: *Allison Abbott*
_____                         _____
Print Name                                              Signature

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

## <u>SERVICE LIST</u>

Melissa A. Rosadini-Knott, Esq.
Peiffer Wolf Carr Kane Conway & Wise, LLP
3435 Wilshire Blvd., Suite 1400
Los Angeles, CA 90010
mrosadini@peifferwolf.com

Robert M. Hammers, Jr., Esq.
Hammers Law Firm, LLC
5555 Glenridge Connector, Suite 975
Atlanta, GA 30342
rob@hammerslawfirm.com

Jason E. Ochs, Esq.
Ochs Law Firm
P.O. Box 10944
Jackson, WY 83002
jason@ochslawfirm.com

*Attorneys for Plaintiff*

4875-2718-3777

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
SAN DIEGO

PROOF OF SERVICE

# EXHIBIT A

MELISA A. ROSADINI-KNOTT (Bar No. 316369)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
3435 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90010
Telephone : (323) 982-4109
Facsimile :  (415) 840-9435
Email:  mrosadini@peifferwolf.com

ROBERT M. HAMMERS, JR. (*PHV application forthcoming*)
HAMMERS LAW FIRM, LLC
5555 Glenridge Connector, Suite 975
Atlanta, Georgia 30342
Telephone: (770) 900-9000
Email: rob@hammerslawfirm.com

JASON EDWARD OCHS (Bar No. 232819)
OCHS LAW FIRM
P.O. Box 10944
Jackson, WY  83002
Telephone: 307.234.3239
Facsimile: 307.235.6910
Email: jason@ochslawfirm.com

*Attorneys for Plaintiff*

**SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| JOSEPH HIGGINBOTTOM, individually on behalf of heirs, and as Personal Representative of the ESTATE OF ANTHONY HIGGINBOTTOM,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM, INC.; and TANDEM DIABETES CARE, INC.,<br><br>Defendants. | **CASE NO:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **NEGLIGENCE**<br>2. **STRICT PRODUCT LIABILITY - DESIGN DEFECT**<br>3. **STRICT LIABILITY – MANUFACTURING DEFECT**<br>4. **STRICT LIABILITY- FAILURE TO WARN**<br>5. **WRONGFUL DEATH** |

COMPLAINT AND DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

1.	Plaintiff JOSEPH HIGGINBOTTOM, individually and on Behalf of the Estate of ANTHONY HIGGINBOTTOM, hereby requests a trial by jury as to all issues and as to all material fact.

**PARTIES**

2.	Plaintiff JOSEPH HIGGINBOTTOM (hereinafter "Plaintiff") is, and at all times relevant was, a resident and citizen of Wyoming.  He brings this action individually and on Behalf of the Estate of ANTHONY HIGGINBOTTOM, minor decedent.   Decedent ANTHONY HIGGINBOTTOM (herein referred to as "Decedent") died in a motor vehicle collision on August 5, 2020.  Plaintiff is an authorized successor-in-interest to his Estate. The Declaration of Joseph Higginbottom, Successor-in-Interest, Pursuant to C.C.P. § 337.32, is included with this complaint.

3.	Defendant, DEXCOM, INC. (hereinafter "Dexcom"), is a Delaware corporation with its principal place of business located at 6340 Sequence Drive, San Diego, California, 92121. Defendant Dexcom may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

4.	Dexcom is, and at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California, including San Diego County.

5.	Dexcom was and is engaged in the business of manufacturing, marketing, testing, labeling, promoting, selling, and/or distributing the Dexcom G6 Continuous Glucose Monitoring System (hereinafter "G6 System").  At all pertinent times, Dexcom derived substantial revenue from the sale of the G6 System in the State of California and County of San Diego.

6.	Defendant TANDEM DIABETES CARE, INC. (hereinafter "Tandem") is a Delaware Corporation with its principal place of business located at 12400 High Bluff Drive, San Diego, California, 92130. Defendant Tandem may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

7.	Tandem is, and at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California,

1   including San Diego County.

2       8.      Tandem was and is engaged in the business of manufacturing, marketing, testing,

3   labeling, promoting, selling, and/or distributing the Tandem t:slim X2™ Insulin Pump (hereinafter

4   "t:slim pump"). At all pertinent times, Tandem derived substantial revenue from the sale of the

5   t:slim pump in the State of California and County of San Diego.

6       9.      At all pertinent times, both Defendants were engaged in the research, development,

7   manufacture, design, testing, sale and marketing of the products, and introduced such products into

8   interstate commerce with the knowledge and intent that such products would be sold in the State of

9   California.

10                          **VENUE AND JURISDICTION**

11      10.     The California Superior Court has jurisdiction over both Defendants because, based

12  on information and belief, each is a corporation maintains its principal place of business in the State

13  of California, has sufficient minimum contacts in California, and otherwise intentionally avails

14  itself of the California market so as to render the exercise of jurisdiction over it by the California

15  courts consistent with traditional notions of fair play and substantial justice.

16      11.     Further, Defendants have each purposefully availed themselves of the benefits and

17  protections of the laws within the State of California.  Collectively, Defendants conduct substantial

18  business in California and have sufficient contact with California such that the exercise of

19  jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

20      12.     Venue is proper in this Court pursuant to Code of Civil Procedure section 395(a)

21  and 395.5 because the principal place of business of both Defendants is in San Diego County.

22      13.     The amount in controversy exceeds the jurisdictional limits of this court.

23                              **INTRODUCTION**

24      14.     This is an action for damages relating to Dexcom's design, manufacture,

25  surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the

26  Dexcom G6 System.

27

28

-3-

COMPLAINT AND DEMAND FOR JURY TRIAL

15.     This is an action for damages relating to Tandem's design, manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the Tandem t:slim pump.

16.     The G6 System is a prescribed medical device intended for use by diabetic patients to replace fingerstick blood glucose testing and scanning and to detect and alert dangerous glucose levels likely to trigger life-threatening medical events as a part of short-term and long-term diabetes treatment plan.

17.     The t:slim pump is a prescribed medical device intended for use by diabetic patients as an automated insulin delivery system (hereinafter "AID") to provide subcutaneous delivery of insulin, at set and variable rates, for the management of diabetes mellitus in persons requiring insulin. The t:slim pump can be used solely for continuous insulin delivery and also integrates with the G6 System to receive and display continuous glucose measurements.

18.     The Dexcom G6 System consists of three primary components: (1) a wearable patch sensor which continuously measures blood glucose values (hereinafter "BGV") from interstitial fluids below the skin; a transmitter that attaches to the sensor and collects the BGV data and then pushes the information via a Bluetooth® connection to (3) a display device: either its proprietary receiver or a smartphone using its proprietary application (hereinafter "G6 App").

19.     The Tandem t:slim pump also pairs with the Dexcom G6 sensor and transmitter. The t:slim pump also aids in the detection of episodes of hyperglycemia and hypoglycemia by providing the G6 System BGV data to the t:slim display.

20.     The G6 System is designed to literally "sound the alarm" when a near-dangerous glucose level is detected to provide the diabetic patient with advance warning to avoid a potential hyperglycemic or hypoglycemic event.

21.     The G6 Systems have a propensity to obtain inaccurate glucose readings, fail to transmit glucose readings, and/or notify and alert its users of potential hyperglycemic and hypoglycemic events, resulting in serious injuries or death. The G6 System when integrated with the t:slim pump also increases the risk of insulin stacking when inaccurate hyperglycemic results are

COMPLAINT AND DEMAND FOR JURY TRIAL

transmitted to the display device leading to patient overdosing insulin and falling quickly into hypoglycemia.

22.     On information and belief, Plaintiff, the father of decedent: Anthony Higginbottom, a diabetic patient, brings this action for wrongful death directly and proximately caused by productdefects in the G6 System and t:slim pump.

## FACTUAL ALLEGATIONS

23.     Dexcom designs, develops, manufactures, markets, advertises, promotes, supplies, distributes, sells, and instructs in the use of the G6 System, which is a Class II device.[1]

24.     The G6 System is a prescribed medical device for diabetics to use to monitor and manage their glucose level and to detect and alert its user of potential hyperglycemic and hypoglycemic events in real-time.

25.     According to Dexcom, the G6 System is the first real-time, integrated Continuous Glucose Monitoring system (hereinafter "iCGM") requiring "zero fingersticks or calibrations" and replaces fingerstick blood glucose testing and scanning to monitor and manage diabetes.[2]

26.     Dexcom marketed and sold the G6 System as a potentially life-saving medical device capable of detecting and preventing hyperglycemic and hypoglycemic events by alerting users of near-dangerous blood glucose levels that may trigger such events.

27.     As shown in Dexcom's G6 System User Guide and noted herein, the G6 System has three key component parts: 1) the wearable sensor patch, which collects real-time BGV from just under the skin, 2) the transmitter, which sends the glucose reading from the sensor to the user's display device, and 3) the display device (G6 App or Receiver): which shows glucose reading and information to the user.

///

///

///

///

---

[1] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?id=682
[2] https://www.dexcom.com/faqs/does-the-dexcom-g6-cgm-system-require-calibrations.

| | | |
|---|---|---|
|  | Applicator with built-in sensor | Applicator helps you **insert the sensor wire under your skin.** Sensor gets your glucose information. |
| | Transmitter | **Transmitter sends your** glucose information from the sensor to the display device. |
|  | Display Device(s): • **Receiver** • **Your smart** device | Display device(s) shows your glucose information. Receiver is required for Medicare. |

28.     Dexcom's G6 App allows patients to use their smartphones and smartwatches like iPhones, Apple Watch and Android devices.[3]  The G6 App enables the G6 System users to use their smart devices as the display device to receive real-time BGV readings, notifications, and sound alarms resulting from potential hyperglycemic and hypoglycemic events.

29.     If any one of G6 System's three component parts is defective or does not operate as intended, its diabetic user would not receive accurate and timely BGV alerts and warnings.

30.     The G6 System sensor patch's failure to obtain accurate, real-time BGV information can cause a diabetic patient to suffer serious injury or death.

31.     The G6 System transmitter's failure to transmit accurate, real-time BGV information to a display device can cause a diabetic patient to suffer serious injury or death.

---

[3] See  https://apps.apple.com/us/app/dexcom-g6/id1209262925

32.    The G6 System and/or G6 App's failure to notify or sound the alarm when a hyperglycemic or hypoglycemic event occurs can cause a diabetic serious injury or death.

33.    The G6 System and/or G6 App's inaccurate readings of the user's BGV may cause a diabetic patient who integrates the G6 System with the Tandem t:slim pump to mistreat hyperglycemia or hypoglycemia, including inadvertently stacking insulin.

34.    Dexcom and Tandem are responsible for identifying all risks associated with the foreseeable uses of the G6 System and t:slim pump before marketing and selling the products, and for every identified risk, Dexcom and Tandem had and have a duty to either design the risk out or to adequately warn the users of those risks. These obligations are met by conducting risk assessments, system hazard analyses, and design/process failure modes and effects analyses.

35.    Decedent's medical provider prescribed Dexcom's G6 System and the Tandem t:slim pump as a part of decedent's diabetes treatment plan.

36.    Plaintiff's spouse purchased the G6 System from Dexcom and the t:slim pump from Tandem on behalf of decedent, a minor.

37.    As represented by Dexcom, decedent replaced the fingerstick testing method with the Dexcom G6 System. During the relevant time, decedent used the G6 System as the primary device for blood glucose testing and for diabetes treatment decisions.

38.    During the relevant time, decedent used the t:slim pump to administer bolus of insulin as needed or at preset intervals in accordance with the user instructions and training provided by Tandem.

39.    During the relevant time, decedent used the G6 System on a daily basis to monitor his BGV trends in real-time, prevent hyperglycemic and hypoglycemic episodes, and in the overall management of decedent's diabetes.

40.    During the relevant time, decedent used Dexcom's software to obtain and review glucose information from the G6 System.

41.    During the relevant time, decedent made no changes or alterations to the G6 System, the t:slim pump, or any of their component parts.

COMPLAINT AND DEMAND FOR JURY TRIAL

42.     During the relevant time, decedent used the G6 System and t:slim pump as prescribed by his physician and as directed by Dexcom and Tandem.

43.     On or about August 4, 2020, decedent changed out his sensor with his new one that evening, undertook the necessary programming, and went to bed. After the two-hour start up process, the G6 System read his BGV as extremely high.

44.     On August 5, 2020 at 2AM, his BGV read 258, and five hours later at 7AM his BGV read 214. At approximately 7:28 AM, decedent received an insulin bolus from his t:slim pump as his BGV were still reading high at 218. The t:slim pump then administered a second bolus, thereby stacking his insulin, at 8:43 AM.

45.     At the time of the second bolus administered by the t:slim pump at 8:43 AM, decedent was on his way to pick up his girlfriend to go hiking. He was operating his 1973 Chevy Nova northbound on County Road 120 just outside of Cheyene, Wyoming.

46.     The second bolus dropped decedent into hypoglycemia, causing him to pass out behind the wheel, and crash into a Laramie County weed and pest truck servicing the shoulder of the road.

47.     Anthony Higginbottom died from the injuries suffered in the collision.

48.     Decedent's G6 App failed to alert him to dangerous glucose levels and/or stopped receiving glucose information from the G6 System prior to second bolus.

49.     Decedent's G6 System failed to make accurate readings of his real-time BGV prior to administering first bolus from the t:slim pump.

50.     Decedent's G6 System failed to make accurate readings of his real-time BGV prior to administering the second bolus from the t:slim pump.

51.     Decedent's G6 System and t:slim pump malfunctioned by allowing the second bolus when his BGV levels were no longer reading high at 8:43 AM.

52.     Moreover, when Decedent's G6 App failed to notify or sound the alarm of a dangerous glucose level and/or stopped receiving glucose information from the G6 System, decedent was unaware he was experiencing a hypoglycemic event.

53.     The G6 System's and t:slim pump's failure to notify or sound the alarm of the dangerous glucose level deprived decedent and/or Plaintiff the "golden window" of time to intervene and prevent the tragic hypoglycemic-induced fatal collision.

54.     As a direct and proximate result thereof, Anthony Higginbottom suffered serious injuries and died at the scene of the collision.

55.     During all relevant times, decedent exercised ordinary care for his own safety and could not reasonably avoid his serious injuries, which resulted from G6 System's and t:slim pump's failure or defect.

56.     Dexcom induced Plaintiff to rely on its representations about the G6 System's and G6 App's accuracy and efficacy for treating his son's diabetes.

57.     Tandem induced Plaintiff to rely on its representations about the t:slim's reliability and efficacy for treating his son's diabetes.

58.     Plaintiff reasonably relied on Dexcom's representations as to the G6 System and the G6 App's accuracy and efficacy for treating his son's diabetes.

59.     Plaintiff reasonably relied on Tandem's representations as to the t:slim's reliability and efficacy for treating his son's diabetes.

## **PUNITIVE DAMAGES ALLEGATIONS**

60.     Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

    a.  Prior to FDA clearance, Defendants knew the G6 System integrated with the t:slim pump was often inaccurate and struggled to maintain reliable connectivity between transmitter and display device;

    b.  After FDA clearance, Defendants received complaints from users and providers detailing the high rates of reports regarding the G6 System integrated with the t:slim pump being inaccurate and struggling to maintain reliable connectivity between transmitter and display device;

    c.  Despite their knowledge of the inaccuracy of the BGV data and the unreliable wireless communications between tranmistter and display deveice, Defendants

-9-

affirmatively minimized this risk through marketing and promotional efforts and product labeling;

d.  With said knowledge, Defendants opted to manufacture and distribute and market the products without attempting to warn consumers or the public of the high risk of injury or death that could result from the use of the products intentionally fraudulently, consciously and actively concealing and suppressing their knowledge of this risk from consumers and the public;

e.  Defednants impliedly represented the products were safe for their intended and reasonably foreseeable use with knowledge of the falsity of said implied representations.

61.     The above referenced conduct of Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of the G6 System and t:slim pump.  In pursuance of said financial motivation, Defendants consciously disregarded the safety of the consumer of the products, decedent Anthony Higginbottom, and were, in fact, consciously willing to permit the products to cause injury to consumers, including Decedent Anthony Higginbottom.

62.     As the above referenced conduct of Defendants was and is vile, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of consumers of the G6 System and t:slim pump, including Decedent Anthony Higginbottom, for the sake of example and by way of punishing Defendants seek punitive damages according to proof.

## **TOLLING**

63.     Plaintiff pleads he, Dexcom, and Tandem agreed to toll all applicable statutes of limitation and this action is being brought before the expiration of the tolling agreement.

64.     Accordingly, any applicable statutes of limitations have been tolled.

65.     Defendants are estopped from relying on the statute of limitations defense because of the tolling agreement.

COMPLAINT AND DEMAND FOR JURY TRIAL

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

66.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

67.     At all times relevant, Dexcom was in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing and instructing in the use of the G6 System, including the one purchased for decedent.

68.     At all times relevant, Tandem was in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing and instructing in the use of the t:slim pump, including the one purchased for decedent.

69.     Dexcom had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the G6 System so as to avoid exposing others to foreseeable and unreasonable risks of harm.

70.     Tandem had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the t:slim pump so as to avoid exposing others to foreseeable and unreasonable risks of harm.

71.     Dexcom breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of the G6 System.

72.     Tandem breached their duty of care to Plaintiff, decedent, and his physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of the t:slim pump.

73.     Dexcom knew, or reasonably should have known, the G6 System failed  to measure its user's BGV accurately and failed to adequately warn Plaintiff of this defect.

74.     Tandem knew, or reasonably should have known, the t:slim pump may administer a second bolus of insulin, and therefore, stack insulin because the G6 System failed to  measure its user's BGV accurately and also failed to adequately warn Plaintiff of this defect.

75.     Dexcom knew, or reasonably should have known, the G6 System failed to transmit

-11-

or failed to transmit in real-time BGV information from the sensor to the transmitter and/or display device and failed to warn Plaintiff of this defect.

76.    Dexcom had a duty to warn Plaintiff, decedent's physician, and/or the medical community of the potential for G6 System to malfunction or otherwise not operate as Dexcom represented and failed to do so.

77.    Tandem had a duty to warn Plaintiff, decedent's physician, and/or the medical community of the potential for t:slim to malfunction or otherwise not operate as Tandem represented and failed to do so.

78.    Defendants breached these respective duties owed to Plaintiff and decedent, and, as a direct and proximate result, was harmed thereby.

79.    Defendants knew, or reasonably should have known, the G6 System and t:slim pump were dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

80.    At the time of the manufacture and sale of the G6 System, Dexcom knew, or reasonably should have known, the G6 System was designed and manufactured in such a way to present an unreasonable risk of inaccurate BGV readings inaccurate "real-time" reporting, and/or non-functioning alarm and notification.

81.    At the time of the manufacture and sale of the t:slim pump, Tandem knew, or reasonably should have known, the G6 System was designed and manufactured in such a way as to present an unreasonable risk of calculating and transmitting inaccurate BGV readings to the integrated t:slim pump, thereby creating an unreasonably dangerous risk of insulin stacking to users like decedent.

82.    At the time of the manufacture and sale of the G6 System, Dexcom knew, or reasonably should have known, the G6 System was designed and manufactured in such a way to present an unreasonable risk of harm by failing to accurately report or notify its user of a near-dangerous glucose level, which, in turn, deprived its users of a "golden window" of time to intervene and prevent serious injury or death.

83.    At the time of the manufacture and sale of the G6 System, Dexcom knew, or

-12-

COMPLAINT AND DEMAND FOR JURY TRIAL

reasonably should have known, using the G6 System for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries, including but not limited to cardiac arrest, loss of consciousness, and coma, or death.

84. Dexcom knew, or reasonably should have known, that the consumer-patients of the G6 System would not realize the danger associated with using the G6 System for its intended use and/or in a reasonably foreseeable manner.

85. Tandem knew, or reasonably should have known, that the consumer-patients of the t:slim pump would not realize the danger of inaccurate BGV readings from the G6 System might cause them to receive an unreasonably dangerous amount of insulin from the device.

86. Defendants, jointly and severally, breached their respective duties to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the G6 System and t:slim pump in, among others, the following ways:

    a. Designing and distributing products in which each Defendant knew, or reasonably should have known, the likelihood and severity of potential harm from the products exceeded the burden of taking measures to reduce or avoid harm;

    b. Designing and distributing products in which each Defendant knew, or reasonably should have known, the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other integrated glucose monitoring systems available for the same purpose;

    c. Failing to use reasonable care in manufacturing the products and producing products that differed from their design or specifications;

    d. Failing to use reasonable care to warn or instruct Plaintiff, decedent, decedent's healthcare providers, or the general health care community about the G6 System's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

    e. Failing to use reasonable care to warn or instruct Plaintiff, decedent,

decedent's healthcare providers, or the general health care community about the t:slim pump's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

f.   Failing to perform reasonable pre-and post-market testing of the G6 System and t:slim pump to determine whether or not the product was safe for its intended use;

g.   Failing to provide adequate instructions, guidelines, and safety precautions, to those persons to whom it was reasonably foreseeable would prescribe the G6 System and t:slim pump to diabetics;

h.   Advertising, marketing and recommending the use of the G6 System and t:slim pump, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the G6 System and integrated t:slim pump;

i.   Representing that the G6 System was safe for its intended use when, in fact, Dexcom knew, or reasonably should have known, the product was not safe for its intended purpose;

j.   Representing that the t:slim pump was safe for its intended use when, in fact, Tandem knew, or reasonably should have known, the product was not safe for its intended purpose when integrated with the G6 System;

k.   Continuing the manufacture and sale of the G6 System with the knowledge the G6 System was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

l.   Continuing the manufacture and sale of the t:slim pump with the knowledge the t:slim pump was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

m.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the G6 System so as to avoid the risk of serious harm associated with the use of the G6 System;

COMPLAINT AND DEMAND FOR JURY TRIAL

n.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the t:slim pump so as to avoid the risk of serious harm associated with the use of the t:slim pump with G6 System;

o.  Failing to establish an adequate quality assurance program used in the manufacturing of the G6 System;

p.  Failing to establish an adequate quality assurance program used in the manufacturing of the t:slim pump;

q.  Failing to establish and maintain an adequate post-marketing surveillance program for the G6 System;

r.  Failing to establish and maintain an adequate post-marketing surveillance program for the t:slim pump;

s.  Failing to adequately and correctly report safety information relative to theG6 System product resulting in inadequate warnings;

t.  Failing to adequately and correctly report safety information relative to the t:slim product resulting in inadequate warnings;

u.  Failing to provide adequate and continuous warnings about the inherent danger of the G6 System's inaccurate glucose monitoring and reporting;

v.  Failing to provide adequate warnings about the inherent danger of insulin stacking resulting from the G6 System's inaccurate glucose monitoring and reporting; and

w.  In committing other negligent acts or omissions as may be shown by the evidence and proven at trial.

87.     During all relevant times, decedent exercised ordinary care for his own safety and could not reasonably avoid his serious injuries and death caused by G6 System's and t:slim pump's failure or defect .

88.     Reasonable manufacturers, distributors, and/or sellers under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

-15-

COMPLAINT AND DEMAND FOR JURY TRIAL

89.     As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

90.     As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

91.     In performing the foregoing acts or omissions, the Johnson & Johnson Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

92.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## SECOND CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

93.     Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

94.     The G6 System is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

95.     The t:slim pump is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

96.     The G6 System was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Dexcom's possession. The t:slim pump was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Tandem's possession.

97.     The G6 System purchased by Plaintiff for decedent was defective in design because

-16-

it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

98.     The t:slim purchased by Plaintiff for decedent was defective in design because it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

99.     The G6 System purchased by Plaintiff for decedent was defective in design, in that the G6 System's risks of harm exceeded its claimed benefits.

100.    The t:slim pump purchased by Plaintiff for decedent was defective in design, in that the t:slim pump's risks of harm exceeded its claimed benefits.

101.    Plaintiff, decedent, and decedent's healthcare providers used the G6 System in a manner that was reasonably foreseeable to Dexcom.

102.    Plaintiff, decedent, and decedent's healthcare providers used the t:slim pump in a manner that was reasonably foreseeable to Tandem.

103.    Plaintiff, decedent, and decedent's healthcare providers could not have by the exercise of reasonable care discovered the G6 System's defective conditions or perceived its unreasonable dangers prior to the purchase of the system.

104.    Plaintiff, decedent, and decedent's healthcare providers could not have by the exercise of reasonable care discovered the t:slim pump's defective conditions or perceived its unreasonable dangers prior to the purchase of the product.

105.    As a result of the foregoing design defects, the G6 System created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System.

106.    As a result of the foregoing design defects, the t:slim pump created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the t:slim pump.

107.    Dexcom has intentionally and recklessly designed the G6 System and t:slim pump

-17-

1   with wanton and willful disregard for the rights and health of the Plaintiff and others, and with

2   malice, placing their economic interests above the health and safety of the Plaintiff and others.

3       108.   As a foreseeable, direct, and proximate consequence of Dexcom's actions,

4   omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony

5   Higginbottom as provided for by California law.

6       109.   As a foreseeable, direct, and proximate consequence of Tandem's actions,

7   omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony

8   Higginbottom as provided for by California law.

9       110.   In performing the foregoing acts or omissions, the Defendants, and each of them,

10   acted despicably, fraudulently, and with malice and oppression so as to justify and award of

11   punitive and exemplary damages.

12       111.   WHEREFORE, Plaintiff demands judgment against Defendants, and each of them

13   individually, jointly, severally and in the alternative, requests compensatory damages, punitive

14   damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court

15   deems equitable and just.

16                         **THIRD CAUSE OF ACTION**

17           **STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

18       112.   Plaintiff realleges and incorporates by reference every allegation contained in all

19   other paragraphs of this Complaint as if each were set forth fully and completely herein.

20       113.   Dexcom designed, set specifications, manufactured, prepared, compounded,

21   assembled, processed, marketed, labeled, performed post-market surveillance, distributed and sold

22   the G6 System that was purchased for decedent.

23       114.   Tandem designed, set specifications, manufactured, prepared, compounded,

24   assembled, processed, marketed, labeled, performed post-market surveillance, distributed and sold

25   the t:slim pump that was purchased for decedent.

26       115.   The G6 System purchased for decedent contained a condition or conditions, which

27   Dexcom did not intend, at the time the G6 System left Dexcom's control and possession.

28       116.   The t:slim pump purchased for decedent contained a condition or conditions, which

117.   Tandem did not intend, at the time the t:slim pump left Tandem's control and possession.

118.   Decedent and decedent's health care providers used the G6 System in a manner consistent with and reasonably foreseeable to Dexcom.

119.   Decedent and decedent's health care providers used the t:slim pump in a manner consistent with and reasonably foreseeable to Tandem.

120.   As a result of these conditions, the products failed to perform as safely as the ordinary consumer would expect, causing injury, when used in a reasonably foreseeable manner.

121.   The G6 System was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent.

122.   The t:slim pump was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to decedent.

123.   As a result of the manufacturing defects, the G6 System and t:slim pump create risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the G6 System and t:slim pump.

124.   Dexcom has intentionally and recklessly manufactured the G6 System with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others

125.   Tandem has intentionally and recklessly manufactured the t:slim pump with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

126.   As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

127.   As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

128.    In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

129.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **FOURTH CAUSE OF ACTION**

### **STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

130.    Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

131.    Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the G6 System, including the one purchased for decedent, into the stream of commerce and in the course of same, directly advertised and marketed the G6 System to consumers or persons responsible for consumers.

132.    Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the t:slim pump, including the one purchased for decedent, into the stream of commerce and in the course of same, directly advertised and marketed the t:slim pump to consumers or persons responsible for consumers.

133.    At the time Dexcom designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and put the G6 System into the stream of commerce, Defendant knew, or reasonably should have known, the G6 System presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

134.    At the time Tandem designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and put the t:slim pump into the stream of commerce, Tandem knew, or reasonably should have known, the t:slim pump presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated

-20-

COMPLAINT AND DEMAND FOR JURY TRIAL

1   use.

2       135.    Specifically, Dexcom knew, or reasonably should have known, the G6 System posed

3   a significant risk of inaccurate or failed glucose monitoring, reporting and alerting, resulting in

4   significant injuries or deaths.

5       136.    Specifically, Tandem knew, or reasonably should have known, the t:slim pump

6   posed a significant risk of insulin stacking if the G6 System transmitted an inaccurate BGV, which

7   would likely cause a hypoglycemic event resulting in significant injuries or death.

8       137.    Dexcom had a duty to warn of the risk of harm associated with the use of the G6

9   System and to provide adequate warnings concerning the risk of failed, inaccurate, or delayed (not

10  real-time) BGV readings, notifications, and alarm failures to the user and his or her medical

11  providers.

12      138.    Tandem had a duty to warn of the risk of harm associated with the t:slim pump

13  administering insulin based upon inaccurate BGV transmitted to the device by the G6 System and to

14  provide adequate warnings concerning the risk of insulin stacking to patients using the t:slim pump.

15      139.    Dexcom failed to adequately warn and instruct the decedent and his health care

16  providers that the G6 System should not be relied upon as a sole method to calculate, measure,

17  report and assess a diabetic's BGV.

18      140.    Tandem failed to adequately warn and instruct the decedent and his health care

19  providers that the G6 System should not be relied upon as a sole method to calculate, measure,

20  report and assess a diabetic's BGV, and therefore, a user such as decedent should take fingerstick

21  test before administering unscheduled insulin bolus from the t:slim pump.

22      141.    The risks associated with the G6 System are of such a nature that health care

23  providers and users could not have recognized the potential harm. The risks associated with the

24  t:slim pump are of such a nature that health care providers and users could not have recognized the

25  potential harm.

26      142.    The G6 System was defective and unreasonably dangerous at the time of its release

27  into the stream of commerce due to the inadequate warnings, labeling and/or instructions

28  accompanying the product, including but not limited to, its representation as the replacement for

-21-

fingerstick glucose testing system.

143. The t:slim pump was defective and unreasonably dangerous at the time of its release into the stream of commerce due to the inadequate warnings, labeling and/or instructions accompanying the product, including but not limited to, its representation the G6 System serves as the replacement for fingerstick glucose testing system.

144. The G6 System, when purchased for decedent, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Dexcom.

145. The t:slim pump, when purchased for decedent, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Tandem.

146. Dexcom intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the G6 System in order to advance their own financial interests, with wanton and willful disregard for the rights and health of decedent.

147. Tandem intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the t:slim pump in order to advance their own financial interests, with wanton and willful disregard for the rights and health of decedent.

148. As a foreseeable, direct, and proximate consequence of Dexcom's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

149. As a foreseeable, direct, and proximate consequence of Tandem's actions, omissions, and misrepresentations, Plaintiff may recover for the wrongful death of Anthony Higginbottom as provided for by California law.

150. In performing the foregoing acts or omissions, the Defendants, and each of them, acted despicably, fraudulently, and with malice and oppression so as to justify and award of punitive and exemplary damages.

151. WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **FIFTH CAUSE OF ACTION**

### **WRONGFUL DEATH**

152.   Plaintiff realleges and incorporates by reference every allegation contained in all other paragraphs of this Complaint as if each were set forth fully and completely herein.

153.   As a result of the acts and/or omissions of Defendants, and each of them, as set aforesaid, Decedent Anthony Higginbottom's use of the G6 Sytem and t:slim pump caused him to stack insulin, become hypoglycemic, lose consciousness while operating a motor vehicle, crash, and die on August 5, 2020.

154.   Plaintiff Joseph Higginbottom was Decedent Anthony Higginbottom's father and is a rightful heir to his estate.

155.   As a direct and proximate result of the acts of Defendants, and each of them, Plaintiff Joseph Higginbottom has sustained pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of Decedent in a sum exceeding $25,000 exclusive of interest and costs.

156.   Plaintiff has lost pre-judgment interest pursuant to Civil Code Section 3288, the exact amount of which Plaintiff prays leave of the Court to insert herein when finally ascertained.

157.   As a further direct and proximate result of the said conduct of Defendants, and each of them, Plaintiff has incurred, and will incur, loss of income, wages, pensions, profits and commissions, a diminished earning potential and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this Complaint to conform to proof at the time of trial.

158.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorney's fees, and such further relief as the Court deems equitable and just.

///

///

///

-23-

COMPLAINT AND DEMAND FOR JURY TRIAL

1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.  For general damages according to proof;

2.  For loss of income according to proof;

3.  For punitive damages according to proof;

4.  For Plaintiff's costs of suit herein; and

5.  For such other and further relief as this Court deems just and proper, including costs as provided in California Code of Civil Procedure sections 998 and 1032 and related provisions of law.

DATED:  January 26, 2024                    Respectfully Submitted,

By: _____
Melisa A. Rosadini-Knott
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

By: _____/s/ Robert M. Hammers, Jr._____
Robert M. Hammers, Jr. (*Pro hace vice application forthcoming*)
HAMMERS LAW FIRM, LLC

By: _____/s/ Jason E. Ochs_____
Jason Edward Ochs
OCHS LAW FIRM

*Attorneys for Plaintiff*

-24-

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury on all claims so triable.

3

4    DATED:  January 26, 2024                    Respectfully Submitted,

5
                                                 By: _____
6
                                                 Melisa A. Rosadini-Knott
7                                                PEIFFER WOLF CARR KANE CONWAY &
                                                 WISE, LLP
8

9
                                                 By: _____*/s/ Robert M. Hammers, Jr.*_____
10
                                                 Robert M. Hammers, Jr. (*Pro hace vice*
11                                               application forthcoming)
                                                 HAMMERS LAW FIRM, LLC
12

13
                                                 By: _____*/s/ Jason E. Ochs*_____
14
                                                 Jason Edward Ochs
15                                               OCHS LAW FIRM

16
                                                 *Attorneys for Plaintiff*
17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

# EXHIBIT B

## SUPERIOR COURT OF CALIFORNIA
# County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2024-00003700-CU-PL-CTL | Filing Date: | 01/26/2024 |
| Case Title: | Higginbottom vs Dexcom Inc [IMAGED] | Case Age: | |
| Case Status: | Pending | Location: | Central |
| Case Category: | Civil - Unlimited | Judicial Officer: | Gregory W Pollack |
| Case Type: | Product Liability | Department: | C-71 |

## Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| 06/28/2024 | 01:30 PM | C-71 | Civil Case Management Conference - Complaint |

## Participants

| Name | Role | Representation |
|---|---|---|
| Dexcom Inc | Defendant | |
| Higginbottom, Joseph | Plaintiff | Rosadini-Knott, Melisa |
| Joseph Higginbottom as Personal Representative of the Estate of Anthony Higginbottom | Plaintiff | Rosadini-Knott, Melisa |
| Tandem Diabetes Care Inc | Defendant | |

## Representation

| Name | Address | Phone Number |
|---|---|---|
| ROSADINI-KNOTT, MELISA | 3435 Wilshire Boulevard 1400 Los Angeles CA 90010 | (323) 982-4109 |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 01/26/2024 | Complaint filed by Higginbottom, Joseph; Joseph Higginbottom as Personal Representative of the Estate of Anthony Higginbottom.<br>Refers to: Dexcom Inc; Tandem Diabetes Care Inc | Higginbottom, Joseph (Plaintiff); Joseph Higginbottom as Personal Representative of the Estate of Anthony Higginbottom (Plaintiff) |
| 2 | 01/26/2024 | Civil Case Cover Sheet filed by Higginbottom, Joseph.<br>Refers to: Dexcom Inc; Tandem Diabetes Care Inc | Higginbottom, Joseph (Plaintiff) |
| 3 | 01/26/2024 | Original Summons filed by Higginbottom, Joseph.<br>Refers to: Dexcom Inc; Tandem Diabetes Care Inc | Higginbottom, Joseph (Plaintiff) |
| 4 | 01/26/2024 | Declaration - Other filed by Higginbottom, Joseph.<br>Refers to: Dexcom Inc; Tandem Diabetes Care Inc | Higginbottom, Joseph (Plaintiff) |
| 5 | 01/29/2024 | Summons issued. | |
| 6 | 01/26/2024 | Case assigned to Judicial Officer Pollack, Gregory. | |
| 7 | 01/29/2024 | Civil Case Management Conference scheduled for 06/28/2024 at 01:30:00 PM at Central in C-71 Gregory W Pollack. | |
| 8 | 01/29/2024 | [Another document for ROA# 8] | |
| 8 | 01/29/2024 | [Another document for ROA# 8] | |
| 8 | 01/29/2024 | Case initiation form printed. | |

# EXHIBIT "E"

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Casola,<br><br>                    Plaintiff,<br><br>v.<br><br>Dexcom, Inc.,<br><br>                    Defendant. | Case No.: 22cv1865-JO-MDD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES; AND DENYING DEFENDANT'S MOTION TO DISMISS** |

On November 29, 2022, Plaintiff Lauren Casola filed a product liability action against Defendant Dexcom, Inc. ("Defendant" or "Dexcom"). Defendant removed Plaintiff's action to this Court on November 28, 2022, one day before the complaint was actually filed in state court. On December 19, 2022, Defendant filed a motion to dismiss. Dkt. 6. On December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction and requested attorneys' fees incurred in seeking remand. Dkt. 7. For the reasons stated below, the Court grants Plaintiff's motion to remand, grants Plaintiff's request for attorneys' fees, and denies Defendant's motion to dismiss as moot.

1

# I. BACKGROUND

Plaintiff initiated a product liability suit in state court but Defendant removed the action to federal court before the action was officially filed.  On November 29, 2022, Plaintiff filed her complaint in state court. Dkt. 17, Ex. A.  Although the official filing date of Plaintiff's complaint was November 29, 2022, Plaintiff electronically submitted the complaint to the superior court clerk for filing six days prior.  Defendant received notice of this electronic submission through the filing service provider and immediately filed a Notice of Removal on November 28, 2022—one day before the clerk filed Plaintiff's complaint in superior court.[1]  Dk. 1.  On December 19, 2022, Defendant also filed a motion to dismiss Plaintiff's complaint before this Court.  Dkt. 6.

Both Plaintiff and the Court questioned the legal validity of Defendant's removal of an action with only state law claims by a defendant that is a citizen of California.  On December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction on the grounds that (1) the notice of removal was defective because the complaint had not even been filed at the time of removal and (2) because Defendant was a California citizen, it could not remove on the grounds of diversity jurisdiction.  Dkt. 7.[2]  Plaintiff also requested attorneys' fees and costs incurred in the removal.  Dkt. 20 (Reply).  On January 12, 2023, the Court ordered Defendant to show cause why the case should not be remanded to state court because Defendant was a California citizen seeking to remove an action solely on the basis of diversity.  Dkt. 10. The Court ordered the parties to either file a response to the order to show cause or notify the Court that the parties had stipulated to a remand to state court.  *Id.*  On February 1, 2023, Defendant filed a response arguing that Plaintiff waived her right to object to an

---

[1] Plaintiff did not serve Defendant with the complaint until November 30, 2022.  Dkt. 17, Ex. B.
[2] The case was transferred to the undersigned on January 5, 2023.  Dkt. 9.

22cv1865-JO-MDD

improper removal because her remand motion was untimely. Dkt. 16. According to Defendant, this waiver entitled it to remain in federal court. *Id.*[3]

## II. LEGAL STANDARD

A defendant may remove a state court action to federal court only if the federal court would originally have had federal question or diversity jurisdiction over the matter. *See* 28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. In order to remove an action on diversity grounds, however, defendants must meet an additional requirement: according to the "forum defendant rule," a civil action may not be removed if any defendant is a citizen of the state where the complaint was filed. 28 U.S.C. § 1441(b)(2). The forum defendant rule thus "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004). Because the principal purpose of diversity jurisdiction is to "protect out-of-state defendants from possible prejudices in state court," this bar to removal by local defendants reflects the reality that there is no need for such protection where the defendant is a resident of the state in which the case is brought. *Lively*, 456 F.3d at 940.

Parties can waive the "forum defendant" limitation on removal by failing to object in a timely manner. A plaintiff must file a motion to remand the action on this basis within 30 days of the notice of removal. *See* 28 U.S.C. § 1447(c). Otherwise, because the forum defendant rule does not deprive the federal court of jurisdiction, a plaintiff can be deemed to have waived its objection based on a violation of this rule. *Lively*, 456 F.3d at 942.

In considering a remand, the court construes any doubts against the removing party. There is a "strong presumption against removal jurisdiction," which means that "the

---

[3] Defendant asserted these same arguments in its opposition to Plaintiff's motion to remand. Dkt. 19.

defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotations omitted); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal."). Thus, a court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

### III. DISCUSSION

The Court finds that this action must be remanded to state court because as a citizen of California, Defendant cannot remove this action on the grounds of diversity jurisdiction. At the time of removal, Defendant was a citizen of California and, therefore, a forum defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"). As a forum defendant, Defendant cannot not remove this action solely on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

Defendant concedes its status as a forum defendant but argues that Plaintiff waived her right to remand by failing to file her motion in a timely manner. Defendant argues that because it filed its Notice of Removal on November 28, 2022, and Plaintiff did not move to remand until December 29, 2022, she exceeded her 30-day window to challenge the "forum defendant" defect. In response, Plaintiff argues that Defendant's Notice of Removal was defective because Defendant filed it before Plaintiff's complaint was officially filed; a defective removal notice cannot start the clock on the 30-day window for a remand motion. Because resolution of this dispute hinges on this issue, the Court will examine the validity of Defendant's Notice of Removal.

A proper removal requires a complaint to have first been filed. The removal statute provides that the defendant must file a notice of removal upon receipt "of a copy of the

initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1).  A complaint must be filed in court to become an initial pleading; only after a complaint has been filed is there anything to be removed.  Cal. Civ. Pro. Code § 350 ("An action is commenced…when the complaint is filed); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) ("Had [defendant] removed on the basis of a not-yet-filed complaint, which may or may not ever have materialized, 'it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal.'"); *Kurihara v. CH2M Hill, Inc.*, 6 F. Supp. 2d 533, 536 (E.D. Va. 1998) (finding removal period was not triggered where defendant received copy of pleading that "bore no indication that it actually had been filed").

Here, Defendant filed a notice of removal seeking to remove a not-yet-filed complaint.  Although Plaintiff electronically submitted her complaint a few days before, the San Diego Superior Court did not file Plaintiff's complaint until November 29, 2022, as evidenced by the time stamp of the Clerk of the Superior Court.  Dkt. 17, Ex. A.  At the time of this filing, Plaintiff's civil action commenced, Cal. Civ. Pro. Code § 350, and her filed complaint became the "initial pleading" in the lawsuit.  The removal statute requires Defendant to file a notice of removal upon receipt "of a copy of the initial pleading" in a case but Defendant did not do so; instead, it filed a notice of removal based on an unfiled complaint— before it had an official "initial pleading" in hand.  For this reason, the Court finds that Defendant's Notice of Removal was defective and therefore, its filing on November 28, 2022, does not render Plaintiff's motion to remand untimely.

Defendant takes the position that Plaintiff's complaint was filed when it was submitted to the San Diego Superior Court despite the later official filing date.  Defendant argues that a complaint is filed when it is in "actual or constructive custody" of the clerk; thus, the complaint was already "filed" as of the date it was electronically submitted, six days before Defendant's removal of the action.  *See* Def.'s Opp'n 8 citing to *U.S. v. Dae Rim Fishery Co., Ltd.*, 794 F.2d 1392 (9th Cir. 1986), *Loya v. Desert Sands Unified School Dist.*, 721 F.2d 279 (9th Cir. 1983), and *Carlson v. State of California Dep't of Fish &*

*Game*, 68 Cal. App. 4th 1268 (1998). The Court has reviewed the cases that Defendant relies upon and finds them to be inapposite to the issue before it. *Loya* involved a court clerk who refused to file a complaint because it was typed on the wrong size paper in violation of a local rule. *Loya*, 721 F.2d at 280. By the time plaintiff refiled the complaint, the statute of limitations had expired. *Id.* On appeal, the Ninth Circuit held that "for purposes of the statute of limitations, the district court should regard as 'filed' a complaint which arrives in the custody of the clerk within the statutory period but fails to conform with formal requirements in local rules." *Id.* at 281. Similarly, both *Dae Rim Fishery* and *Carlson* involved situations where a court clerk rejected complaints for technical failures causing the plaintiffs to miss their statute of limitations window. *Dae Rim Fishery Co.*, 794 F.2d 1392; *Carlson*, 68 Cal. App. 4th 1268. In both cases, the appellate courts held that for purposes of the statute of limitations, filing should be deemed to have occurred on the date of delivery. *Dae Rim Fishery Co.*, 794 F.2d at 1395; *Carlson*, 68 Cal. App. 4th at 1273. The holdings of these cases are explicitly limited to contexts in which the expiration of the statute of limitations is at stake—to prevent the manifest injustice of a clerk's refusal to file a complaint depriving a plaintiff of the right to bring suit. *See id.* The cases do not apply to the situation here involving a defendant removing a complaint that had not been properly filed.

Accordingly, the Court finds Defendant's removal notice to be defective because it was filed in advance of a filed complaint. The Court remands this action because it was filed by a forum defendant and Plaintiff did not waive this defect by failing to file a timely motion to remand.

## IV. REQUEST FOR ATTORNEYS' FEES

Finding that Defendant's removal of this action was improper, the Court next considers Plaintiff's request for the attorneys' fees and costs she incurred as a result of Defendant's removal. Under 28 U.S.C. § 1447(c), a court may order payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for awarding fees turns on the reasonableness of the

defendant's decision to remove a case. A court may exercise its sound discretion to award attorneys' fees under § 1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court finds that Defendant had no reasonable grounds to remove this case. It is undisputed that Dexcom is a forum defendant: the company is a citizen of California and maintains its principal place of business in San Diego, California. Given that the removal statute expressly provides that forum defendants may not remove their actions on the basis of diversity, 28 U.S.C. § 1441(b)(2), Defendant had no objectively reasonable basis to file a notice of removal. In opposing remand, Defendant acknowledges the forum defendant rule but argues only that Plaintiff waived the defect with her untimely remand motion. Removing a case in violation of the requirements and hoping that Plaintiff waives the procedural defect is far from having a reasonable basis for the removal in the first instance. *See, e.g.*, *Everest Systems Co. v. Platinum Roofing, Inc.*, 2019 WL 3387951, at *2 (N.D. Cal. July 26, 2019) (granting fees where forum defendant removed action in hopes that plaintiff would waive its right to remand). The Court finds that fees and costs are appropriate because Defendant lacked a reasonable basis to remove this action.[4]

## V. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand and request for attorneys' fees [Dkt. 7] and DENIES Defendant's motion to dismiss [Dkt. 6] as moot. The Court DIRECTS Plaintiff to file, within fifteen (15) days of the entry of this order, a motion for attorneys' fees containing a substantiation of fees and costs incurred in the removal. Defendant may file a response within seven (7) days of Plaintiff's filing of

---

[4] While not a part of the above reasonableness analysis, the Court also questions the good faith of Dexcom and its counsel, a large and reputable law firm, in pursuing a groundless removal in violation of well-established principles.

the motion. The Court instructs the Clerk to remand the action to San Diego County Superior Court.

**IT IS SO ORDERED**.

Dated: March 31, 2023

_____

Honorable Jinsook Ohta
United States District Judge

22cv1865-JO-MDD

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lutz,<br><br>                                  Plaintiff,<br><br>v.<br><br>Dexcom, Inc.,<br><br>                                  Defendant. | Case No.: 22cv1871-JO-MDD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES; AND DENYING DEFENDANT'S MOTION TO DISMISS** |

On December 1, 2022, Plaintiff Jodi Lutz filed a product liability action against Defendant Dexcom, Inc. ("Defendant" or "Dexcom") in state court. Defendant removed Plaintiff's action to this Court on November 28, 2022, three days before the complaint was actually filed in state court. On December 21, 2022, Defendant filed a motion to dismiss. Dkt. 6. On December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction and requested attorneys' fees incurred in seeking remand. Dkt. 8. For the reasons stated below, the Court grants Plaintiff's motion to remand, grants Plaintiff's request for attorneys' fees, and denies Defendant's motion to dismiss as moot.

# I. BACKGROUND

Plaintiff initiated a product liability suit in state court but Defendant removed the action to federal court before the action was officially filed. On December 1, 2022, Plaintiff filed her complaint in state court. Dkt. 8, Ex. A. Although the official filing date of Plaintiff's complaint was December 1, 2022, Plaintiff electronically submitted the complaint to the superior court clerk for filing a few days prior. Defendant received notice of this electronic submission through the filing service provider and immediately filed a Notice of Removal on November 28, 2022—three days before the clerk filed Plaintiff's complaint in superior court. [1] Dkt. 1. On December 21, 2022, Defendant also filed a motion to dismiss Plaintiff's complaint before this Court. Dkt. 6.

Both Plaintiff and the Court questioned the legal validity of Defendant's removal of an action with only state law claims by a Defendant that is a citizen of California. On December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction on the grounds that (1) the notice of removal was defective because the complaint had not even been filed at the time of removal and (2) because Defendant was a California citizen, it could not remove on the grounds of diversity jurisdiction. Dkt. 8.[2] Plaintiff also requested attorneys' fees and costs incurred in the removal. Dkt. 21. On January 13, 2023, the Court ordered Defendant to show cause why the case should not be remanded to state court because Defendant was a California citizen seeking to remove an action solely on the basis of diversity. Dkt. 11. The Court ordered the parties to either file a response to the order to show cause or notify the Court that the parties had stipulated to a remand to state court. *Id.* On February 1, 2023, Defendant filed a response arguing that Plaintiff waived her right to object to an improper removal because

---

[1] Plaintiff did not serve Defendant with the complaint until December 5, 2022. Dkt. 8, Ex. B.
[2] The case was transferred to the undersigned on January 13, 2023. Dkt. 10.

22cv1871-JO-MDD

1  her remand motion was untimely.  Dkt. 20.[3] According to Defendant, this waiver entitled

2  it to remain in federal court.  *Id.*

3  <div align="center">**II. CONCLUSION AND ORDER**</div>

4      For the reasons stated in the Court's remand order in *Casola v. Dexcom, Inc.*,

5  22cv1865-JO-MDD, attached hereto as Exhibit A, the Court GRANTS Plaintiff's motion

6  to remand and request for attorneys' fees [Dkt. 8] and DENIES Defendant's motion to

7  dismiss [Dkt. 6] as moot.  The Court DIRECTS Plaintiff to file, within fifteen (15) days of

8  the entry of this order, a motion for attorneys' fees containing a substantiation of fees and

9  costs incurred in the removal.  Defendant may file a response within seven (7) days of

10  Plaintiff's filing of the motion.  The Court instructs the Clerk to remand the action to San

11  Diego County Superior Court.

12

13      **IT IS SO ORDERED**.

14  Dated:  5/3/23

15

16                                   Honorable Jinsook Ohta

17                                   United States District Judge

18

19

20

21

22

23

24

25

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

28      [3] Defendant made these same arguments in its opposition to Plaintiff's motion to remand.

<div align="center">3</div>

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Casola, | Case No.: 22cv1865-JO-MDD |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES; AND DENYING DEFENDANT'S MOTION TO DISMISS** |
| Dexcom, Inc., | |
| Defendant. | |

19   On November 29, 2022, Plaintiff Lauren Casola filed a product liability action

20   against Defendant Dexcom, Inc. ("Defendant" or "Dexcom"). Defendant removed

21   Plaintiff's action to this Court on November 28, 2022, one day before the complaint was

22   actually filed in state court. On December 19, 2022, Defendant filed a motion to dismiss.

23   Dkt. 6. On December 29, 2022, Plaintiff filed a motion to remand the action to state court

24   for lack of subject matter jurisdiction and requested attorneys' fees incurred in seeking

25   remand. Dkt. 7. For the reasons stated below, the Court grants Plaintiff's motion to

26   remand, grants Plaintiff's request for attorneys' fees, and denies Defendant's motion to

27   dismiss as moot.

28

1

# I. BACKGROUND

1       Plaintiff initiated a product liability suit in state court but Defendant removed the
2   action to federal court before the action was officially filed.  On November 29, 2022,
3   Plaintiff filed her complaint in state court. Dkt. 17, Ex. A.  Although the official filing date
4   of Plaintiff's complaint was November 29, 2022, Plaintiff electronically submitted the
5   complaint to the superior court clerk for filing six days prior.  Defendant received notice
6   of this electronic submission through the filing service provider and immediately filed a
7   Notice of Removal on November 28, 2022—one day before the clerk filed Plaintiff's
8   complaint in superior court. [1] Dk. 1.  On December 19, 2022, Defendant also filed a motion
9   to dismiss Plaintiff's complaint before this Court.  Dkt. 6.
10
11      Both Plaintiff and the Court questioned the legal validity of Defendant's removal of
12  an action with only state law claims by a defendant that is a citizen of California.  On
13  December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of
14  subject matter jurisdiction on the grounds that (1) the notice of removal was defective
15  because the complaint had not even been filed at the time of removal and (2) because
16  Defendant was a California citizen, it could not remove on the grounds of diversity
17  jurisdiction.  Dkt. 7.[2]  Plaintiff also requested attorneys' fees and costs incurred in the
18  removal.  Dkt. 20 (Reply).  On January 12, 2023, the Court ordered Defendant to show
19  cause why the case should not be remanded to state court because Defendant was a
20  California citizen seeking to remove an action solely on the basis of diversity.  Dkt. 10.
21  The Court ordered the parties to either file a response to the order to show cause or notify
22  the Court that the parties had stipulated to a remand to state court.  *Id.*  On February 1,
23  2023, Defendant filed a response arguing that Plaintiff waived her right to object to an
24
25
26
27
--------
28  [1] Plaintiff did not serve Defendant with the complaint until November 30, 2022.  Dkt. 17, Ex. B.
    [2] The case was transferred to the undersigned on January 5, 2023.  Dkt. 9.

22cv1865-JO-MDD

1   improper removal because her remand motion was untimely. Dkt. 16. According to

2   Defendant, this waiver entitled it to remain in federal court. *Id.*[3]

3   <div align="center">**II. LEGAL STANDARD**</div>

4       A defendant may remove a state court action to federal court only if the federal court

5   would originally have had federal question or diversity jurisdiction over the matter. *See*

6   28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

7   Diversity jurisdiction requires complete diversity of citizenship among the parties and an

8   amount in controversy exceeding $75,000. 28 U.S.C. § 1332. In order to remove an action

9   on diversity grounds, however, defendants must meet an additional requirement: according

10   to the "forum defendant rule," a civil action may not be removed if any defendant is a

11   citizen of the state where the complaint was filed. 28 U.S.C. § 1441(b)(2). The forum

12   defendant rule thus "confines removal on the basis of diversity jurisdiction to instances

13   where no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456

14   F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393

15   F.3d 867, 870 (9th Cir. 2004). Because the principal purpose of diversity jurisdiction is to

16   "protect out-of-state defendants from possible prejudices in state court," this bar to removal

17   by local defendants reflects the reality that there is no need for such protection where the

18   defendant is a resident of the state in which the case is brought. *Lively*, 456 F.3d at 940.

19       Parties can waive the "forum defendant" limitation on removal by failing to object

20   in a timely manner. A plaintiff must file a motion to remand the action on this basis within

21   30 days of the notice of removal. *See* 28 U.S.C. § 1447(c). Otherwise, because the forum

22   defendant rule does not deprive the federal court of jurisdiction, a plaintiff can be deemed

23   to have waived its objection based on a violation of this rule. *Lively*, 456 F.3d at 942.

24       In considering a remand, the court construes any doubts against the removing party.

25   There is a "strong presumption against removal jurisdiction," which means that "the

26

27   ————————————————

28   [3] Defendant asserted these same arguments in its opposition to Plaintiff's motion to remand. Dkt. 19.

<div align="center">3</div>

1 defendant always has the burden of establishing that removal is proper, and that the court

2 resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*,

3 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotations omitted); *Luther v. Countrywide*

4 *Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are

5 strictly construed against removal."). Thus, a court must reject federal jurisdiction "if there

6 is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d

7 564, 566 (9th Cir. 1992).

8                                    **III. DISCUSSION**

9       The Court finds that this action must be remanded to state court because as a citizen

10 of California, Defendant cannot remove this action on the grounds of diversity jurisdiction.

11 At the time of removal, Defendant was a citizen of California and, therefore, a forum

12 defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal

13 place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the

14 purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every

15 State and foreign state by which it has been incorporated and of the State or foreign state

16 where it has its principal place of business…"). As a forum defendant, Defendant cannot

17 not remove this action solely on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

18      Defendant concedes its status as a forum defendant but argues that Plaintiff waived

19 her right to remand by failing to file her motion in a timely manner. Defendant argues that

20 because it filed its Notice of Removal on November 28, 2022, and Plaintiff did not move

21 to remand until December 29, 2022, she exceeded her 30-day window to challenge the

22 "forum defendant" defect. In response, Plaintiff argues that Defendant's Notice of

23 Removal was defective because Defendant filed it before Plaintiff's complaint was

24 officially filed; a defective removal notice cannot start the clock on the 30-day window for

25 a remand motion. Because resolution of this dispute hinges on this issue, the Court will

26 examine the validity of Defendant's Notice of Removal.

27      A proper removal requires a complaint to have first been filed. The removal statute

28 provides that the defendant must file a notice of removal upon receipt "of a copy of the

1   initial pleading setting forth the claim for relief upon which such action or proceeding is

2   based[.]" 28 U.S.C. § 1446(b)(1).  A complaint must be filed in court to become an initial

3   pleading; only after a complaint has been filed is there anything to be removed.  Cal. Civ.

4   Pro. Code § 350 ("An action is commenced…when the complaint is filed); *Kuxhausen v.*

5   *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) ("Had [defendant] removed

6   on the basis of a not-yet-filed complaint, which may or may not ever have materialized, 'it

7   may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for

8   filing a baseless notice of removal.'"); *Kurihara v. CH2M Hill, Inc.*, 6 F. Supp. 2d 533,

9   536 (E.D. Va. 1998) (finding removal period was not triggered where defendant received

10  copy of pleading that "bore no indication that it actually had been filed").

11      Here, Defendant filed a notice of removal seeking to remove a not-yet-filed

12  complaint.  Although Plaintiff electronically submitted her complaint a few days before,

13  the San Diego Superior Court did not file Plaintiff's complaint until November 29, 2022,

14  as evidenced by the time stamp of the Clerk of the Superior Court.  Dkt. 17, Ex. A.  At the

15  time of this filing, Plaintiff's civil action commenced, Cal. Civ. Pro. Code § 350, and her

16  filed complaint became the "initial pleading" in the lawsuit.  The removal statute requires

17  Defendant to file a notice of removal upon receipt "of a copy of the initial pleading" in a

18  case but Defendant did not do so; instead, it filed a notice of removal based on an unfiled

19  complaint— before it had an official "initial pleading" in hand.  For this reason, the Court

20  finds that Defendant's Notice of Removal was defective and therefore, its filing on

21  November 28, 2022, does not render Plaintiff's motion to remand untimely.

22      Defendant takes the position that Plaintiff's complaint was filed when it was

23  submitted to the San Diego Superior Court despite the later official filing date.  Defendant

24  argues that a complaint is filed when it is in "actual or constructive custody" of the clerk;

25  thus, the complaint was already "filed" as of the date it was electronically submitted, six

26  days before Defendant's removal of the action.  *See* Def.'s Opp'n 8 citing to *U.S. v. Dae*

27  *Rim Fishery Co., Ltd.*, 794 F.2d 1392 (9th Cir. 1986), *Loya v. Desert Sands Unified School*

28  *Dist.*, 721 F.2d 279 (9th Cir. 1983), and *Carlson v. State of California Dep't of Fish &*

1   *Game*, 68 Cal. App. 4th 1268 (1998).  The Court has reviewed the cases that Defendant

2   relies upon and finds them to be inapposite to the issue before it.  *Loya* involved a court

3   clerk who refused to file a complaint because it was typed on the wrong size paper in

4   violation of a local rule.  *Loya*, 721 F.2d at 280.  By the time plaintiff refiled the complaint,

5   the statute of limitations had expired.  *Id.*  On appeal, the Ninth Circuit held that "for

6   purposes of the statute of limitations, the district court should regard as 'filed' a complaint

7   which arrives in the custody of the clerk within the statutory period but fails to conform

8   with formal requirements in local rules." *Id.* at 281.  Similarly, both *Dae Rim Fishery* and

9   *Carlson* involved situations where a court clerk rejected complaints for technical failures

10  causing the plaintiffs to miss their statute of limitations window.  *Dae Rim Fishery Co.*,

11  794 F.2d 1392; *Carlson*, 68 Cal. App. 4th 1268.  In both cases, the appellate courts held

12  that for purposes of the statute of limitations, filing should be deemed to have occurred on

13  the date of delivery. *Dae Rim Fishery Co.*, 794 F.2d at 1395; *Carlson*, 68 Cal. App. 4th at

14  1273.  The holdings of these cases are explicitly limited to contexts in which the expiration

15  of the statute of limitations is at stake—to prevent the manifest injustice of a clerk's refusal

16  to file a complaint depriving a plaintiff of the right to bring suit.  *See id.*  The cases do not

17  apply to the situation here involving a defendant removing a complaint that had not been

18  properly filed.

19       Accordingly, the Court finds Defendant's removal notice to be defective because it

20  was filed in advance of a filed complaint.  The Court remands this action because it was

21  filed by a forum defendant and Plaintiff did not waive this defect by failing to file a timely

22  motion to remand.

23                        **IV. REQUEST FOR ATTORNEYS' FEES**

24       Finding that Defendant's removal of this action was improper, the Court next

25  considers Plaintiff's request for the attorneys' fees and costs she incurred as a result of

26  Defendant's removal.  Under 28 U.S.C. § 1447(c), a court may order payment of "just costs

27  and any actual expenses, including attorney fees, incurred as a result of the removal." 28

28  U.S.C. § 1447(c).  The standard for awarding fees turns on the reasonableness of the

1  defendant's decision to remove a case. A court may exercise its sound discretion to award

2  attorneys' fees under § 1447(c) "where the removing party lacked an objectively

3  reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132,

4  141 (2005).

5       Here, the Court finds that Defendant had no reasonable grounds to remove this case.

6  It is undisputed that Dexcom is a forum defendant: the company is a citizen of California

7  and maintains its principal place of business in San Diego, California. Given that the

8  removal statute expressly provides that forum defendants may not remove their actions on

9  the basis of diversity, 28 U.S.C. § 1441(b)(2), Defendant had no objectively reasonable

10  basis to file a notice of removal. In opposing remand, Defendant acknowledges the forum

11  defendant rule but argues only that Plaintiff waived the defect with her untimely remand

12  motion. Removing a case in violation of the requirements and hoping that Plaintiff waives

13  the procedural defect is far from having a reasonable basis for the removal in the first

14  instance. *See, e.g.*, *Everest Systems Co. v. Platinum Roofing, Inc.*, 2019 WL 3387951, at

15  *2 (N.D. Cal. July 26, 2019) (granting fees where forum defendant removed action in hopes

16  that plaintiff would waive its right to remand). The Court finds that fees and costs are

17  appropriate because Defendant lacked a reasonable basis to remove this action.[4]

18  ### V. CONCLUSION

19       For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand

20  and request for attorneys' fees [Dkt. 8] and DENIES Defendant's motion to dismiss [Dkt.

21  6] as moot. The Court DIRECTS Plaintiff to file, within fifteen (15) days of the entry of

22  this order, a motion for attorneys' fees containing a substantiation of fees and costs incurred

23  in the removal. Defendant may file a response within seven (7) days of Plaintiff's filing of

24

25

26

27  [4] While not a part of the above reasonableness analysis, the Court also questions the good faith of Dexcom

28  and its counsel, a large and reputable law firm, in pursuing a groundless removal in violation of well-established principles.

7

1   the motion.  The Court instructs the Clerk to remand the action to San Diego County

2   Superior Court.

3       **IT IS SO ORDERED**.

4   Dated: March 31, 2023

5

6                           Honorable Jinsook Ohta

7                           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   Bottiglier,                            Case No.: 22cv1869-JO-MDD

12                      Plaintiff,

13   v.                             **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; GRANTING PLAINTIFF'S**

14   Dexcom, Inc.,                   **REQUEST FOR ATTORNEYS'**

15                    Defendant.    **FEES; AND DENYING**

16                                 **DEFENDANT'S MOTION TO DISMISS**

17
18

19       On November 29, 2022, Plaintiff Brenda Bottiglier filed a product liability action

20 against Defendant Dexcom, Inc. ("Defendant" or "Dexcom") in state court. Defendant

21 removed Plaintiff's action to this Court on November 28, 2022, one day before the

22 complaint was actually filed in state court. On December 19, 2022, Defendant filed a

23 motion to dismiss. Dkt. 6. On December 29, 2022, Plaintiff filed a motion to remand the

24 action to state court for lack of subject matter jurisdiction and requested attorneys' fees

25 incurred in seeking remand. Dkt. 7. For the reasons stated below, the Court grants

26 Plaintiff's motion to remand, grants Plaintiff's request for attorneys' fees, and denies

27 Defendant's motion to dismiss as moot.

28

1        **I. BACKGROUND**

2        Plaintiff initiated a product liability suit in state court but Defendant removed the

3    action to federal court before the action was officially filed.  On November 29, 2022,

4    Plaintiff filed her complaint in state court. Dkt. 7, Ex. 1.  Although the official filing date

5    of Plaintiff's complaint was November 29, 2022, Plaintiff electronically submitted the

6    complaint to the superior court clerk for filing six days prior.  Defendant received notice

7    of this electronic submission through the filing service provider and immediately filed a

8    Notice of Removal on November 28, 2022—one day before the clerk filed Plaintiff's

9    complaint in superior court. [1] Dk. 1. On December 19, 2022, Defendant also filed a motion

10   to dismiss Plaintiff's complaint before this Court.  Dkt. 6.

11       Both Plaintiff and the Court questioned the legal validity of Defendant's removal of

12   an action with only state law claims by a Defendant that is a citizen of California.  On

13   December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of

14   subject matter jurisdiction on the grounds that (1) the notice of removal was defective

15   because the complaint had not even been filed at the time of removal and (2) because

16   Defendant was a California citizen, it could not remove on the grounds of diversity

17   jurisdiction.  Dkt. 7.[2]  Plaintiff also requested attorneys' fees and costs incurred in the

18   removal. Dkt. 21.  On January 12, 2023, the Court ordered Defendant to show cause why

19   the case should not be remanded to state court because Defendant was a California citizen

20   seeking to remove an action solely on the basis of diversity.  Dkt. 11.  The Court ordered

21   the parties to either file a response to the order to show cause or notify the Court that the

22   parties had stipulated to a remand to state court.  *Id.*  On February 1, 2023, Defendant filed

23   a response arguing that Plaintiff waived her right to object to an improper removal because

24

25

26

27

28       [1] Plaintiff did not serve Defendant with the complaint until December 2, 2022.  Dkt. 7, Ex. 2.
         [2] The case was transferred to the undersigned on January 10, 2023.  Dkt. 10.

1  her remand motion was untimely. Dkt. 20.[3] According to Defendant, this waiver entitled

2  it to remain in federal court. *Id.*

3  **II. CONCLUSION AND ORDER**

4  For the reasons stated in the Court's remand order in *Casola v. Dexcom, Inc.*,

5  22cv1865-JO-MDD, attached hereto as Exhibit A, the Court GRANTS Plaintiff's motion

6  to remand and request for attorneys' fees [Dkt. 7] and DENIES Defendant's motion to

7  dismiss [Dkt. 6] as moot. The Court DIRECTS Plaintiff to file, within fifteen (15) days of

8  the entry of this order, a motion for attorneys' fees containing a substantiation of fees and

9  costs incurred in the removal. Defendant may file a response within seven (7) days of

10 Plaintiff's filing of the motion. The Court instructs the Clerk to remand the action to San

11 Diego County Superior Court.

12

13   **IT IS SO ORDERED**.

14 Dated: ___4/11/23___

15

16                                    Honorable Jinsook Ohta
                                      United States District Judge
17

18

19

20

21

22

23

24

25

26

27 _____

28 [3] Defendant also filed this response as its opposition to Plaintiff's motion to remand.

3

# EXHIBIT A

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                      SOUTHERN DISTRICT OF CALIFORNIA
10
11   | Casola,                          | Case No.: 22cv1865-JO-MDD
12   |                        Plaintiff, |
13   | v.                               | **ORDER GRANTING PLAINTIFF'S**
     |                                  | **MOTION TO REMAND;**
14   | Dexcom, Inc.,                    | **GRANTING PLAINTIFF'S**
                                        | **REQUEST FOR ATTORNEYS'**
15   |                        Defendant. | **FEES; AND DENYING**
                                        | **DEFENDANT'S MOTION TO**
16                                      | **DISMISS**
17
18
19          On November 29, 2022, Plaintiff Lauren Casola filed a product liability action
20   against Defendant Dexcom, Inc. ("Defendant" or "Dexcom").   Defendant removed
21   Plaintiff's action to this Court on November 28, 2022, one day before the complaint was
22   actually filed in state court.  On December 19, 2022, Defendant filed a motion to dismiss.
23   Dkt. 6.  On December 29, 2022, Plaintiff filed a motion to remand the action to state court
24   for lack of subject matter jurisdiction and requested attorneys' fees incurred in seeking
25   remand.  Dkt. 7.  For the reasons stated below, the Court grants Plaintiff's motion to
26   remand, grants Plaintiff's request for attorneys' fees, and denies Defendant's motion to
27   dismiss as moot.
28

                                        1

## I. BACKGROUND

Plaintiff initiated a product liability suit in state court but Defendant removed the action to federal court before the action was officially filed. On November 29, 2022, Plaintiff filed her complaint in state court. Dkt. 17, Ex. A. Although the official filing date of Plaintiff's complaint was November 29, 2022, Plaintiff electronically submitted the complaint to the superior court clerk for filing six days prior. Defendant received notice of this electronic submission through the filing service provider and immediately filed a Notice of Removal on November 28, 2022—one day before the clerk filed Plaintiff's complaint in superior court.[1] Dk. 1. On December 19, 2022, Defendant also filed a motion to dismiss Plaintiff's complaint before this Court. Dkt. 6.

Both Plaintiff and the Court questioned the legal validity of Defendant's removal of an action with only state law claims by a defendant that is a citizen of California. On December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction on the grounds that (1) the notice of removal was defective because the complaint had not even been filed at the time of removal and (2) because Defendant was a California citizen, it could not remove on the grounds of diversity jurisdiction. Dkt. 7.[2] Plaintiff also requested attorneys' fees and costs incurred in the removal. Dkt. 20 (Reply). On January 12, 2023, the Court ordered Defendant to show cause why the case should not be remanded to state court because Defendant was a California citizen seeking to remove an action solely on the basis of diversity. Dkt. 10. The Court ordered the parties to either file a response to the order to show cause or notify the Court that the parties had stipulated to a remand to state court. *Id.* On February 1, 2023, Defendant filed a response arguing that Plaintiff waived her right to object to an

---

[1] Plaintiff did not serve Defendant with the complaint until November 30, 2022. Dkt. 17, Ex. B.
[2] The case was transferred to the undersigned on January 5, 2023. Dkt. 9.

1   improper removal because her remand motion was untimely.  Dkt. 16.  According to

2   Defendant, this waiver entitled it to remain in federal court.  *Id.*[3]

3                                    **II. LEGAL STANDARD**

4           A defendant may remove a state court action to federal court only if the federal court

5   would originally have had federal question or diversity jurisdiction over the matter.  *See*

6   28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

7   Diversity jurisdiction requires complete diversity of citizenship among the parties and an

8   amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  In order to remove an action

9   on diversity grounds, however, defendants must meet an additional requirement:  according

10  to the "forum defendant rule," a civil action may not be removed if any defendant is a

11  citizen of the state where the complaint was filed.  28 U.S.C. § 1441(b)(2).  The forum

12  defendant rule thus "confines removal on the basis of diversity jurisdiction to instances

13  where no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456

14  F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393

15  F.3d 867, 870 (9th Cir. 2004).  Because the principal purpose of diversity jurisdiction is to

16  "protect out-of-state defendants from possible prejudices in state court," this bar to removal

17  by local defendants reflects the reality that there is no need for such protection where the

18  defendant is a resident of the state in which the case is brought.  *Lively*, 456 F.3d at 940.

19          Parties can waive the "forum defendant" limitation on removal by failing to object

20  in a timely manner.  A plaintiff must file a motion to remand the action on this basis within

21  30 days of the notice of removal.  *See* 28 U.S.C. § 1447(c).  Otherwise, because the forum

22  defendant rule does not deprive the federal court of jurisdiction, a plaintiff can be deemed

23  to have waived its objection based on a violation of this rule.  *Lively*, 456 F.3d at 942.

24          In considering a remand, the court construes any doubts against the removing party.

25  There is a "strong presumption against removal jurisdiction," which means that "the

26

27  _____

28  [3] Defendant asserted these same arguments in its opposition to Plaintiff's motion to remand.  Dkt. 19.

                                                   3

1   defendant always has the burden of establishing that removal is proper, and that the court
2   resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*,
3   582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotations omitted); *Luther v. Countrywide*
4   *Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are
5   strictly construed against removal."). Thus, a court must reject federal jurisdiction "if there
6   is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d
7   564, 566 (9th Cir. 1992).

8                                    **III. DISCUSSION**

9           The Court finds that this action must be remanded to state court because as a citizen
10  of California, Defendant cannot remove this action on the grounds of diversity jurisdiction.
11  At the time of removal, Defendant was a citizen of California and, therefore, a forum
12  defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal
13  place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the
14  purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every
15  State and foreign state by which it has been incorporated and of the State or foreign state
16  where it has its principal place of business..."). As a forum defendant, Defendant cannot
17  not remove this action solely on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

18          Defendant concedes its status as a forum defendant but argues that Plaintiff waived
19  her right to remand by failing to file her motion in a timely manner. Defendant argues that
20  because it filed its Notice of Removal on November 28, 2022, and Plaintiff did not move
21  to remand until December 29, 2022, she exceeded her 30-day window to challenge the
22  "forum defendant" defect. In response, Plaintiff argues that Defendant's Notice of
23  Removal was defective because Defendant filed it before Plaintiff's complaint was
24  officially filed; a defective removal notice cannot start the clock on the 30-day window for
25  a remand motion. Because resolution of this dispute hinges on this issue, the Court will
26  examine the validity of Defendant's Notice of Removal.

27          A proper removal requires a complaint to have first been filed. The removal statute
28  provides that the defendant must file a notice of removal upon receipt "of a copy of the

                                          4

1    initial pleading setting forth the claim for relief upon which such action or proceeding is
2    based[.]" 28 U.S.C. § 1446(b)(1). A complaint must be filed in court to become an initial
3    pleading; only after a complaint has been filed is there anything to be removed. Cal. Civ.
4    Pro. Code § 350 ("An action is commenced…when the complaint is filed); *Kuxhausen v.*
5    *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) ("Had [defendant] removed
6    on the basis of a not-yet-filed complaint, which may or may not ever have materialized, 'it
7    may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for
8    filing a baseless notice of removal.'"); *Kurihara v. CH2M Hill, Inc.*, 6 F. Supp. 2d 533,
9    536 (E.D. Va. 1998) (finding removal period was not triggered where defendant received
10   copy of pleading that "bore no indication that it actually had been filed").

11          Here, Defendant filed a notice of removal seeking to remove a not-yet-filed
12   complaint. Although Plaintiff electronically submitted her complaint a few days before,
13   the San Diego Superior Court did not file Plaintiff's complaint until November 29, 2022,
14   as evidenced by the time stamp of the Clerk of the Superior Court. Dkt. 17, Ex. A. At the
15   time of this filing, Plaintiff's civil action commenced, Cal. Civ. Pro. Code § 350, and her
16   filed complaint became the "initial pleading" in the lawsuit. The removal statute requires
17   Defendant to file a notice of removal upon receipt "of a copy of the initial pleading" in a
18   case but Defendant did not do so; instead, it filed a notice of removal based on an unfiled
19   complaint— before it had an official "initial pleading" in hand. For this reason, the Court
20   finds that Defendant's Notice of Removal was defective and therefore, its filing on
21   November 28, 2022, does not render Plaintiff's motion to remand untimely.

22          Defendant takes the position that Plaintiff's complaint was filed when it was
23   submitted to the San Diego Superior Court despite the later official filing date. Defendant
24   argues that a complaint is filed when it is in "actual or constructive custody" of the clerk;
25   thus, the complaint was already "filed" as of the date it was electronically submitted, six
26   days before Defendant's removal of the action. *See* Def.'s Opp'n 8 citing to *U.S. v. Dae*
27   *Rim Fishery Co., Ltd.*, 794 F.2d 1392 (9th Cir. 1986), *Loya v. Desert Sands Unified School*
28   *Dist.*, 721 F.2d 279 (9th Cir. 1983), and *Carlson v. State of California Dep't of Fish &*

1    *Game*, 68 Cal. App. 4th 1268 (1998). The Court has reviewed the cases that Defendant
2    relies upon and finds them to be inapposite to the issue before it. *Loya* involved a court
3    clerk who refused to file a complaint because it was typed on the wrong size paper in
4    violation of a local rule. *Loya*, 721 F.2d at 280. By the time plaintiff refiled the complaint,
5    the statute of limitations had expired. *Id.* On appeal, the Ninth Circuit held that "for
6    purposes of the statute of limitations, the district court should regard as 'filed' a complaint
7    which arrives in the custody of the clerk within the statutory period but fails to conform
8    with formal requirements in local rules." *Id.* at 281. Similarly, both *Dae Rim Fishery* and
9    *Carlson* involved situations where a court clerk rejected complaints for technical failures
10    causing the plaintiffs to miss their statute of limitations window. *Dae Rim Fishery Co.*,
11    794 F.2d 1392; *Carlson*, 68 Cal. App. 4th 1268. In both cases, the appellate courts held
12    that for purposes of the statute of limitations, filing should be deemed to have occurred on
13    the date of delivery. *Dae Rim Fishery Co.*, 794 F.2d at 1395; *Carlson*, 68 Cal. App. 4th at
14    1273. The holdings of these cases are explicitly limited to contexts in which the expiration
15    of the statute of limitations is at stake—to prevent the manifest injustice of a clerk's refusal
16    to file a complaint depriving a plaintiff of the right to bring suit. *See id.* The cases do not
17    apply to the situation here involving a defendant removing a complaint that had not been
18    properly filed.

19       Accordingly, the Court finds Defendant's removal notice to be defective because it
20    was filed in advance of a filed complaint. The Court remands this action because it was
21    filed by a forum defendant and Plaintiff did not waive this defect by failing to file a timely
22    motion to remand.

23                      **IV. REQUEST FOR ATTORNEYS' FEES**

24       Finding that Defendant's removal of this action was improper, the Court next
25    considers Plaintiff's request for the attorneys' fees and costs she incurred as a result of
26    Defendant's removal. Under 28 U.S.C. § 1447(c), a court may order payment of "just costs
27    and any actual expenses, including attorney fees, incurred as a result of the removal." 28
28    U.S.C. § 1447(c). The standard for awarding fees turns on the reasonableness of the

1   defendant's decision to remove a case. A court may exercise its sound discretion to award
2   attorneys' fees under § 1447(c) "where the removing party lacked an objectively
3   reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132,
4   141 (2005).

5       Here, the Court finds that Defendant had no reasonable grounds to remove this case.
6   It is undisputed that Dexcom is a forum defendant: the company is a citizen of California
7   and maintains its principal place of business in San Diego, California. Given that the
8   removal statute expressly provides that forum defendants may not remove their actions on
9   the basis of diversity, 28 U.S.C. § 1441(b)(2), Defendant had no objectively reasonable
10  basis to file a notice of removal. In opposing remand, Defendant acknowledges the forum
11  defendant rule but argues only that Plaintiff waived the defect with her untimely remand
12  motion. Removing a case in violation of the requirements and hoping that Plaintiff waives
13  the procedural defect is far from having a reasonable basis for the removal in the first
14  instance. *See, e.g.*, *Everest Systems Co. v. Platinum Roofing, Inc.*, 2019 WL 3387951, at
15  *2 (N.D. Cal. July 26, 2019) (granting fees where forum defendant removed action in hopes
16  that plaintiff would waive its right to remand). The Court finds that fees and costs are
17  appropriate because Defendant lacked a reasonable basis to remove this action.[4]

18                          **V. CONCLUSION**

19      For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand
20  and request for attorneys' fees [Dkt. 7] and DENIES Defendant's motion to dismiss [Dkt.
21  6] as moot. The Court DIRECTS Plaintiff to file, within fifteen (15) days of the entry of
22  this order, a motion for attorneys' fees containing a substantiation of fees and costs incurred
23  in the removal. Defendant may file a response within seven (7) days of Plaintiff's filing of

24
25
26  _____

27  [4] While not a part of the above reasonableness analysis, the Court also questions the good faith of Dexcom
28  and its counsel, a large and reputable law firm, in pursuing a groundless removal in violation of well-
    established principles.

                                    7

1   the motion. The Court instructs the Clerk to remand the action to San Diego County

2   Superior Court.

3      **IT IS SO ORDERED**.

4   Dated: March 31, 2023

5

6                 Honorable Jinsook Ohta

7                 United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22cv1865-JO-MDD

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Pfeifer, | | Case No.: 22cv1878-JO-MDD |
| | Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES; AND DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | | |
| Dexcom, Inc., | | |
| | Defendant. | |

On December 7, 2022, Plaintiff Helena Pfeifer filed a product liability action against Defendant Dexcom, Inc. ("Defendant" or "Dexcom") in state court. Defendant removed Plaintiff's action to this Court on November 28, 2022, nine days before the complaint was actually filed in state court. On December 19, 2022, Defendant filed a motion to dismiss. Dkt. 6. On December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction and requested attorneys' fees incurred in seeking remand. Dkt. 7. For the reasons stated below, the Court grants Plaintiff's motion to remand, grants Plaintiff's request for attorneys' fees, and denies Defendant's motion to dismiss as moot.

1
                                   **I. BACKGROUND**

2
       Plaintiff initiated a product liability suit in state court but Defendant removed the

3
action to federal court before the action was officially filed. On December 7, 2022, Plaintiff

4
filed her complaint in state court. Dkt. 7, Ex. A. Although the official filing date of

5
Plaintiff's complaint was December 7, 2022, Plaintiff electronically submitted the

6
complaint to the superior court clerk for filing a few days prior. Defendant received notice

7
of this electronic submission through the filing service provider and immediately filed a

8
Notice of Removal on November 28, 2022—nine days before the clerk filed Plaintiff's

9
complaint in superior court. [1] Dkt. 1. On December 19, 2022, Defendant also filed a

10
motion to dismiss Plaintiff's complaint before this Court. Dkt. 6.

11
       Both Plaintiff and the Court questioned the legal validity of Defendant's removal of

12
an action with only state law claims by a Defendant that is a citizen of California. On

13
December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of

14
subject matter jurisdiction on the grounds that (1) the notice of removal was defective

15
because the complaint had not even been filed at the time of removal and (2) because

16
Defendant was a California citizen, it could not remove on the grounds of diversity

17
jurisdiction. Dkt. 7.[2] Plaintiff also requested attorneys' fees and costs incurred in the

18
removal. Dkt. 20. On January 12, 2023, the Court ordered Defendant to show cause why

19
the case should not be remanded to state court because Defendant was a California citizen

20
seeking to remove an action solely on the basis of diversity. Dkt. 10. The Court ordered

21
the parties to either file a response to the order to show cause or notify the Court that the

22
parties had stipulated to a remand to state court. *Id.* On February 1, 2023, Defendant filed

23
a response arguing that Plaintiff waived her right to object to an improper removal because

24

25

26

27

28
    [1] Plaintiff did not serve Defendant with the complaint until December 8, 2022. Dkt. 7, Ex. B.
    [2] The case was transferred to the undersigned on January 13, 2023. Dkt. 9.

her remand motion was untimely. Dkt. 19.[3] According to Defendant, this waiver entitled it to remain in federal court. *Id.*

## II. CONCLUSION AND ORDER

For the reasons stated in the Court's remand order in *Casola v. Dexcom, Inc.*, 22cv1865-JO-MDD, attached hereto as Exhibit A, the Court GRANTS Plaintiff's motion to remand and request for attorneys' fees [Dkt. 7] and DENIES Defendant's motion to dismiss [Dkt. 6] as moot. The Court DIRECTS Plaintiff to file, within fifteen (15) days of the entry of this order, a motion for attorneys' fees containing a substantiation of fees and costs incurred in the removal. Defendant may file a response within seven (7) days of Plaintiff's filing of the motion. The Court instructs the Clerk to remand the action to San Diego County Superior Court.

**IT IS SO ORDERED**.

Dated: May 3, 2023

Honorable Jinsook Ohta
United States District Judge

---

[3] Defendant made these same arguments in its opposition to Plaintiff's motion to remand.

# EXHIBIT A

1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   Casola,                              Case No.: 22cv1865-JO-MDD

12                          Plaintiff,
                                          **ORDER GRANTING PLAINTIFF'S**
13   v.                                   **MOTION TO REMAND;**
                                          **GRANTING PLAINTIFF'S**
14   Dexcom, Inc.,                        **REQUEST FOR ATTORNEYS'**
                                          **FEES; AND DENYING**
15                          Defendant.    **DEFENDANT'S MOTION TO**
                                          **DISMISS**
16

17

18

19          On November 29, 2022, Plaintiff Lauren Casola filed a product liability action

20   against Defendant Dexcom, Inc. ("Defendant" or "Dexcom").    Defendant removed

21   Plaintiff's action to this Court on November 28, 2022, one day before the complaint was

22   actually filed in state court.  On December 19, 2022, Defendant filed a motion to dismiss.

23   Dkt. 6.  On December 29, 2022, Plaintiff filed a motion to remand the action to state court

24   for lack of subject matter jurisdiction and requested attorneys' fees incurred in seeking

25   remand.  Dkt. 7.  For the reasons stated below, the Court grants Plaintiff's motion to

26   remand, grants Plaintiff's request for attorneys' fees, and denies Defendant's motion to

27   dismiss as moot.

28

1

# I. BACKGROUND

1

2        Plaintiff initiated a product liability suit in state court but Defendant removed the

3   action to federal court before the action was officially filed.  On November 29, 2022,

4   Plaintiff filed her complaint in state court. Dkt. 17, Ex. A.  Although the official filing date

5   of Plaintiff's complaint was November 29, 2022, Plaintiff electronically submitted the

6   complaint to the superior court clerk for filing six days prior.  Defendant received notice

7   of this electronic submission through the filing service provider and immediately filed a

8   Notice of Removal on November 28, 2022—one day before the clerk filed Plaintiff's

9   complaint in superior court.[1]  Dk. 1.  On December 19, 2022, Defendant also filed a motion

10  to dismiss Plaintiff's complaint before this Court.  Dkt. 6.

11       Both Plaintiff and the Court questioned the legal validity of Defendant's removal of

12  an action with only state law claims by a defendant that is a citizen of California.  On

13  December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of

14  subject matter jurisdiction on the grounds that (1) the notice of removal was defective

15  because the complaint had not even been filed at the time of removal and (2) because

16  Defendant was a California citizen, it could not remove on the grounds of diversity

17  jurisdiction.  Dkt. 7.[2]  Plaintiff also requested attorneys' fees and costs incurred in the

18  removal.  Dkt. 20 (Reply).  On January 12, 2023, the Court ordered Defendant to show

19  cause why the case should not be remanded to state court because Defendant was a

20  California citizen seeking to remove an action solely on the basis of diversity.  Dkt. 10.

21  The Court ordered the parties to either file a response to the order to show cause or notify

22  the Court that the parties had stipulated to a remand to state court.  *Id.*  On February 1,

23  2023, Defendant filed a response arguing that Plaintiff waived her right to object to an

24

25

26

27

28  [1] Plaintiff did not serve Defendant with the complaint until November 30, 2022.  Dkt. 17, Ex. B.
    [2] The case was transferred to the undersigned on January 5, 2023.  Dkt. 9.

1  improper removal because her remand motion was untimely.  Dkt. 16.  According to

2  Defendant, this waiver entitled it to remain in federal court.  *Id.*[3]

3  **II. LEGAL STANDARD**

4      A defendant may remove a state court action to federal court only if the federal court

5  would originally have had federal question or diversity jurisdiction over the matter.  *See*

6  28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

7  Diversity jurisdiction requires complete diversity of citizenship among the parties and an

8  amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  In order to remove an action

9  on diversity grounds, however, defendants must meet an additional requirement: according

10  to the "forum defendant rule," a civil action may not be removed if any defendant is a

11  citizen of the state where the complaint was filed.  28 U.S.C. § 1441(b)(2).  The forum

12  defendant rule thus "confines removal on the basis of diversity jurisdiction to instances

13  where no defendant is a citizen of the forum state."  *Lively v. Wild Oats Mkts., Inc.*, 456

14  F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393

15  F.3d 867, 870 (9th Cir. 2004).  Because the principal purpose of diversity jurisdiction is to

16  "protect out-of-state defendants from possible prejudices in state court," this bar to removal

17  by local defendants reflects the reality that there is no need for such protection where the

18  defendant is a resident of the state in which the case is brought.  *Lively*, 456 F.3d at 940.

19      Parties can waive the "forum defendant" limitation on removal by failing to object

20  in a timely manner.  A plaintiff must file a motion to remand the action on this basis within

21  30 days of the notice of removal.  *See* 28 U.S.C. § 1447(c).  Otherwise, because the forum

22  defendant rule does not deprive the federal court of jurisdiction, a plaintiff can be deemed

23  to have waived its objection based on a violation of this rule.  *Lively*, 456 F.3d at 942.

24      In considering a remand, the court construes any doubts against the removing party.

25  There is a "strong presumption against removal jurisdiction," which means that "the

26

27  ――――――――――――

28  [3] Defendant asserted these same arguments in its opposition to Plaintiff's motion to remand.  Dkt. 19.

3

1  defendant always has the burden of establishing that removal is proper, and that the court

2  resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*,

3  582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotations omitted); *Luther v. Countrywide*

4  *Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are

5  strictly construed against removal."). Thus, a court must reject federal jurisdiction "if there

6  is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d

7  564, 566 (9th Cir. 1992).

8  ### III. DISCUSSION

9  The Court finds that this action must be remanded to state court because as a citizen

10  of California, Defendant cannot remove this action on the grounds of diversity jurisdiction.

11  At the time of removal, Defendant was a citizen of California and, therefore, a forum

12  defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal

13  place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the

14  purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every

15  State and foreign state by which it has been incorporated and of the State or foreign state

16  where it has its principal place of business..."). As a forum defendant, Defendant cannot

17  not remove this action solely on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

18  Defendant concedes its status as a forum defendant but argues that Plaintiff waived

19  her right to remand by failing to file her motion in a timely manner. Defendant argues that

20  because it filed its Notice of Removal on November 28, 2022, and Plaintiff did not move

21  to remand until December 29, 2022, she exceeded her 30-day window to challenge the

22  "forum defendant" defect. In response, Plaintiff argues that Defendant's Notice of

23  Removal was defective because Defendant filed it before Plaintiff's complaint was

24  officially filed; a defective removal notice cannot start the clock on the 30-day window for

25  a remand motion. Because resolution of this dispute hinges on this issue, the Court will

26  examine the validity of Defendant's Notice of Removal.

27  A proper removal requires a complaint to have first been filed. The removal statute

28  provides that the defendant must file a notice of removal upon receipt "of a copy of the

4

1    initial pleading setting forth the claim for relief upon which such action or proceeding is

2    based[.]" 28 U.S.C. § 1446(b)(1). A complaint must be filed in court to become an initial

3    pleading; only after a complaint has been filed is there anything to be removed. Cal. Civ.

4    Pro. Code § 350 ("An action is commenced…when the complaint is filed); *Kuxhausen v.*

5    *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) ("Had [defendant] removed

6    on the basis of a not-yet-filed complaint, which may or may not ever have materialized, 'it

7    may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for

8    filing a baseless notice of removal.'"); *Kurihara v. CH2M Hill, Inc.*, 6 F. Supp. 2d 533,

9    536 (E.D. Va. 1998) (finding removal period was not triggered where defendant received

10    copy of pleading that "bore no indication that it actually had been filed").

11       Here, Defendant filed a notice of removal seeking to remove a not-yet-filed

12    complaint. Although Plaintiff electronically submitted her complaint a few days before,

13    the San Diego Superior Court did not file Plaintiff's complaint until November 29, 2022,

14    as evidenced by the time stamp of the Clerk of the Superior Court. Dkt. 17, Ex. A. At the

15    time of this filing, Plaintiff's civil action commenced, Cal. Civ. Pro. Code § 350, and her

16    filed complaint became the "initial pleading" in the lawsuit. The removal statute requires

17    Defendant to file a notice of removal upon receipt "of a copy of the initial pleading" in a

18    case but Defendant did not do so; instead, it filed a notice of removal based on an unfiled

19    complaint— before it had an official "initial pleading" in hand. For this reason, the Court

20    finds that Defendant's Notice of Removal was defective and therefore, its filing on

21    November 28, 2022, does not render Plaintiff's motion to remand untimely.

22       Defendant takes the position that Plaintiff's complaint was filed when it was

23    submitted to the San Diego Superior Court despite the later official filing date. Defendant

24    argues that a complaint is filed when it is in "actual or constructive custody" of the clerk;

25    thus, the complaint was already "filed" as of the date it was electronically submitted, six

26    days before Defendant's removal of the action. *See* Def.'s Opp'n 8 citing to *U.S. v. Dae*

27    *Rim Fishery Co., Ltd.*, 794 F.2d 1392 (9th Cir. 1986), *Loya v. Desert Sands Unified School*

28    *Dist.*, 721 F.2d 279 (9th Cir. 1983), and *Carlson v. State of California Dep't of Fish &*

*Game*, 68 Cal. App. 4th 1268 (1998). The Court has reviewed the cases that Defendant relies upon and finds them to be inapposite to the issue before it. *Loya* involved a court clerk who refused to file a complaint because it was typed on the wrong size paper in violation of a local rule. *Loya*, 721 F.2d at 280. By the time plaintiff refiled the complaint, the statute of limitations had expired. *Id.* On appeal, the Ninth Circuit held that "for purposes of the statute of limitations, the district court should regard as 'filed' a complaint which arrives in the custody of the clerk within the statutory period but fails to conform with formal requirements in local rules." *Id.* at 281. Similarly, both *Dae Rim Fishery* and *Carlson* involved situations where a court clerk rejected complaints for technical failures causing the plaintiffs to miss their statute of limitations window. *Dae Rim Fishery Co.*, 794 F.2d 1392; *Carlson*, 68 Cal. App. 4th 1268. In both cases, the appellate courts held that for purposes of the statute of limitations, filing should be deemed to have occurred on the date of delivery. *Dae Rim Fishery Co.*, 794 F.2d at 1395; *Carlson*, 68 Cal. App. 4th at 1273. The holdings of these cases are explicitly limited to contexts in which the expiration of the statute of limitations is at stake—to prevent the manifest injustice of a clerk's refusal to file a complaint depriving a plaintiff of the right to bring suit. *See id.* The cases do not apply to the situation here involving a defendant removing a complaint that had not been properly filed.

Accordingly, the Court finds Defendant's removal notice to be defective because it was filed in advance of a filed complaint. The Court remands this action because it was filed by a forum defendant and Plaintiff did not waive this defect by failing to file a timely motion to remand.

## IV. REQUEST FOR ATTORNEYS' FEES

Finding that Defendant's removal of this action was improper, the Court next considers Plaintiff's request for the attorneys' fees and costs she incurred as a result of Defendant's removal. Under 28 U.S.C. § 1447(c), a court may order payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for awarding fees turns on the reasonableness of the

1    defendant's decision to remove a case. A court may exercise its sound discretion to award

2    attorneys' fees under § 1447(c) "where the removing party lacked an objectively

3    reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132,

4    141 (2005).

5    Here, the Court finds that Defendant had no reasonable grounds to remove this case.

6    It is undisputed that Dexcom is a forum defendant: the company is a citizen of California

7    and maintains its principal place of business in San Diego, California. Given that the

8    removal statute expressly provides that forum defendants may not remove their actions on

9    the basis of diversity, 28 U.S.C. § 1441(b)(2), Defendant had no objectively reasonable

10   basis to file a notice of removal. In opposing remand, Defendant acknowledges the forum

11   defendant rule but argues only that Plaintiff waived the defect with her untimely remand

12   motion. Removing a case in violation of the requirements and hoping that Plaintiff waives

13   the procedural defect is far from having a reasonable basis for the removal in the first

14   instance. *See, e.g.*, *Everest Systems Co. v. Platinum Roofing, Inc.*, 2019 WL 3387951, at

15   *2 (N.D. Cal. July 26, 2019) (granting fees where forum defendant removed action in hopes

16   that plaintiff would waive its right to remand). The Court finds that fees and costs are

17   appropriate because Defendant lacked a reasonable basis to remove this action.[4]

18                                    **V. CONCLUSION**

19   For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand

20   and request for attorneys' fees [Dkt. 7] and DENIES Defendant's motion to dismiss [Dkt.

21   6] as moot. The Court DIRECTS Plaintiff to file, within fifteen (15) days of the entry of

22   this order, a motion for attorneys' fees containing a substantiation of fees and costs incurred

23   in the removal. Defendant may file a response within seven (7) days of Plaintiff's filing of

24

25

26

27   [4] While not a part of the above reasonableness analysis, the Court also questions the good faith of Dexcom
28   and its counsel, a large and reputable law firm, in pursuing a groundless removal in violation of well-
     established principles.

                                              7

1 │ the motion.   The Court instructs the Clerk to remand the action to San Diego County
2 │ Superior Court.

3 │ **IT IS SO ORDERED**.

4 │ Dated:  March 31, 2023

6 │ Honorable Jinsook Ohta
7 │ United States District Judge

8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Mund,

Plaintiff,

v.

Dexcom, Inc.,

Defendant.

Case No.: 22cv01990-JO-MMP

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS**

On December 14, 2022, Plaintiff Gregory Mund filed a state law product liability action against Defendant Dexcom, Inc. in San Diego County superior court. Dkt. 7, Ex. A. On December 15, 2022, Defendant filed a Notice of Removal of the action to this Court. Dkt. 1. On January 5, 2023, Defendant filed a motion to dismiss, and on January 17, 2023, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction. Dkts. 6, 7. For the reasons stated below, the Court grants Plaintiff's motion to remand and denies Defendant's motion to dismiss as moot.

## I. BACKGROUND

Plaintiff initiated a product liability suit in state court but Defendant removed the action to federal court before Plaintiff effected service of the complaint. On December 14,

2022, Plaintiff filed a product liability complaint against Defendant, a citizen of California, in state court.  Dkt. 7, Ex. A.  On December 15, 2022, Defendant filed a Notice of Removal to this Court on the basis of diversity jurisdiction, claiming the forum defendant rule did not bar removal because Defendant had not yet been served.  Dkt. 1.  Plaintiff served Defendant with the complaint on December 16, 2022. Dkt. 7, Ex. B.  On January 17, 2023, Plaintiff filed a motion to remand the action to state court on the grounds that the removal was defective because Defendant, a forum defendant, could not remove on the basis of diversity jurisdiction.  Dkt. 7.

## II. LEGAL STANDARD

A defendant may remove an action from state court only if the federal court would originally have had federal question or diversity jurisdiction over the action and certain procedural requirements are met.  *See* 28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  In order to remove an action on diversity grounds, a defendant must meet an additional requirement: according to the "forum defendant rule," a civil action may not be removed if any defendant "properly joined and served[] is a citizen of the State" where the complaint was filed.  28 U.S.C. § 1441(b)(2).  The forum defendant rule thus "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state."  *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004).  This rule reflects the reality that the need to "protect out-of-state defendants from possible prejudices in state court" does not exist where the defendant is a resident of the state in which the case is brought.  *Lively*, 456 F.3d at 940.  A party can waive the right to remand based on the forum defendant rule by failing to object in a timely manner.  *See* 28 U.S.C. § 1447(c); *Lively*, 456 F.3d at 940.

In considering a remand, the court construes any doubts against the removing party.  There is a "strong presumption against removal jurisdiction," which means that "the

defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Luther v. Countrywide Homes Loans Servicing*, LP, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal."). Thus, a court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

### III. DISCUSSION

The Court finds that this action must be remanded to state court because as a citizen of California, Defendant cannot remove this action on grounds of diversity jurisdiction. At the time of removal, Defendant was a citizen of California and, therefore, a forum defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"). As a forum defendant, Defendant could not remove this action solely on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

Despite its admitted status as a California citizen, Defendant argues that it evaded the forum defendant rule simply by filing a Notice of Removal prior to being served.[1] Defendant points to the language of § 1441(b)(2) which prohibits the removal of a diversity action "if any of the parties in interest properly joined and served as defendants." §1441(b)(2). Because Dexcom, the only defendant in the case, had not yet been served,

---

[1] Defendant does not raise other objections to remand such as untimeliness of Plaintiff's motion. The objection of untimeliness does not go to subject matter jurisdiction and is therefore waivable. *E.g.*, *Student A., By and Through her Guardian Ad Litem, Mother of Student A. v. Metcho et al.*, 710 F. Supp. 267, 269 (N.D. Cal. 1989) (citing *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176–77 (1913)); *Hunter*, 582 F.3d at 1042 (holding defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court). The Court therefore rules on the opposition to the remand motion only on the basis of the ground asserted.

the company argued that the forum defendant rule does not apply. The Court does not credit Dexcom's interpretation of this statutory language to circumvent the forum defendant rule. The clear purpose of the forum defendant rule is to prevent "a local defendant from removing on the basis of diversity jurisdiction" and, thereby, "allow[] the plaintiff to regain some control over forum selection". *Lively*, 456 F.3d at 940; *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("[W]hen federal jurisdiction is based on diversity jurisdiction…the case may not be removed if any defendant is a Citizen of the State in which such action is brought"). Here, Dexcom is the only defendant in the case and, admittedly, a California citizen. To interpret the language of the forum defendant rule to allow Defendant to evade this limitation simply by removing the case before it is served does not serve the purpose of the removal statutes.[2]

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand [Dkt. 7] and DENIES Defendant's motion to dismiss [Dkt. 6] as moot. The Court instructs the Clerk to remand the action to San Diego County Superior Court and close the case.

**IT IS SO ORDERED**.

Dated: August 14, 2023

_____
Honorable Jinsook Ohta
United States District Judge

---

[2] In 1948, Congress added the "properly joined and served" language to the existing forum defendant rule in order to protect defendants against gamesmanship from plaintiffs who fraudulently join a defendant to improperly prevent removal. *See Deutsche Bank Nat'l Trust Co. as Tr. for Am. Home Mortgage Invest. Tr.*, 532 F. Supp. 3d 1004, 1010 (D. Nev. 2021) (examining legislative history of § 1441(b)(2)).

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
11   Peatross,                                    Case No.:  22cv01988-JO-MMP
12                              Plaintiff,
                                                  **ORDER GRANTING PLAINTIFF'S**
13   v.                                           **MOTION TO REMAND AND**
                                                  **DENYING DEFENDANT'S MOTION**
14   Dexcom, Inc.,                                **TO DISMISS**
15                              Defendant.
16
17
18

19          On December 14, 2022, Plaintiff Angela Peatross filed a state law product liability

20   action against Defendant Dexcom, Inc. in San Diego County superior court.  Dkt. 10, Ex.

21   A.  On December 15, 2022, Defendant filed a Notice of Removal of the action to this Court.

22   Dkt. 1.  On January 5, 2023, Defendant filed a motion to dismiss, and on January 17, 2023,

23   Plaintiff filed a motion to remand the action to state court for lack of subject matter

24   jurisdiction.  Dkts. 6, 10.  For the reasons stated below, the Court grants Plaintiff's motion

25   to remand and denies Defendant's motion to dismiss as moot.

26                                  **I. BACKGROUND**

27          Plaintiff initiated a product liability suit in state court but Defendant removed the

28   action to federal court before Plaintiff effected service of the complaint.  On December 14,

1

2022, Plaintiff filed a product liability complaint against Defendant, a citizen of California, in state court.  Dkt. 10, Ex. A.  On December 15, 2022, Defendant filed a Notice of Removal to this Court on the basis of diversity jurisdiction, claiming the forum defendant rule did not bar removal because Defendant had not yet been served.  Dkt. 1.  Plaintiff served Defendant with the complaint on December 16, 2022.  Dkt. 10, Ex. B.  On January 17, 2023, Plaintiff filed a motion to remand the action to state court on the grounds that the removal was defective because Defendant, a forum defendant, could not remove on the basis of diversity jurisdiction.  Dkt. 10.[1]

## II. LEGAL STANDARD

A defendant may remove an action from state court only if the federal court would originally have had federal question or diversity jurisdiction over the action and certain procedural requirements are met.  *See* 28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  In order to remove an action on diversity grounds, a defendant must meet an additional requirement: according to the "forum defendant rule," a civil action may not be removed if any defendant "properly joined and served[] is a citizen of the State" where the complaint was filed.  28 U.S.C. § 1441(b)(2).  The forum defendant rule thus "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state."  *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004).  This rule reflects the reality that the need to "protect out-of-state defendants from possible prejudices in state court" does not exist where the defendant is a resident of the state in which the case is brought.  *Lively*, 456 F.3d at 940.  A party can waive the right to remand

---

[1] The case was transferred to the undersigned on January 12, 2023.  Dkt. 7.

based on the forum defendant rule by failing to object in a timely manner.  *See* 28 U.S.C. § 1447(c); *Lively*, 456 F.3d at 940.

In considering a remand, the court construes any doubts against the removing party. There is a "strong presumption against removal jurisdiction," which means that "the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Luther v. Countrywide Homes Loans Servicing*, LP, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal.").  Thus, a court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## III. DISCUSSION

The Court finds that this action must be remanded to state court because as a citizen of California, Defendant cannot remove this action on grounds of diversity jurisdiction.  At the time of removal, Defendant was a citizen of California and, therefore, a forum defendant.  Dkt. 1 (stating Defendant is a citizen of California and maintains its principal place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…").  As a forum defendant, Defendant could not remove this action solely on the basis of diversity jurisdiction.  28 U.S.C. § 1441(b)(2).

Despite its admitted status as a California citizen, Defendant argues that it evaded the forum defendant rule simply by filing a Notice of Removal prior to being served.[2]

---

[2] Defendant does not raise other objections to remand such as untimeliness of Plaintiff's motion. The objection of untimeliness does not go to subject matter jurisdiction and is therefore waivable.  *E.g.*, *Student A., By and Through her Guardian Ad Litem, Mother of Student A. v. Metcho et al.*, 710 F. Supp. 267, 269 (N.D. Cal. 1989) (citing *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176–77 (1913)); *Hunter*, 582 F.3d at 1042 (holding defendant always has the burden of establishing that removal is proper, and that the

22cv01988-JO-MMP

Defendant points to the language of § 1441(b)(2) which prohibits the removal of a diversity action "if any of the parties in interest properly joined and served as defendants." §1441(b)(2). Because Dexcom, the only defendant in the case, had not yet been served, the company argued that the forum defendant rule does not apply. The Court does not credit Dexcom's interpretation of this statutory language to circumvent the forum defendant rule. The clear purpose of the forum defendant rule is to prevent "a local defendant from removing on the basis of diversity jurisdiction" and, thereby, "allow[] the plaintiff to regain some control over forum selection". *Lively*, 456 F.3d at 940; *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("[W]hen federal jurisdiction is based on diversity jurisdiction…the case may not be removed if any defendant is a Citizen of the State in which such action is brought"). Here, Dexcom is the only defendant in the case and, admittedly, a California citizen. To interpret the language of the forum defendant rule to allow Defendant to evade this limitation simply by removing the case before it is served does not serve the purpose of the removal statutes.[3]

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand [Dkt. 10] and DENIES Defendant's motion to dismiss [Dkt. 6] as moot. The Court instructs the Clerk to remand the action to San Diego County Superior Court and close the case.

**IT IS SO ORDERED**.

---

court resolves all ambiguity in favor of remand to state court). The Court therefore rules on the opposition to the remand motion only on the basis of the ground asserted.

[3] In 1948, Congress added the "properly joined and served" language to the existing forum defendant rule in order to protect defendants against gamesmanship from plaintiffs who fraudulently join a defendant to improperly prevent removal. *See Deutsche Bank Nat'l Trust Co. as Tr. for Am. Home Mortgage Invest. Tr.*, 532 F. Supp. 3d 1004, 1010 (D. Nev. 2021) (examining legislative history of § 1441(b)(2)).

4

Dated:  August 14, 2023

_____

Honorable Jinsook Ohta
United States District Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Reese,

                      Plaintiff,

v.

Dexcom, Inc.,

                      Defendant.

Case No.: 22cv01991-JO-MMP

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS**

On December 14, 2022, Plaintiff Felicia Reese filed a state law product liability action against Defendant Dexcom, Inc. in San Diego County superior court. Dkt. 10, Ex. A. On December 15, 2022, Defendant filed a Notice of Removal of the action to this Court. Dkt. 1. On January 5, 2023, Defendant filed a motion to dismiss, and on January 17, 2023, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction. Dkts. 7, 10. For the reasons stated below, the Court grants Plaintiff's motion to remand and denies Defendant's motion to dismiss as moot.

## I. BACKGROUND

Plaintiff initiated a product liability suit in state court but Defendant removed the action to federal court before Plaintiff effected service of the complaint. On December 14,

1

2022, Plaintiff filed a product liability complaint against Defendant, a citizen of California, in state court.  Dkt. 10, Ex. A.  On December 15, 2022, Defendant filed a Notice of Removal to this Court on the basis of diversity jurisdiction, claiming the forum defendant rule did not bar removal because Defendant had not yet been served.  Dkt. 1.  Plaintiff served Defendant with the complaint on December 16, 2022.  Dkt. 10, Ex. B.  On January 17, 2023, Plaintiff filed a motion to remand the action to state court on the grounds that the removal was defective because Defendant, a forum defendant, could not remove on the basis of diversity jurisdiction.  Dkt. 10.[1]

## II. LEGAL STANDARD

A defendant may remove an action from state court only if the federal court would originally have had federal question or diversity jurisdiction over the action and certain procedural requirements are met.  *See* 28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  In order to remove an action on diversity grounds, a defendant must meet an additional requirement: according to the "forum defendant rule," a civil action may not be removed if any defendant "properly joined and served[] is a citizen of the State" where the complaint was filed.  28 U.S.C. § 1441(b)(2).  The forum defendant rule thus "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state."  *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004).  This rule reflects the reality that the need to "protect out-of-state defendants from possible prejudices in state court" does not exist where the defendant is a resident of the state in which the case is brought.  *Lively*, 456 F.3d at 940.  A party can waive the right to remand

---

[1] The case was transferred to the undersigned on January 5, 2023.  Dkt. 6.

based on the forum defendant rule by failing to object in a timely manner.  *See* 28 U.S.C. § 1447(c); *Lively*, 456 F.3d at 940.

In considering a remand, the court construes any doubts against the removing party. There is a "strong presumption against removal jurisdiction," which means that "the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Luther v. Countrywide Homes Loans Servicing*, LP, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal.").  Thus, a court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## III. DISCUSSION

The Court finds that this action must be remanded to state court because as a citizen of California, Defendant cannot remove this action on grounds of diversity jurisdiction.  At the time of removal, Defendant was a citizen of California and, therefore, a forum defendant.  Dkt. 1 (stating Defendant is a citizen of California and maintains its principal place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…").  As a forum defendant, Defendant could not remove this action solely on the basis of diversity jurisdiction.  28 U.S.C. § 1441(b)(2).

Despite its admitted status as a California citizen, Defendant argues that it evaded the forum defendant rule simply by filing a Notice of Removal prior to being served.[2]

---

[2] Defendant does not raise other objections to remand such as untimeliness of Plaintiff's motion. The objection of untimeliness does not go to subject matter jurisdiction and is therefore waivable.  *E.g.*, *Student A., By and Through her Guardian Ad Litem, Mother of Student A. v. Metcho et al.*, 710 F. Supp. 267, 269 (N.D. Cal. 1989) (citing *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176–77 (1913)); *Hunter*, 582 F.3d at 1042 (holding defendant always has the burden of establishing that removal is proper, and that the

Defendant points to the language of § 1441(b)(2) which prohibits the removal of a diversity action "if any of the parties in interest properly joined and served as defendants." §1441(b)(2). Because Dexcom, the only defendant in the case, had not yet been served, the company argued that the forum defendant rule does not apply. The Court does not credit Dexcom's interpretation of this statutory language to circumvent the forum defendant rule. The clear purpose of the forum defendant rule is to prevent "a local defendant from removing on the basis of diversity jurisdiction" and, thereby, "allow[] the plaintiff to regain some control over forum selection". *Lively*, 456 F.3d at 940; *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("[W]hen federal jurisdiction is based on diversity jurisdiction…the case may not be removed if any defendant is a Citizen of the State in which such action is brought"). Here, Dexcom is the only defendant in the case and, admittedly, a California citizen. To interpret the language of the forum defendant rule to allow Defendant to evade this limitation simply by removing the case before it is served does not serve the purpose of the removal statutes.[3]

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand [Dkt. 10] and DENIES Defendant's motion to dismiss [Dkt. 7] as moot. The Court instructs the Clerk to remand the action to San Diego County Superior Court and close the case.

**IT IS SO ORDERED**.

---

court resolves all ambiguity in favor of remand to state court). The Court therefore rules on the opposition to the remand motion only on the basis of the ground asserted.

[3] In 1948, Congress added the "properly joined and served" language to the existing forum defendant rule in order to protect defendants against gamesmanship from plaintiffs who fraudulently join a defendant to improperly prevent removal. *See Deutsche Bank Nat'l Trust Co. as Tr. for Am. Home Mortgage Invest. Tr.*, 532 F. Supp. 3d 1004, 1010 (D. Nev. 2021) (examining legislative history of § 1441(b)(2)).

Dated: August 14, 2023

_____

Honorable Jinsook Ohta
United States District Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Sigley, | | Case No.: 22cv01877-JO-MMP |
| | Plaintiff, | **AMENDED ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | | |
| Dexcom, Inc., | | |
| | Defendant. | |

On November 23, 2022, Plaintiff Catherine Sigley filed a state law product liability action against Defendant Dexcom, Inc. in San Diego County superior court. Dkt. 6, Ex. A. On November 29, 2022, Defendant filed a Notice of Removal of the action to this Court. Dkt. 1. On December 19, 2022, Defendant filed a motion to dismiss, and on December 29, 2022, Plaintiff filed a motion to remand the action to state court for lack of subject matter jurisdiction.[1] Dkts. 5, 6. For the reasons stated below, the Court grants Plaintiff's motion to remand and denies Defendant's motion to dismiss as moot.

---

[1] Defendant contends that its Notice of Removal was filed on November 28, 2022 but the Court notes that this document was file stamped November 29, 2022. Dkt. 1. Given the November 29, 2022

1

# I. BACKGROUND

Plaintiff initiated a product liability suit in state court but Defendant removed the action to federal court before Plaintiff effected service of the complaint. On November 23, 2022, Plaintiff filed a product liability complaint against Defendant, a citizen of California, in state court. Dkt. 6, Ex. A. On November 29, 2022, Defendant filed a Notice of Removal on the basis of diversity jurisdiction. Dkt. 1. Plaintiff served Defendant with the complaint on November 30, 2022. Dkt. 6, Ex. B. On December 29, 2022, Plaintiff filed a motion to remand the action to state court arguing that Defendant could not remove on the basis of diversity jurisdiction as a forum defendant. Dkt. 6.[2]

# II. LEGAL STANDARD

A defendant may remove an action from state court only if the federal court would originally have had federal question or diversity jurisdiction over the action and certain procedural requirements are met. *See* 28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. In order to remove an action on diversity grounds, a defendant must meet an additional requirement: according to the "forum defendant rule," a civil action may not be removed if any defendant "properly joined and served[] is a citizen of the State" where the complaint was filed. 28 U.S.C. § 1441(b)(2). The forum defendant rule thus "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004). This rule reflects the reality that the need to "protect out-of-state defendants from possible prejudices in state court" does not exist where the defendant is a resident of the state in

---

filing date, the Court finds that Plaintiff's motion for remand was timely filed within the required 30 days. 28 U.S.C. § 1447(c).

[2] The case was transferred to the undersigned on January 9, 2023. Dkt. 8.

1    which the case is brought. *Lively*, 456 F.3d at 940. A party can waive the right to remand

2    based on the forum defendant rule by failing to object in a timely manner. *See* 28 U.S.C.

3    § 1447(c); *Lively*, 456 F.3d at 940.

4          In considering a remand, the court construes any doubts against the removing party.

5    There is a "strong presumption against removal jurisdiction," which means that "the

6    defendant always has the burden of establishing that removal is proper, and that the court

7    resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*,

8    582 F.3d 1039, 1042 (9th Cir. 2009); *Luther v. Countrywide Homes Loans Servicing*, LP,

9    533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against

10   removal."). Thus, a court must reject federal jurisdiction "if there is any doubt as to the

11   right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.

12   1992).

13                                   **III. DISCUSSION**

14         The Court finds that this action must be remanded to state court because as a citizen

15   of California, Defendant cannot remove this action on grounds of diversity jurisdiction. At

16   the time of removal, Defendant was a citizen of California and, therefore, a forum

17   defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal

18   place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the

19   purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every

20   State and foreign state by which it has been incorporated and of the State or foreign state

21   where it has its principal place of business…"). As a forum defendant, Defendant could

22   not remove this action solely on the basis of diversity jurisdiction, and Plaintiff timely filed

23   a motion to remand on this ground. 28 U.S.C. §§ 1441(b)(2), (c).

24         Despite its admitted status as a California citizen, Defendant argues that it evaded

25   the forum defendant rule simply by filing a Notice of Removal prior to being served.

26   Defendant points to the language of § 1441(b)(2) which prohibits the removal of a diversity

27   action "if any of the parties in interest properly joined and served as defendants." 

28   §1441(b)(2). Because Dexcom, the only defendant in the case, had not yet been served,

1  the company argued that the forum defendant rule does not apply. The Court does not
2  credit Dexcom's interpretation of this statutory language to circumvent the forum
3  defendant rule. The clear purpose of the forum defendant rule is to prevent "a local
4  defendant from removing on the basis of diversity jurisdiction" and, thereby, "allow[] the
5  plaintiff to regain some control over forum selection". *Lively*, 456 F.3d at 940; *Home*
6  *Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("[W]hen federal jurisdiction
7  is based on diversity jurisdiction…the case may not be removed if any defendant is a
8  Citizen of the State in which such action is brought"). Here, Dexcom is the only defendant
9  in the case and, admittedly, a California citizen. To interpret the language of the forum
10  defendant rule to allow Defendant to evade this limitation simply by removing the case
11  before it is served does not serve the purpose of the removal statutes.[3]

## IV. CONCLUSION

13  For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand
14  [Dkt. 6] and DENIES Defendant's motion to dismiss [Dkt. 5] as moot. The Court instructs
15  the Clerk to remand the action to San Diego County Superior Court and close the case.

16  **IT IS SO ORDERED**.

19  Dated: August 16, 2023

_____
Honorable Jinsook Ohta
United States District Judge

---

26  [3] In 1948, Congress added the "properly joined and served" language to the existing forum
defendant rule in order to protect defendants against gamesmanship from plaintiffs who fraudulently join
27  a defendant to improperly prevent removal. *See Deutsche Bank Nat'l Trust Co. as Tr. for Am. Home*
*Mortgage Invest. Tr.*, 532 F. Supp. 3d 1004, 1010 (D. Nev. 2021) (examining legislative history of §
28  1441(b)(2)).

1
2
3
4
5
6
7
8    UNITED STATES DISTRICT COURT
9    SOUTHERN DISTRICT OF CALIFORNIA
10
11   Wright,                               Case No.: 22cv01989-JO-MMP
12                          Plaintiff,
                                           **ORDER GRANTING PLAINTIFF'S**
13   v.                                    **MOTION TO REMAND AND**
                                           **DENYING DEFENDANT'S MOTION**
14   Dexcom, Inc.,                         **TO DISMISS**
15                          Defendant.
16
17
18
19         On December 14, 2022, Plaintiff Angela Wright filed a state law product liability
20   action against Defendant Dexcom, Inc. in San Diego County superior court.  Dkt. 10, Ex.
21   A.  On December 15, 2022, Defendant filed a Notice of Removal of the action to this Court.
22   Dkt. 1.  On January 5, 2023, Defendant filed a motion to dismiss, and on January 17, 2023,
23   Plaintiff filed a motion to remand the action to state court for lack of subject matter
24   jurisdiction.  Dkts. 7, 10.  For the reasons stated below, the Court grants Plaintiff's motion
25   to remand and denies Defendant's motion to dismiss as moot.
26                            **I. BACKGROUND**
27         Plaintiff initiated a product liability suit in state court but Defendant removed the
28   action to federal court before Plaintiff effected service of the complaint.  On December 14,

2022, Plaintiff filed a product liability complaint against Defendant, a citizen of California, in state court. Dkt. 10, Ex. A. On December 15, 2022, Defendant filed a Notice of Removal to this Court on the basis of diversity jurisdiction, claiming the forum defendant rule did not bar removal because Defendant had not yet been served. Dkt. 1. Plaintiff served Defendant with the complaint on December 16, 2022. Dkt. 10, Ex. B. On January 17, 2023, Plaintiff filed a motion to remand the action to state court on the grounds that the removal was defective because Defendant, a forum defendant, could not remove on the basis of diversity jurisdiction. Dkt. 10.[1]

## II. LEGAL STANDARD

A defendant may remove an action from state court only if the federal court would originally have had federal question or diversity jurisdiction over the action and certain procedural requirements are met. *See* 28 U.S.C. § 1441; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. In order to remove an action on diversity grounds, a defendant must meet an additional requirement: according to the "forum defendant rule," a civil action may not be removed if any defendant "properly joined and served[] is a citizen of the State" where the complaint was filed. 28 U.S.C. § 1441(b)(2). The forum defendant rule thus "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *see also Spencer v. U.S. Dist. Court for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004). This rule reflects the reality that the need to "protect out-of-state defendants from possible prejudices in state court" does not exist where the defendant is a resident of the state in which the case is brought. *Lively*, 456 F.3d at 940. A party can waive the right to remand

---

[1] The case was transferred to the undersigned on December 19, 2022. Dkt. 4.

based on the forum defendant rule by failing to object in a timely manner. *See* 28 U.S.C. § 1447(c); *Lively*, 456 F.3d at 940.

In considering a remand, the court construes any doubts against the removing party. There is a "strong presumption against removal jurisdiction," which means that "the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Luther v. Countrywide Homes Loans Servicing*, LP, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal."). Thus, a court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## III. DISCUSSION

The Court finds that this action must be remanded to state court because as a citizen of California, Defendant cannot remove this action on grounds of diversity jurisdiction. At the time of removal, Defendant was a citizen of California and, therefore, a forum defendant. Dkt. 1 (stating Defendant is a citizen of California and maintains its principal place of business in San Diego, California); *see also* 28 U.S.C. § 1332(c)(1) (for the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"). As a forum defendant, Defendant could not remove this action solely on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

Despite its admitted status as a California citizen, Defendant argues that it evaded the forum defendant rule simply by filing a Notice of Removal prior to being served.[2]

---

[2] Defendant does not raise other objections to remand such as untimeliness of Plaintiff's motion. The objection of untimeliness does not go to subject matter jurisdiction and is therefore waivable. *E.g.*, *Student A., By and Through her Guardian Ad Litem, Mother of Student A. v. Metcho et al.*, 710 F. Supp. 267, 269 (N.D. Cal. 1989) (citing *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176–77 (1913)); *Hunter*, 582 F.3d at 1042 (holding defendant always has the burden of establishing that removal is proper, and that the

Defendant points to the language of § 1441(b)(2) which prohibits the removal of a diversity action "if any of the parties in interest properly joined and served as defendants." §1441(b)(2). Because Dexcom, the only defendant in the case, had not yet been served, the company argued that the forum defendant rule does not apply. The Court does not credit Dexcom's interpretation of this statutory language to circumvent the forum defendant rule. The clear purpose of the forum defendant rule is to prevent "a local defendant from removing on the basis of diversity jurisdiction" and, thereby, "allow[] the plaintiff to regain some control over forum selection". *Lively*, 456 F.3d at 940; *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("[W]hen federal jurisdiction is based on diversity jurisdiction…the case may not be removed if any defendant is a citizen of the State in which such action is brought"). Here, Dexcom is the only defendant in the case and, admittedly, a California citizen. To interpret the language of the forum defendant rule to allow Defendant to evade this limitation simply by removing the case before it is served does not serve the purpose of the removal statutes.[3]

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion to remand [Dkt. 10] and DENIES Defendant's motion to dismiss [Dkt. 7] as moot. The Court instructs the Clerk to remand the action to San Diego County Superior Court and close the case.

**IT IS SO ORDERED**.

---

court resolves all ambiguity in favor of remand to state court). The Court therefore rules on the opposition to the remand motion only on the basis of the ground asserted.

[3] In 1948, Congress added the "properly joined and served" language to the existing forum defendant rule in order to protect defendants against gamesmanship from plaintiffs who fraudulently join a defendant to improperly prevent removal. *See Deutsche Bank Nat'l Trust Co. as Tr. for Am. Home Mortgage Invest. Tr.*, 532 F. Supp. 3d 1004, 1010 (D. Nev. 2021) (examining legislative history of § 1441(b)(2)).

1   Dated:  August 14, 2023

2

3                                         Honorable Jinsook Ohta
                                          United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "F"

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kevin W. Alexander (SBN: 175204) Renata Ortiz Bloom (SBN: 254377) GORDON REES SCULLY MANSUKHAN 101 W. Broadway, Suite 2000 San Diego, CA 92101 | |

TELEPHONE NO.: **(619) 696-6700**   FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):* kalexander@grsm.com; rbloom@grsm.com

ATTORNEY FOR *(Name):* Defendant Dexcom, Inc.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: same
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

PLAINTIFF/PETITIONER: Lauren Casola

DEFENDANT/RESPONDENT: Dexcom, Inc.

| CASE NUMBER: 37-2022-00047838-CU-PL-CTL |
|---|
| JUDICIAL OFFICER: Hon. Marcella O. McLaughlin |

**NOTICE OF RELATED CASE**

DEPT.: C-72

---

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Catherine Sigley v. Dexcom, Inc.

   b. Case number: 37-2022-47423-CU-PL-CTL

   c. Court: ☒ same as above

      ☐ other state or federal court *(name and address):*

   d. Department: C-72

   e. Case type: ☐ limited civil ☒ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: November 23, 2022

   g. Has this case been designated or determined as "complex?" ☒ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☒ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☒ Additional explanation is attached in attachment 1h

   i. Status of case:

      ☒ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address):*

   d. Department:

---

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
www.courtinfo.ca.gov

CM-015

| PLAINTIFF/PETITIONER: Lauren Casola | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Dexcom, Inc. | 37-2022-00047838-CU-PL-CTL |

2. *(continued)*

e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify)*:

f. Filing date:

g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

h. Relationship of this case to the case referenced above *(check all that apply)*:

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 2h

i. Status of case:

☐ pending

☐ dismissed   ☐ with   ☐ without prejudice

☐ disposed of by judgment

3. a. Title: .

b. Case number:

c. Court: ☐ same as above

☐ other state or federal court *(name and address)*:

d. Department:

e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify)*:

f. Filing date:

g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

h. Relationship of this case to the case referenced above *(check all that apply)*:

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 3h

i. Status of case:

☐ pending

☐ dismissed   ☐ with   ☐ without prejudice

☐ disposed of by judgment

4. ☒ Additional related cases are described in Attachment 4. Number of pages attached: __6__ ____

Date: February 23, 2024

__Renata Ortiz Bloom__        ▶ *Renata O. Bloom*
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)        (SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: Lauren Casola | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Dexcom, Inc. | 37-2022-00047838-CU-PL-CTL |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1.  I am at least 18 years old and **not a party to this action.** I am a resident of or employed In the county where the mailing took place, and my residence or business address is *(specify):* 101 W. Broadway Suite 2000, San Diego, CA  92101

2.  I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

    a. ☐ deposited the sealed envelope with the United States Postal Service.

    b. ☒ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3.  The *Notice of Related Case* was mailed:

    a.  on *(date):* February 23, 2024

    b.  from *(city and state):* San Diego, CA

4.  The envelope was addressed and mailed as follows:

    a.  Name of person served: Timothy M. Clark

    Street address: 5857 Owens Drive, Suite 341

    City: Carlsbad

    State and zip code: CA  92008

    c.  Name of person served: Gary Chambers

    Street address: 2070 North Tustin Avenue

    City: Santa Ana

    State and zip code: CA 92705

    b.  Name of person served: Melissa Rosadini-Knott

    Street address: 3435 Wilshire Blvd., Suite 1400

    City: Los Angeles

    State and zip code: CA 90010

    d.  Name of person served:

    Street address:

    City:

    State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: February 23, 2024

Sylvia Durazo
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ *[signature]*
_____
(SIGNATURE OF DECLARANT)

MC-025

| | |
|---|---|
| SHORT TITLE:<br>  Lauren Casola v. Dexcom, Inc. | 37-2022-00047838-CU-PL-CTL |

**ATTACHMENT** *(Number):*  1h_____

*(This Attachment may be used with any Judicial Council form.)*

### NOTICE OF RELATED CASES
### ATTACHMENT 1h

There are 44 cases originally filed in the Superior Court of California, County of San Diego by individual plaintiffs relating to their alleged use of a Dexcom G6 Continuous Glucose Monitoring System ("Dexcom G6"). 43 of those cases identify Dexcom, Inc. ("Dexcom") as the sole defendant. (*Joseph Higginbottom v. Dexcom, Inc., et al.*, No. 3:24-cv-195, which currently is pending in the Southern District of California, also names Tandem Diabetes Care as a defendant.) Dexcom removed many of the non-resident cases to the Southern District of California. Currently, 40 of the 44 cases are pending in the Superior Court of California, County of San Diego, and these are the cases identified in Dexcom's Notice of Related Case and Attachment 4, which Dexcom is requesting this Court to deem related (the "Related Matters").

On June 16, 2023, Honorable Timothy Taylor, Department C-72, Superior Court of California, ordered that 18 of the 40 Related Matters pending in state court at that time be deemed related under *Brenda Bottiglier v. Dexcom, Inc.,* Case No. 37-2022-47846-CU-PL-CTL. All but three of the forty Related Matters have been transferred and re-assigned to Department C-72 before Judge McLaughlin. Dexcom requests that the remaining Related Matters be deemed "related cases" as defined in California Rules of Court, Rule 3.300(a), and that the Related Matters not currently pending in Department C-72 be transferred and re-assigned for all purposes to Honorable Marcella McLaughlin, Civil Department C-72.

The Related Matters are properly deemed "related cases" as defined in California Rules of Court, Rule 3.300(a) on multiple grounds, including: (1) the Related Matters all identify Dexcom as the sole defendant and Dexcom is represented by the same local and national counsel; (2) the Related Matters are all product liability lawsuits alleging nearly identical claims involving plaintiffs' alleged use of the Dexcom G6; (3) Dexcom has (or will) file substantively similar motions to compel arbitration in the Related Matters given that each of the individual plaintiffs who utilized the Dexcom G6 App entered into binding agreements with Dexcom that contain identical, mandatory arbitration provisions; and (4) Dexcom anticipates presenting substantively similar or identical threshold legal defenses (in addition to arbitration) in each of the Related Matters, including but not limited to federal preemption. Deeming the Related Matters as related cases and transferring them to one designated judge will conserve judicial resources and the Parties' resources, will allow for consistency in both procedural handling and judicial rulings on disputed issues, and will serve the interests of judicial economy and convenience.

 (Dexcom notes that it had removed the *Bottiglier* case to federal court, but that court remanded the case to this Court, and the case was reactivated on this Court's docket on April 20, 2023. Dexcom has appealed the remand order, and its appeal is pending in the United States Court of Appeals for the Ninth Circuit. By filing this Notice of Related Cases, Dexcom does not intend to waive any arguments on appeal, including that it properly removed this case to federal court.)

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

**Page** 1 **of** 1

**ATTACHMENT**
**to Judicial Council Form**

| SHORT TITLE:<br>    Lauren Casola v. Dexcom, Inc. | 37-2022-00047838-CU-PL-CTL |
|---|---|

**ATTACHMENT**
*(Number):*              4

There are 44 pending cases originally filed in the Superior Court of California, County of San Diego by individual plaintiffs relating to their alleged use of a Dexcom G6 Continuous Glucose Monitoring System ("Dexcom G6"). 43 of those cases identify Dexcom, Inc. ("Dexcom") as the sole defendant. [1]  Dexcom removed many of the non-resident cases to the Southern District of California. Currently, 40 of the 44 cases are pending in the Superior Court of California, County of San Diego, and these are the cases which Dexcom is requesting this Court to deem related (the "Related Matters").

On June 16, 2023, Honorable Timothy Taylor, Department C-72, Superior Court of California, San Diego, ordered that 18 of the Related Matters be deemed related. [2]  See <u>Exhibit A</u>, attached. They are:

1. *Brenda Bottiglier v. Dexcom, Inc.*, No. 37-2022-00047846-CU-PL-CTL;[3]
2. *Lauren Casola v. Dexcom, Inc.*, No. 37-2022-00047838-CU-PL-CTL;[4]
3. *Nicholas Phillips v. Dexcom, Inc.*, No. 37-2022-00048550-CU-PL-CTL;
4. *Helena Pfeifer v. Dexcom, Inc.*, No. 37-2022-00048920-CU-PL-CTL;[5]
5. *Lara Herzog et al. v. Dexcom, Inc.*, No. 37-2022-00049800-CU-PL-CTL;
6. *Pamela Villegas v. Dexcom, Inc.*, No. 37-2023-000001690-CU-PL-CTL;
7. *Traci Moore v. Dexcom, Inc.*, No. 37-2023-00012889-CU-PL-CTL;
8. *Aliya Campbell Pierre v. Dexcom, Inc.*, No. 37-2023-00014471-CU-PL-CTL;
9. *Phillip Rusk v. Dexcom, Inc.*, No. 37-2023-00014490-CU-PL-CTL;
10. *Tiffanie Tsakiris v. Dexcom, Inc.*, No. 37-2023-00014497-CU-PL-CTL;
11. *Margaret Doolen v. Dexcom, Inc.*, No. 37-2023-00014506-CU-PL-CTL;
12. *Cathy Mcdowell-Schnieders v. Dexcom, Inc.*, No. 37-2023-00017211-CU-PL-CTL;
13. *Shona Dikes v. Dexcom, Inc.*, No. 37-2023-00017219-CU-PL-CTL;
14. *Victoria McCracken v. Dexcom, Inc.*, No. 37-2023-00017980-CU-PL-CTL;
15. *Kelly Dedeaux v. Dexcom, Inc.*, No. 37-2023-00017993-CU-PL-CTL;
16. *Samantha Sinor v. Dexcom, Inc.*, No. 37-2023-00018004-CU-PL-CTL; and
17. *Trisha Ayala v. Dexcom, Inc.*, No. 37-2023-00018007-CU-PL-CTL.

Twenty of the Related Matters are currently pending in Department C-72 before Hon. Marcella McLaughlin, but have not yet been deemed related.  They are:

18. *Catherine Sigley v. Dexcom, Inc.*, No. 37-2022-00047423-CU-PL-CTL;[6]
19. *Angela Peatross v. Dexcom, Inc.*, No. 37-2022-00050058-CU-PL-CTL;
20. *Gregory Mund v. Dexcom, Inc.*, No. 37-2022-00050091-CU-PL-CTL;
21. *Felicia Reese v. Dexcom, Inc.*, No. 37-2022-00050109-CU-PL-CTL;

---

[1] *Joseph Higginbottom v. Dexcom, Inc., et al.*, No. 3:24-cv-195, which currently is pending in the Southern District of California, also names Tandem Diabetes Care as a defendant.
[2] *Jodi Lutz v. Dexcom, Inc.*, No. 37-2022-48354-CU-PL-CTL, was included in the Related Matters, but has since been dismissed.
[3] An appeal of the federal district court's remand of this case to state court is currently pending in the United States Court of Appeals for the Ninth Circuit.
[4] An appeal of the federal district court's remand of this case to state court is currently pending in the United States Court of Appeals for the Ninth Circuit.
[5] An appeal of the federal district court's remand of this case to state court is currently pending in the United States Court of Appeals for the Ninth Circuit.
[6] An appeal of the federal district court's remand of this case to state court is currently pending in the United States Court of Appeals for the Ninth Circuit.

CONTINUED ATTACHMENT 4 TO JUDICIAL COUNCIL FORM

22. *James Newman v. Dexcom, Inc.*, No. 37-2022-00050603-CU-PL-CTL;
23. *Kris Hunt v. Dexcom, Inc.*, No., No. 37-2022-00051324-CU-PL-CTL;
24. *Dewayne Garrett v. Dexcom, Inc.*, No. 37-2022-00051363-CU-PL-CTL;
25. *Timothy Hawkins v. Dexcom, Inc.*, No. 37-2022-00051366-CU-PL-CTL;
26. *Luis Fargas v. Dexcom, Inc.*, No. 37-2022-00051763-CU-PL-CTL;
27. *Deborah Wood v. Dexcom, Inc.*, No. 37-2022-00052048-CU-PL-CTL;
28. *Jordan Tramel v. Dexcom, Inc.*, No. 37-2022-00052050-CU-PL-CTL;
29. *Katherine Brenneman v. Dexcom, Inc.*, No. 37-2023-00003921-CU-PL-CTL;
30. *Lajeanie Skinner v. Dexcom, Inc.*, No. 37-2023-00006357-CU-PL-CTL;
31. *Jamila Jones v. Dexcom, Inc.*, No. No. 37-2023-00007129-CU-PL-CTL;
32. *Sandra Ferrara, et al. v. Dexcom, Inc.*, No. 37-2023-00009690-CU-PL-CTL;
33. *Joshua Davis-Nguyen v. Dexcom, Inc.*, No. 37-2023-00010781-CU-PL-CTL;
34. *Linda Vernier v. Dexcom, Inc.*, No. 37-2023-00010809-CU-PL-CTL;
35. *Amy Clark v. Dexcom, Inc.*, No. 37-2023-00012076-CU-PL-CTL;
36. *Ashly Harding v. Dexcom, Inc.*, No. 37-2023-00012083-CU-PL-CTL; and
37. *Latonya Williams v. Dexcom, Inc.*, No. 37-2023-00012216-CU-PL-CTL.

Three of the Related Matters are currently pending in various departments in the Superior Court of California, County of San Diego, are not currently pending in Department C-72, and have not been deemed related. They are:

38. *Kristi Rotstein v. Dexcom, Inc.*, No. 37-2024-00003811-CU-PL-CTL;
39. *Patrick Taylor v. Dexcom, Inc.*, No. 37-2024-00003820-CU-PL-CTL; and
40. *Paul Rader v. Dexcom, Inc.*, No. 37-2024-00003898-CU-PL-CTL.

The four cases pending in the Southern District of California per the Register of Actions as of the date of this filing are listed below:

41. *Tyler Glenn v. Dexcom, Inc.*, No. 3:22-cv-1866;
42. *Delvina Kimbler v. Dexcom, Inc.*, No. 3:22-cv-1867;
43. *John Monahan v. Dexcom, Inc.*, No. 3:22-cv-1872; and
44. *Joseph Higginbottom v. Dexcom, Inc., et al.*, No. 3:24-cv-195.

EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 06/16/2023                 TIME: 09:45:00 AM          DEPT:  C-72

JUDICIAL OFFICER PRESIDING: Timothy Taylor
CLERK:  Valerie Secaur
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  O. Godoy

CASE NO: **37-2022-00047846-CU-PL-CTL**   CASE INIT.DATE: 11/29/2022
CASE TITLE: **Bottiglier vs Dexcom Inc [E-FILE]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Product Liability

---

**EVENT TYPE**: Civil Case Management Conference

---

**APPEARANCES**
Timothy M Clark, counsel, present for Plaintiff(s).
Kevin W Alexander, counsel, present for Defendant(s).
Renata Ortiz Bloom, counsel, present for Defendant(s).

**CASE MANAGEMENT CONFERENCE**

The Court and counsel discuss the notice of related case filed May 26, 2023.

Pursuant to the agreement of counsel and the civil supervising judge, the Court orders the following 18 cases related, and all cases not already assigned to Department C-72 hereby ordered reassigned to Department C-72 before Judge Timothy Taylor:

1. Brenda Bottiglier v. Dexcom, Inc., No. 37-2022-00047846-CU-PL-CTL;
2. Nicholas Phillips v. Dexcom Inc., No. 37-2022-00048550-CU-PL-CTL;
3. Lara Herzog et al. v. Dexcom, Inc., No. 37-2022-00049800-CU-PL-CTL;
4. Pamela Villegas v. Dexcom, Inc., No. 37-2023-000001690-CU-PL-CTL;
5. Traci Moore v. Dexcom, Inc., No. 37-2023-00012889-CU-PL-CTL;
6. Aliya Campbell Pierre v. Dexcom, Inc., No. 37-2023-00014471-CU-PL-CTL;
7. Phillip Rusk v. Dexcom, Inc., No. 37-2023-00014490-CU-PL-CTL;
8. Tiffanie Tsakiris v. Dexcom, Inc., No. 37-2023-00014497-CU-PL-CTL;
9. Margaret Doolen v. Dexcom, Inc., No. 37-2023-00014506-CU-PL-CTL;
10. Cathy Mcdowell-Schnieders v. Dexcom, Inc., No. 37-2023-00017211-CU-PL-CTL;
11. Shona Dikes v. Dexcom, Inc., No. 37-2023-00017219-CU-PL-CTL;
12. Victoria McCracken v. Dexcom, Inc., No. 37-2023-00017980-CU-PL-CTL;
13. Kelly Dedeaux v. Dexcom, Inc., No. 37-2023-00017993-CU-PL-CTL;
14. Samantha Sinor v. Dexcom, Inc., No. 37-2023-00018004-CU-PL-CTL;
15. Trisha Ayala v. Dexcom, Inc., No. 37-2023-00018007-CU-PL-CTL;

---

CASE TITLE: Bottiglier vs Dexcom Inc [E-FILE]          CASE NO: **37-2022-00047846-CU-PL-CTL**

16. Lauren Casola v. Dexcom, Inc., No. 37-2022-00047838-CU-PL-CTL;
17. Jodi Lutz v. Dexcom Inc., No. 37-2022-00048354-CU-PL-CTL;
18. Helena Pfeifer v. Dexcom, Inc., No. 37-2022-00048920-CU-PL-CTL.

The court advises the parties that the clock for any challenge based on Code of Civil Procedure 170.6 begins now.

The cases are not consolidated at this time.

Counsel are to meet and confer as to the motion to compel arbitration presently set for August 25.

The CMC is continued to coincide with the motion for *pro hac vice* admission, as follows:

Civil Case Management Conference is continued pursuant to Court's motion to 07/28/2023 at 01:30PM before Judge Timothy Taylor.

All related cases are set for a CMC at the same date and time.

Counsel are to monitor the remands of other cases not yet assigned to Department 72.

_____
 Judge Timothy Taylor

MELISA A. ROSADINI-KNOTT

**CERTIFICATE OF SERVICE**

FRCP 5(b)(2)(3)

I, the undersigned, am over the age of 18 and not a party to the within action; my business address is: 3435 Wilshire Boulevard, Suite 1400, Los Angeles, California 90010.

On February 29, 2024, I served the foregoing document(s) described as:

**DECLARATION OF MELISA ROSADINI-KNOTT IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO SUPERIOR COURT OF SAN DIEGO, CALIFORNIA**

on the interested parties in this action by electronically transmitting the foregoing document to persons as stated on the attached service list:

☒   **[by ECF ELECTRONIC SUBMISSION]** – I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I am a member of and/or employed in the office of a member of the this Court at whose direction the service was made.

Executed on February 29, 2024 at Los Angeles, California.



DECLARATION OF MELISA ROSADINI-KNOTT IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO SUPERIOR COURT OF SAN DIEGO, CALIFORNIA

Melisa Rosadini-Knott

23

24

25

26

27

28

3